ORIGINAL

FILED
FEB 8 2008
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PARSONS TRANSPORTATION GROUP INC.

Plaintiff,

v.

UNITED STATES OF AMERICA,
FEDERAL RAILROAD ADMINISTRATION,

Defendant.

No. 08-79 C

# *COMPLAINT*

## Parties

1. Plaintiff Parsons Transportation Group, Inc. ("Parsons") is a corporation existing under the laws of the State of Illinois and is successor in interest to Deleuw, Cather Parsons ("DCP"), a joint venture comprised of DeLeuw Cather & Company, an Illinois corporation, and Ralph M. Parsons, a Nevada corporation.

2. Defendant United States Federal Railroad Administration ("FRA") is a division of the Department of Transportation having offices at 1129 Vermont Avenue Northwest, Washington, D.C. 20590. Service will be made by the Clerk of the Court pursuant to Rules of the Court of Federal Claims (RCFC 4).

## Jurisdiction

3. This claim is for breach of contract for the failure of the FRA to honor its obligation, pursuant to Article XIV of the parties' contract, to indemnify Parsons for damages

and fees sustained from the mid 1980s to the present in connection with work performed by DCP on the Northeast Corridor Improvement Project under contract with the FRA.

4. This is a civil action brought by Plaintiff Parsons against the United States pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601-613, and the Tucker Act, 28 U.S.C. § 1491.

5. This action is an appeal from a December 12, 2007 final decision ("Final Decision") (*See* Exhibit A) by FRA denying a November 16, 2007 claim ("Claim") (*See* Exhibit B) by Parsons seeking the sum certain of $1,400,497.92, plus interest for damages and fees sustained by Parsons.

6. Parsons timely appeals from the December 12, 2007 Final Decision in accordance with 41 U.S.C. § 609(a)(1).

**Background**

7. On or about October 25, 1979, the FRA awarded contract number DOT-FR-76048 (the "Agreement") to DCP to provide services as prime architect-engineer and program manager for the Northeast Corridor Improvement Project ("NECIP"), a program undertaken by FRA pursuant to Title 7 of the Railroad Revitalization and Regulatory Reform Act of 1976.

8. The NECIP was designed to make improvements to the rail facilities located on the Northeast Corridor served by the National Railroad Passenger Corporation ("Amtrak"). The Agreement originally executed provided that DCP would carry professional liability insurance to guard against any claims arising out of professional malpractice. In

addition, under the original letter contract, DOT-FR-76048, the FRA was obligated to indemnify DCP under Article XIV up to one hundred million dollars ($100,000,000) against third party tort claims arising from professional services rendered by DCP on the NECIP.

9. Subsequently this Agreement was amended and FRA agreed to indemnify DCP pursuant to authority granted FRA in the fiscal year 1979 DOT Appropriations Act.

10. The maximum liability of the Government under the indemnity was one hundred million dollars ($100,000,000) but such amount was subject to increase if necessary.

11. As a result of such indemnification, DCP was not required to maintain professional errors and omissions insurance coverage for the NECIP but did retain comprehensive general liability insurance. These provisions were designed to protect DCP from claims that would otherwise be covered by malpractice insurance and DCP looked to the FRA indemnification for that protection. A copy of the memorandum of negotiation leading to such agreement is attached hereto as Exhibit C.

12. As amended, the NECIP Agreement provides the FRA would hold DCP harmless from:

> (i) claims (including reasonable expenses of litigation or settlement) by third persons (including employees of the A-E Contractor) for death, personal injury, or loss of, damage to, or loss of use of property;
>
> (ii) loss of or damage to property of the A-E Contractor, and loss of use of such property but excluding loss of profit; and,
>
> (iii) loss of, damage to, or loss of use of property of the Government but excluding loss of profit;
>
> to the extent that such a claim, loss or damage (A) arises out of or results from a risk defined in this

> contract to be unusually hazardous or nuclear in nature, (B) is not compensated by insurance or otherwise, and (C) is in excess of the first $1,000,000 in the aggregate of all such claims, loss, or damage, which aggregate amount of claims, loss, or damage shall be borne by the A-E Contractor. Any such claim, loss or damage within deductible amounts of A-E Contractor's insurance required to be maintained pursuant to this contract shall not be covered under this clause.

13. Under the terms of the Agreement, the FRA is obligated to indemnify DCP for damages sustained in the Northeast Corridor Improvement Project in excess of $1,000,000.

14. As is more specifically set forth above, DCP's claims have exceeded $1,000,000.

**Gordon-Finger Claims**

15. During the mid-1980s, DCP provided architectural/engineering services in connection with improvements made to the Amtrak's Wilmington rail yard. This work included the design and construction of a building known as the Wheel Shop in their Wilmington yard.

16. During the construction of the Wheel Shop, excavated material, allegedly containing PCB contaminated soil, was removed from the rail yard and deposited on property owned by the Arthur J. Krieger, Bernard M. Gordon and Louis J. Finger and others. ("Gordon-Finger Plaintiffs").

17. The Gordon-Finger Plaintiffs filed an action in the Chancery Court of the State of Delaware, C.A. No. 10753 against DCP and others seeking damages and remediation of

the allegedly contaminated soil. DCP's attorney's fees and expenses in this action have totaled in excess of $425,000.00.

18. A trial on liability was held in January 2000 and DCP and Amtrak were found liable.

19. On May 21, 2004, DCP paid the Estate of Arthur Krieger plaintiffs $195,000 in settlement of its claims.

20. The claims of the Gordon-Finger Plaintiffs remain unresolved and are pending a hearing on the damages.

21. To date, DCPs fees, expenses and settlement expenses for the Gordon-Finger Plaintiffs' claims have totaled in excess of $615,000.00. (*See* Exhibit D)

**Stamford Claims**

22. In the mid-1980s, DCP provided under the Agreement architectural/engineering services in connection with the design and construction of the Stamford Transportation Center in Stamford, Connecticut.

23. During construction of the Stamford Station, numerous design defects were discovered in connection with the work. Subsequently, on October 22, 1986, Wilber Smith Associates ("WSA") provided engineering services to DCP for the Stamford Station. On October 27, 1986, WSA submitted a claim to DCP in the amount of $1,210,845 for extra work on the structural elements of the Stamford Station resulting from such alleged design deficiencies.

24. WSA submitted its claims to arbitration. Ultimately an arbitration panel entered an award in favor of WSA and against DCP in the amount of $377,636 plus interest and attorneys fees. (*See* Exhibit E)

**A&C Fuel Claims**

25. On or about April 18, 1985, a vessel owned by the A&C Fuel Corporation collided with the Penn Mainline Bridge operated by Amtrak and designed by DCP in connection with the NECIP. A&C sued Amtrak to recover damages to its vessel in the collision.

26. Ultimately DCP was brought in as a fourth party defendant in the action and eventually paid $20,833.33 to settle the claim. (*See* Exhibit F)

**Stamford and A&C Fuel Claims Attorneys Fees**

27. The same law firm represented DCP on both the Stamford and A&C Fuel Claims. Its bills did not break down the fees associated with Stamford from these associated with A&C.

28. The combined fees for Stamford and A&C was $408,002.74. (*See* Exhibit G)

29. DCP sustained damages and expense in connection with the A&C and WSA claims as follows:

a) A&C Settlement - $20,833.33

b) WSA Arbitration Award - $377,636.00

c) Combined Attorneys Fees for A&C and WSA actions - $408,002.74

As a result, DCP has sustained losses in excess of $806,472.07 in connection with these NECIP claims.

**Massachusetts Bay Transportation Authority Claims**

30. Under the Agreement, DCP also performed architectural engineering services in connection with the construction of renovations and improvements to the South Station and associated structures platforms, track and rail yards in Boston, Massachusetts ("the South Station Project") in coordination with the Massachusetts Bay Transportation Authority ("MBTA").

31. On April 25, 1988, the MBTA sued DCP in the Commonwealth of Massachusetts seeking damages on its own behalf and as a result of claims brought by JF White Construction Company ("White"), the project's general contractor, arising from an alleged delay in the South Station Project.

32. On or about March 15, 1995, DCP entered into a settlement of South Station claims and paid $425,000 to settle such claims. In addition, DCP paid attorneys fees in excess of $553,000 associated with the South Station project. DCP's total payments in connection with the MBTA claims was $978,943.43. (*See* Exhibit H)

**Demands on the FRA**

33. Parsons, as more fully described herein, has complied with all requirements necessary to obtain an equitable adjustment under the Contract. As noted above, FRA agreed to include an indemnification clause under Public Law 85-804. *See* Memorandum of Negotiation dated May 10, 1979 (under which FRA agreed to include such a provision in

Letter Contract DOT-FR-76048.) (*See* Exhibit C) Further, Parsons has complied with the applicable provisions of Article XIV of the Contract:

a. Parsons sought equitable adjustments for judgments, settlements and expenses incurred for claims of third parties arising out of risks defined in the Contract to be unusually hazardous, not compensated by insurance and are in excess of $1,000,000 in the aggregate of all such claims, loss or damages as provided by Article XIV, § 14.01 of the Contract and are not excluded under § 14.02. Further, § 14.08 provides that all risks resulting from Parsons' work under the Contract, except those covered by specified insurance policies, none of which applies here, are covered by the indemnification provision.

b. Parsons has complied with the provision of § 14.06 and the Insurance-Liability to Third Persons Clause by promptly notifying the Contracting Officer of all claims for which indemnification is sought under this request and providing FRA with all pertinent papers relating to all claims, thus providing the Government with the opportunity to avail itself of the right to control or assist in the defense or settlement of all such claims. In furtherance of its contractual obligations, it was Parsons' practice to notify the Contracting Officer/Government in writing of all such claims.

34. Parsons also provided more recent notice to FRA of these claims and its ability to assist or control in settlement or defense of the claims in its letters dated February 4, 2004, February 17, 2004, November 1, 2004, March 22, 2004, February 24, 2005, and May 5, 2005 attached hereto collectively as Exhibit I.

35. On May 5, 2005, Parsons submitted a claim to the FRA for indemnification under the Agreement, hoping to avoid the need for filing a formal claim. The FRA refused to grant this request.

36. On November 8, 2005, Parsons filed with the FRA a Statement of Claim under the Contract Disputes Act of 1978 seeking to recover $1,355,448.83 pursuant to FRA's indemnification obligation under the Agreement.

37. On December 1, 2005, the FRA responded to this claim contending it was not cognizable under the Contracts Dispute Act and that it fell under Public Law 85-804 and should be processed under Federal Acquisition Regulation ("FAR") Part 50.

38. In an effort to resolve this procedural dispute and again seeking to resolve this dispute informally, representatives of Parsons and FRA met in Washington, DC on January 12, 2006. No resolution was reached by the parties. However, the FRA representatives agreed to provide an explanation supporting its contention that the claim was properly filed under FAR Part 50 as well as the information it requested Parsons' submission contain.

39. On April 13, 2006, the FRA provided a letter to Parsons requesting that the claim be presented as an equitable adjustment under FAR Part 50 and itemizing the elements to be presented in the claim. (*See* Exhibit J)

40. On October 10, 2006, in response to FRA's April 13, 2006 letter, Parsons submitted a claim under FAR, Subpart 50.403.1 requesting a reimbursement in the amount of $1,400,497.92 under the indemnification provision of the Agreement. (*See* Exhibit K)

On January 3, 2007, the FRA wrote to Parsons objecting to the form of its October 10, 2006 letter and requesting it be resubmitted. (*See* Exhibit L)

41. On March 20, 2007, Parsons resubmitted its claim for equitable adjustment under FAR Part 50, seeking reimbursement in the amount of $1,400,497.92 under the indemnification provision of the Agreement. (*See* Exhibit M)

42. Despite the fact that Parsons has complied with all requirements necessary to obtain an equitable adjustment, on April 20, 2007, the FRA responded to Parsons' claim essentially denying each claim with the exception of an erroneous allowance of $20,833.33 credit to the $1,000,000 deductible requirement under the indemnification provision of the Agreement. (*See* Exhibit N)

43. On May 15, 2007, Parsons wrote to the FRA requesting clarification of whether its April 20, 2007 determination was a final decision on the claim. (*See* Exhibit O)

44. On May 29, 2007, the FRA responded stating that its response could be considered an exhaustion of administrative remedies. It did not state that its April 20, 2007 action was a final decision. (*See* Exhibit P)

45. On November 16, 2007, Parsons submitted a claim to the FRA for breach of contract for the Government's refusal to honor its indemnity obligations under the Agreement. (*See* Exhibit B)

46. On December 12, 2007, the FRA wrote to Parsons refusing to act on the November 16, 2007 claim for breach of contract. (*See* Exhibit A)

47. Based on the FRA's denial of Parsons' claim, Parsons now brings its breach of contract claim pursuant to the Contracts Disputes Act. If the FRA's breaches of the Agreement are not within the purview of the Contract Disputes Act, Parsons brings this claim pursuant to the Tucker Act.

## COUNT I
## Breach of Contract: Stamford Claims

48. DCP repeats and realleges the claims asserted in paragraphs 1 through 47 above.

49. As is more specifically set forth above, under the Agreement, FRA is obligated to indemnify DCP for damages, fees and expenses incurred in the WSA claims.

50. Pursuant to the terms of the Agreement, it was DCP's practice to provide FRA with notice of its claims to provide the FRA the opportunity to defend each claim. In spite of such notice, FRA did not defend any of the actions.

51. DCP payments for damages and fees associated with the A&C, WSA, a portion of the MBTA claims satisfy the $1,000,000 threshold for the indemnification provision.

52. FRA is obligated to indemnify DCP for the MBTA and Gordon-Finger claims to the extent they exceed the $1,000,000 threshold.

53. DCP has demanded that FRA reimburse it under the terms of its Indemnification Agreement. Despite repeated demands, FRA has refused to make payments under the Agreement.

54. As a result of this refusal, FRA is in breach of the Agreement. As a result of the FRA breach, DCP has been damaged and has been unable to recoup indemnity funds owed under the Agreement with respect to the Stamford claims.

**COUNT II**
**Breach of Contract: A&C Fuel Claims**

55. DCP repeats and realleges the claims asserted in paragraphs 1 through 54 above.

56. As is more specifically set forth above, under the Agreement, FRA is obligated to indemnify DCP for damages, fees and expenses incurred in the A&C claims.

57. Pursuant to the terms of the Agreement, it was DCP's practice to provide FRA with notice of its claims to provide the FRA the opportunity to defend each claim. In spite of such notice, FRA did not defend any of the actions.

58. DCP payments for damages and fees associated with the A&C, WSA, a portion of the MBTA claims satisfy the $1,000,000 threshold for the indemnification provision.

59. FRA is obligated to indemnify DCP for the MBTA and Gordon-Finger claims to the extent they exceed the $1,000,000 threshold.

60. DCP has demanded that FRA reimburse it under the terms of its Indemnification Agreement. Despite repeated demands, FRA has refused to make payments under the Agreement.

61. As a result of this refusal, FRA is in breach of the Agreement. As a result of the FRA breach, DCP has been damaged and has been unable to recoup indemnity funds owed under the Agreement with respect to the A&C Fuel claims.

**COUNT III**
**Breach of Contract: Massachusetts Bay Transportation Authority Claims**

62. DCP repeats and realleges the claims asserted in paragraphs 1 through 61 above.

63. As is more specifically set forth above, under the Agreement, FRA is obligated to indemnify DCP for damages, fees and expenses incurred in the MBTA claims.

64. Pursuant to the terms of the Agreement, it was DCP's practice to provide FRA with notice of its claims to provide the FRA the opportunity to defend each claim. In spite of such notice, FRA did not defend any of the actions.

65. DCP payments for damages and fees associated with the A&C, WSA, a portion of the MBTA claims satisfy the $1,000,000 threshold for the indemnification provision.

66. FRA is obligated to indemnify DCP for the MBTA and Gordon-Finger claims to the extent they exceed the $1,000,000 threshold.

67. DCP has demanded that FRA reimburse it under the terms of its Indemnification Agreement. Despite repeated demands, FRA has refused to make payments under the Agreement.

68. As a result of this refusal, FRA is in breach of the Agreement. As a result of the FRA breach, DCP has been damaged and has been unable to recoup indemnity funds owed under the Agreement with respect to the MBTA claims.

**COUNT IV**
**Breach of Contract: Gordon-Finger Claims**

69. DCP repeats and realleges the claims asserted in paragraphs 1 through 68 above.

70. As is more specifically set forth above, under the Agreement, FRA is obligated to indemnify DCP for damages, fees and expenses incurred in the Gordon-Finger claims.

71. Pursuant to the terms of the Agreement, it was DCP's practice to provide FRA with notice of its claims to provide the FRA the opportunity to defend each claim. In spite of such notice, FRA did not defend any of the actions.

72. DCP payments for damages and fees associated with the A&C, WSA, a portion of the MBTA claims satisfy the $1,000,000 threshold for the indemnification provision.

73. FRA is obligated to indemnify DCP for the MBTA and Gordon-Finger claims to the extent they exceed the $1,000,000 threshold.

74. DCP has demanded that FRA reimburse it under the terms of its Indemnification Agreement. Despite repeated demands, FRA has refused to make payments under the Agreement.

75. As a result of this refusal, FRA is in breach of the Agreement. As a result of the FRA breach, DCP has been damaged and has been unable to recoup indemnity funds owed under the Agreement with respect to the Gordon-Finger claims.

**<u>COUNT V</u>**
**Declaratory Judgment: Gordon-Finger Claims**

76. DCP repeats and realleges the claims asserted in paragraphs 1 through 75 above.

77. As a result of the FRA's failure to fulfill its contractual obligations, an actual controversy exists to whether the FRA will provide additional indemnification for the claims asserted by the Gordon-Finger Plaintiffs in the Chancery Court.

78. As a result of FRA's breach, DCP is entitled to declaratory relief that under the Agreement, FRA is obligated to indemnify DCP for any additional legal fees, expenses, and damages paid by DCP and the Gordon-Finger Plaintiffs in the Chancery Court action.

WHEREFORE, Parsons demands this Court:

1. award Parsons $1,400,497.92 for sums due under the indemnification clause;
2. declare that FRA is obligated to indemnify Parsons for any future expenses incurred in the Gordon-Finger claim;
3. award costs, interests and attorneys fees on this claim; and,
4. such other relief as this Court deems just and proper.

Respectfully submitted,

SEITZ, VAN OGTROP & GREEN, P.A.

GEORGE H. SEITZ, III (#667)
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19801
(302) 888-0600
(302) 888-0606
Attorneys for Plaintiff

Dated: February 7, 2008

Of Counsel:

Michael A. Hordell, Esquire
Heather Kilgore Weiner, Esquire
Pepper Hamilton LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, District of Columbia 20005-2004
Telephone: (202) 220-1232