IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PARSONS TRANSPORTATION GROUP, INC., )
)
Plaintiff, )
)
v. ) No. 08-79C
) (Chief Judge Damich)
)
THE UNITED STATES, )
)
Defendant. )

JOINT PRELIMINARY STATUS REPORT

Pursuant to Rule 16 and Appendix A to the Rules of the United States Court of Federal Claims ("RCFC"), and pursuant to the Court's February 22, 2008 Special Procedures Order, plaintiff, Parsons Transportation Group, Inc. ("Parsons"), and defendant, the United States, respectfully submit the following joint preliminary status report in response to the questions set forth in ¶ 4 of Appendix A and ¶ 6 of the Court's February 22, 2008 Special Procedures Order.

a. Does the Court have jurisdiction over the action?

Parsons asserts that yes, this Court has jurisdiction for breach of the contract under the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601-613 and the Tucker Act, 28 U.S.C. § 1491.

The United States asserts that it does not question, in general, that the Court possesses jurisdiction to entertain a Public Law 85-804 action such as this pursuant to the Tucker Act. The Court, however, does not possess jurisdiction pursuant to the CDA to entertain Parsons's claims. Pursuant to 48 C.F.R. § 33.205(a), requests for indemnification pursuant to Public

Law 85-804, 50 U.S.C. §§ 1431-1433, 1435, are not cognizable under the CDA.

In addition, the Court does not possess jurisdiction to entertain the claims that Parsons sets forth in Counts I, II, and III of the complaint. Those claims accrued no later than 1989 (Counts I and II) and 1995 (Count III), more than six years before the commencement of this action, and, therefore, are barred pursuant to the statute of limitations, 28 U.S.C. § 2501. The United States will seek discovery regarding whether 28 U.S.C. § 2501 bars review of any of the claims that Parsons sets forth in Count IV of the complaint.

The Court, also, does not possess jurisdiction to entertain the claim that Parsons sets forth in Count V of the complaint, because that claim is for declaratory relief.

b. Should the case be consolidated with any other case and the reasons therefor?

The case should not be consolidated with any other case.

c. Should the trial of liability and damages be bifurcated and the reasons therefor?

The trial of liability and damages should not be bifurcated.

d. Should further proceedings in this case be deferred pending consideration of another case before this Court or any other tribunal and the reasons therefor? Is there any basis for transferring or remanding the case to another tribunal, and are the parties aware of any related cases in this or any other tribunal.

Further proceedings in this case should not be deferred pending consideration of any other case before this Court or any

other tribunal. There is no basis for transferring or remanding the case to another tribunal, and the parties are not aware of any related cases in this or any other tribunal.

e. Will a remand or suspension be sought and the reasons therefor and the proposed duration?

A remand or suspension will not be sought.

f. Will additional parties be joined?

Additional parties will not be joined.

g. Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56 and, if so, what is a proposed schedule for the intended filing?

After discovery has been completed, plaintiff, Parsons, anticipates it may submit a motion for summary judgment pursuant to RCFC 56. It is anticipated that defendant will submit a motion to dismiss pursuant to RCFC 12(b). Plaintiff objects to the delay in the U.S. filing Rule 12(b) motions by September 2, 2008. Such motions rest on issues of law known to date by the Government and should be filed within 30 days from the date of this Preliminary Status Report.

Defendant anticipates filing motions pursuant to RCFC 12(b)(4), RCFC 56 and, possibly, RCFC 12(b)(1), by September 2, 2008. Defendant identifies that date because lead counsel for defendant is scheduled to be in trial in <u>White Buffalo Construction, Inc. v. United States</u>, No. 99-961C (Fed. Cl.), beginning August 4, 2008, and because defendant expects

that it will have to conduct discovery to support the RCFC 12(b)(1) and RCFC 56 motions that it anticipates filing.

h. What are the relevant factual and legal issues?

The parties agree that the following issues are not in dispute (Parsons considers the following facts are admitted and require no formal proof. The Government views the following as a statement of issues that are currently not in dispute that is subject to supplementation, pursuant to footnote 2 of the Court's Special Procedures Order, as the parties become aware of additional information.):

1. Plaintiff, Parsons, is a corporation existing under the laws of the State of Illinois, and is successor in interest to Deleuw, Cather Parsons ("DCP"), a joint venture comprised of DeLeuw Cather & Company, an Illinois corporation, and Ralph M. Parsons, a Nevada corporation.

2. FRA is a division of the United States Department of Transportation having offices at 1200 New Jersey Avenue, Southeast, Washington, D.C., 20590.

3. On or about October 25, 1979, FRA awarded Contract Number DOT-FR-76048 ("the contract") to DCP to provide services as prime architect-engineer and program manager for the Northeast Corridor Improvement Project ("NECIP"), a program undertaken by FRA pursuant to title 7 of the Railroad Revitalization and Regulatory Reform Act of 1976.

4. The NECIP was designed to make improvements to the rail facilities located on the Northeast Corridor served by the National Railroad Passenger Corporation ("Amtrak").

5. In the mid-1980s, DCP provided, pursuant to the contract, architectural/engineering services in connection with the design and construction of the Stamford Transportation Center in Stamford, Connecticut ("Stamford Station Project").

6. During the mid-1980s, DCP provided architectural/engineering services in connection with improvements made to the Amtrak's Wilmington rail yard. This work included the design and construction of a building known as the Wheel Shop in their Wilmington yard ("Wilmington Yard Project").

7. Pursuant to the contract, DCP also performed architectural engineering services in connection with the construction of renovations and improvements to the South Station and associated structures platforms, track and rail yards in Boston, Massachusetts ("the South Station Project") in coordination with the Massachusetts Bay Transportation Authority ("MBTA Project").

8. On April 25, 1988, the MBTA sued DCP in the Commonwealth of Massachusetts seeking damages upon its own behalf and as a result of claims brought by JF White Construction

Company ("White"), the project's general contractor, arising from an alleged delay to the South Station Project.

9. Section 14.01 of the contract provides:

> Pursuant to Public Law 85-804 (50 U.S.C. 1431-1435) and Executive Order 10789, as amended, and notwithstanding any other provision of this contract, but subject to the following sections of this Article XIV, the Government shall hold harmless and indemnify the A-E Contractor against:
>
> i. claims (including reasonable expenses of litigation or settlement) by third persons (including employees of the A-E Contractor) for death, personal injury, or loss of, damage to, or loss of use of property;
>
> ii. loss of or damage to property of the A-E Contractor, and loss of use of such property but excluding loss of profit; and
>
> iii. loss of, damage to, or loss of use of property of the Government but excluding loss of profit; to the extend that such a claim, loss or damage (A) arises out of or results from a risk defined in this contract to be unusually hazardous or nuclear in nature, (B) is not compensated by insurance or

otherwise, and (C) is in excess of the first $1,000,000 in the aggregate of all such claims, loss, or damage, which aggregate amount of claims, loss, or damage shall be borne by the A-E Contractor. Any such loss or damage within deductible amounts of A-E Contractor's insurance required to be maintained pursuant to this contract shall not be covered under this clause.

10. Section 14.06 of the contract provides:

In addition to the A-E Contractor's responsibilities under the "Insurance-Liability to Third Persons" clause of this contract, which are hereby made applicable to claims under this Article, the A-E Contractor shall (i) promptly notify the Contracting Office of any claim against, or of any loss by the A-E Contractor or any subcontractor which reasonably may be expected to involve indemnification under this Article, (ii) furnish evidence of proof of any claim, loss or damage covered by this Article in the manner and form required by the Government, permit and authorize the Government to direct, control or assist in the settlement or defense of any such claim or action. The cost of insurance (including self insurance), covering

a risk defined in this contract as unusually hazardous or nuclear in nature shall not be reimbursed either as a direct or indirect cost except to the extend that such insurance has been required or approved under the "Insurance-Liability to Third Persons" clause hereof.

11. Section 14.02 of the contract provides:

The Government shall not be liable for:

i. claims by the United States (other than those arising through subrogation) against the A-E Contractor; or

ii. losses affecting the property of such A-E Contractor; when the claim, loss or damage was caused by willful misconduct or lack of good faith on the part of any of the A-E Contractor's directors or officers, or principal officials. For purposes of this Article, the term "principal officials" means any of the A-E Contractor's managers, superintendents, or other equivalent representatives who have supervision or direction of:

A. all or substantially all of A-E Contractor's business, or

B. all or substantially all of A-E Contractor's operations at any one plant or separate location in which this contract is being performed, or

C. a separate and complete major industrial operation in connection with the performance of this contract.

The A-E Contractor shall not be indemnified under this Article for liability assumed under any contract or agreement unless such assumption of liability has been specifically authorized by the Secretary and approved by the Contracting Officer. When the Government has assumed liability for subcontracts, the term "A-E Contractor" in this section 14.02 shall include subcontractors.

12. Section 14.03 of the contract provides:

No payment shall be made by the Government under this Article unless the amount thereof shall first have been certified to be just and reasonable by the Secretary or his representative designated for such purpose. The rights and obligations of the parties under this Article shall survive the termination, expiration, or

completion of this contract. The Government may discharge its liability under this section by making payments to the A-E Contractor or directly to parties to whom the A-E Contractor may be liable.

Parsons identifies the following questions of fact remaining to be litigated:

1. Whether the Contract, as originally executed provided that DCP, would carry professional liability insurance to guard against any claims arising out of professional malpractice and further provided that the FRA was obligated to indemnify DCP under Article XIV up to one hundred million dollars ($100,000,000) against third party tort claims arising from professional services rendered by DCP on the NECIP.
2. Whether the Contract subsequently was amended and FRA agreed to indemnify DCP pursuant to authority granted FRA in the fiscal year 1979 DOT Appropriations Act.
3. Whether, as a result of such indemnification, DCP was not required to maintain professional errors and omissions insurance coverage for the NECIP but did retain comprehensive general liability insurance.
4. Whether these provisions were designed to protect DCP from claims that would otherwise be covered by

malpractice insurance and DCP looked to the FRA indemnification for that protection.

5. Whether in the mid-1980s, DCP provided under the Contract architectural/engineering services in connection with the design and construction of the Stamford Transportation Center in Stamford, Connecticut ("Stamford Station Project") and sustained losses, covered by the indemnification clause, resulting from such work.

6. Whether during the mid-1980s, DCP provided architectural/engineering services in connection with improvements made to the Amtrak's Wilmington rail yard and sustained losses, covered by the indemnification clause, resulting from such work. This work included the design and construction of a building known as the Wheel Shop in their Wilmington yard ("Wilmington Yard Project").

7. Whether under the Agreement, DCP also performed architectural engineering services in connection with the construction of renovations and improvements to the South Station and associated structures platforms, track and rail yards in Boston, Massachusetts ("the South Station Project") in coordination with the Massachusetts Bay Transportation Authority ("MBTA

Project"), and sustained losses, covered by the indemnification clause, resulting from such work.

8. Whether DCP in connection with the NECIP work under this Contract ("Bridge Project") performed architectural and engineering services in connection with the design of the Penn Mainline Bridge and sustained losses covered, by the indemnification clause, resulting from such work.

9. Whether Parsons' successors sustained claims for damages resulting from professional services rendered at the MBTA, Stamford Station and Wilmington Yard and Bridge Project.

10. Whether Parsons sustained losses recoverable under the indemnification clause in excess of $1 million dollars, including:

    a) whether Parsons sustained losses totaling not less than $806,472.07 as a result of claims arising from the A&C and Stamford Stations claims.

    b) whether Parsons sustained losses if not less than $978,943.43 as a result of claims arising from the MBTA Project.

    c) whether Parsons sustained losses of not less than $615,000 as a result of claims arising from the Wilmington Yard Project. Whether Parsons is also

threatened with additional losses as a result of these claims.

11. To the extent Parsons sustained losses in excess of $1 million dollars, what were Parsons' losses recoverable under the indemnity clause.
12. Whether Parsons placed FRA on notice of such claims.
13. Whether FRA is obligated to reimburse Parsons for potential future claims arising under the indemnification clause.

Parsons separately identifies the following issues of law:

1. Whether the FRA under the Contract is obligated to indemnify Parsons to the extent it sustained damage and incurred litigation expense ("Losses") in excess of $1,000,000 for claims arising from professional services performed under NECIP.
2. Whether the FRA breached the Contract by referring to indemnify for its Losses.
3. Whether Parsons provided notice of claims to the FRA and whether FRA has waived any technical defect in notice in view of its actual notice of these claims?
4. Plaintiff, Parsons, reserves the right to submit to this Honorable Court additional legal issues as its investigation and discovery continues.

The United States separately alleges that:

1. Parsons filed a number of requests for payments against FRA, based upon the indemnity, starting in 2005. FRA has rejected all of those requests.

2. FRA issued instructions to Parsons in April 2006 as to the information which Parsons should include in its request for an equitable adjustment (Exhibit J to the complaint). The instructions also provided for a February 28, 2007, deadline for submission of the request.

3. Parsons submitted its request late. Nevertheless, FRA accepted the request and issued its disposition of the request on April 20, 2007 (Exhibit N to the complaint). Of the total request net of the deductible of $1,400,497.92, containing five separate elements, FRA conditionally accepted one element of damages, in the amount of $20,833.33 (solely for purposes of being counted against the deductible), if Parsons could provide certain additional documentation, and denied all other elements of the request for an equitable adjustment. No additional documentation has been presented on the element of damages conditionally accepted.

4. Parsons filed another administrative claim in late 2007. FRA informed Parsons on December 12, 2007, that its administrative remedies have been exhausted by the request for an

equitable adjustment and that its remedy was the filing of an action in the United States Court of Federal Claims.

5. With respect to the MBTA claims, in 1995, Parsons entered into a reciprocal release, which released the United States from "any and all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages and any and all claims, demands and liabilities whatsoever of every name and nature, both in law and in equity, whether currently known or unknown, which Parsons has or may have that arise from or relate in any way to the design and construction, prior to the date of this Release, of renovations and improvements to the South Station and associated structures, platforms, track and rail yards in Boston, Massachusetts (the "South Station Project"), including, without limitation, matters that arise from or relate to claims or litigation brought against or involving the United States or any other parties in connection with the South Station Project, including, without limitation, claims or litigation brought by or involving the Massachusetts Bay Transportation Authority." The full text of the release is included in the appendix to this joint preliminary status report.

The United States separately asserts that the following issues are in dispute:

1. Whether the claims set forth in Counts I-IV of Parsons's complaint are barred by the statute of limitations, 28 U.S.C. § 2501.

2. Whether the Court possesses jurisdiction to entertain the claim set forth in V of Parsons's complaint because that claim is for declaratory relief.

3. Whether the "damages, fees, and expenses" alleged in Counts I and III of Parsons's complaint are covered by the provision quoted at paragraph 12 of the complaint.

4. Whether the claims set forth in Count III of Parsons's complaint are barred by a 1995 release.

5. Whether Parsons complied with the notice requirements of the contract in attempting to qualify for coverage under the indemnity provision.

6. Whether Parsons has already recovered its claim in Count I of the complaint as a contract cost or whether that claim was paid when the contract was closed out and final payment made.

7. Whether Parsons's documentation of attorneys fees is adequate to support its claims.

8. If Parsons is entitled to recover in this action, the amount of recovery.

9. Whether Parsons is entitled to a declaratory judgment that the United States is obligated to indemnify it for any future costs incurred in litigation pending against it, as requested at page 15 of the complaint.

i. What is the likelihood of settlement? Is alternative dispute resolution contemplated?

Parsons states the following:

While Parsons is willing to enter into good faith negotiations with the Government, it is unable to ascertain whether at this time settlement is likely. This case has been referred to ADR pursuant to the Automatic Referral Program.

The Government states the following:

The Court has assigned this case to Judge Hodges for the conduct of proceedings in accordance with the Notice of ADR Automatic Referral Program. Judge Hodges has invited the parties to contact the Court to discuss the merits of this case, and possible means of resolving it short of further litigation. The Government considers that ADR in this case is viable.

<u>Joint Proposed Scheduling Plan</u>:

i. The parties request Washington, D.C., as the place for trial and hearings in general; anticipate four days as the duration of trial of the entire case; and identify April 1, 2009, as the earliest date by which the case can reasonably be expected to be ready for trial;

ii. The parties do not anticipate the joinder of additional parties, but set July 15, 2008, as the date for joinder of additional parties;

iii. Defendant anticipates filing an RCFC 12(b)(1) motion to dismiss in part for lack of subject matter jurisdiction, an RCFC 12(b)(6) motion to dismiss in part for failure to state a claim upon which relief may be granted, and an RCFC 56 motion for partial summary judgment.

1. Defendant's motions will be filed by September 2, 2008.

2. Defendant intends to demonstrate in its motion to dismiss for lack of subject matter jurisdiction, that (1) the Court does not possess jurisdiction to entertain the claims set forth in Counts I, II, and III (and, depending upon what defendant learns through discovery, Count IV) of the complaint because those claims accrued more than six years before the commencement of this action, and, therefore, are barred pursuant to the statute of limitations, 28 U.S.C. § 2501; and (2) the Court does not possess jurisdiction to entertain the claim set forth in Count V, because that claim is for declaratory relief.

Defendant intends to demonstrate in its motion to dismiss in part for failure to state a claim upon which relief may be granted that the "damages, fees, and expenses" alleged in Counts I and III are not covered by the provision quoted at ¶ 12 of the complaint because they are not the type of loss described in that provision.

Defendant intends to demonstrate in its motion for partial summary judgment that (1) the claims set forth in Count III are barred by a 1995 release; and (2) the claims set forth in Count I are barred because (a) defendant may have already paid the claim set forth in Count I of the complaint, but Parsons delayed in pursuing its claim, that delay was both unreasonable and inexcusable, and that delay has resulted in prejudice to defendant in that, in the normal course of business, defendant destroyed its contract records such that it may be impossible for defendant to prove that it has paid that

claim; and (b) because defendant failed to give proper notice as required by the contract in order to comply with the indemnity provision.

3. Neither party desires that expert discovery precede defendant's motion for partial summary judgment;

iv. The case should not be conducted in phases;

v. Fact discovery will be completed by February 28, 2009. The case will likely not involve the discovery of classified material;

vi. Each party shall disclose its expert witnesses' identities and reports by December 15, 2008, and its rebuttal reports by January 30, 2009, and shall make its expert witnesses available for deposition by February 28, 2009;

vii. Expert discovery (which the parties do not anticipate will be needed) will be completed by February 28, 2009;

viii. The presumptive limits of ten depositions and 25 interrogatories per party should apply in this case;

ix. No physical or mental examinations of parties will be requested;

x. There are no other matters pertinent to the completion of discovery or that counsel deem appropriate for inclusion in the joint scheduling plan.

k. Are there special issues regarding electronic case management needs?

There are no special issues regarding electronic case management needs.

1. Is there other information of which the Court should be aware at this time?

There is no other information of which the Court should be aware at this time. The parties represent that on June 3, 2008, counsel held the early meeting of counsel as required in Appendix A ¶ 3. The parties stipulate to June 20, 2008 as the date for exchange of the initial disclosures set forth in RCFC 26(a)(1).

Appendix A Paragraph 7: the parties propose June 20, June 30, or July 1, 2008, at 10:00 a.m. for the preliminary status conference. (Lead counsel for defendant will be out of the office from June 23 through 27, 2008.)

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Mark A. Melnick
MARK A. MELNICK
Assistant Director

GEORGE H. SEITZ, III
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue
P.O. Box 68
Wilmington, DE 19801
Telephone: (302) 888-0600
Facsimile: (302) 888-0606

Attorney for Plaintiff

June 9, 2008

s/Timothy P. McIlmail
TIMOTHY P. MCILMAIL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 616-0342
Facsimile: (202) 514-7965

OF COUNSEL:
GARETH W. ROSENAU
Senior Attorney
Federal Railroad Administration

Attorneys for Defendant

June 9, 2008

Certificate of Filing

I hereby certify that on June 9, 2008, a copy of the foregoing Joint Preliminary Status Report was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

______________________________