APPENDIX TO JOINT PRELIMINARY STATUS REPORT

INDEX TO APPENDIX TO JOINT PRELIMINARY STATUS REPORT

Public Law 85-804, 50 U.S.C. §§ 1431-1433, 1435.. . . . . . . . . . 1

48 C.F.R. § 33.205(a).. . . . . . . . . . . . . . . . . . . . . . . 5

Release, Mar. 6, 1995.. . . . . . . . . . . . . . . . . . . . . . . 6

Contract Number DOT-FR-76048, Oct. 25, 1979.. . . . . . . . . . . . 8

FAR Part 50 — Extraordinary Contractual Actions.. . . . . . . . . 240

50 U.S.C.A. § 1431

United States Code Annotated Currentness

Title 50. War and National Defense (Refs & Annos)

Chapter 29. National Defense Contracts (Refs & Annos)

§ 1431. Authorization; official approval; Congressional action: notification of committees of certain proposed obligations, resolution of disapproval, continuity of session, computation of period

The President may authorize any department or agency of the Government which exercises functions in connection with the national defense, acting in accordance with regulations prescribed by the President for the protection of the Government, to enter into contracts or into amendments or modifications of contracts heretofore or hereafter made and to make advance payments thereon, without regard to other provisions of law relating to the making, performance, amendment, or modification of contracts, whenever he deems that such action would facilitate the national defense. The authority conferred by this section shall not be utilized to obligate the United States in an amount in excess of $50,000 without approval by an official at or above the level of an Assistant Secretary or his Deputy, or an assistant head or his deputy, of such department or agency, or by a Contract Adjustment Board established therein. The authority conferred by this section may not be utilized to obligate the United States in any amount in excess of $25,000,000 unless the Committees on Armed Services of the Senate and the House of Representatives have been notified in writing of such proposed obligation and 60 days of continuous session of Congress have expired following the date on which such notice was transmitted to such Committees. For purposes of this section, the continuity of a session of Congress is broken only by an adjournment of the Congress sine die at the end of a Congress, and the days on which either House is not in session because of an adjournment of more than 3 days to a day certain, or because of an adjournment sine die other than at the end of a Congress, are excluded in the computation of such 60-day period.

CREDIT(S)

(Pub.L. 85-804, § 1, Aug. 28, 1958, 72 Stat. 972; Pub.L. 93-155, Title VIII, § 807(a), Nov. 16, 1973, 87 Stat. 615; Pub.L. 101-510, Div. A, Title XIII, § 1313, Nov. 5, 1990, 104 Stat. 1670; Pub.L. 102-25, Title VII, § 705(f), Apr. 6, 1991, 105 Stat. 120.)

50 U.S.C.A. § 1432

United States Code Annotated Currentness

Title 50. War and National Defense (Refs & Annos)

Chapter 29. National Defense Contracts (Refs & Annos)

§ 1432. Restrictions

Nothing in this chapter shall be construed to constitute authorization hereunder for--

(a) the use of the cost-plus-a-percentage-of-cost system of contracting;

(b) any contract in violation of existing law relating to limitation of profits;

(c) the negotiation of purchases of or contracts for property or services required by law to be procured by formal advertising and competitive bidding;

(d) the waiver of any bid, payment, performance, or other bond required by law;

(e) the amendment of a contract negotiated under section 2304(a)(15) of Title 10 or under section 252(c)(13) of Title 41, to increase the contract price to an amount higher than the lowest rejected bid of any responsible bidder; or

(f) the formalization of an informal commitment, unless it is found that at the time the commitment was made it was impracticable to use normal procurement procedures.

CREDIT(S)

(Pub.L. 85-804, § 2, Aug. 28, 1958, 72 Stat. 972.)

50 U.S.C.A. § 1433

United States Code Annotated Currentness

Title 50. War and National Defense (Refs & Annos)

Chapter 29. National Defense Contracts (Refs & Annos)

§ 1433. Public record; examination of records by Comptroller General; exemptions: exceptional conditions; reports to Congress

(a) All actions under the authority of this chapter shall be made a matter of public record under regulations prescribed by the President and when deemed by him not to be detrimental to the national security.

(b) All contracts entered into, amended, or modified pursuant to authority contained in this chapter shall include a clause to the effect that the Comptroller General of the United States or any of his duly authorized representatives shall, until the expiration of three years after final payment, have access to and the right to examine any directly pertinent books, documents, papers, and records of the contractor or any of his subcontractors engaged in the performance of and involving transactions related to such contracts or subcontracts. Under regulations to be prescribed by the President, however, such clause may be omitted from contracts with foreign contractors or foreign subcontractors if the agency head determines, with the concurrence of the Comptroller General of the United States or his designee, that the omission will serve the best interests of the United States. However, the concurrence of the Comptroller General of the United States or his designee is not required for the omission of such clause--

(1) where the contractor or subcontractor is a foreign government or agency thereof or is precluded by the laws of the country involved from making its books, documents, papers, or records available for examination; and

(2) where the agency head determines, after taking into account the price and availability of the property or services from United States sources, that the public interest would be best served by the omission of the clause.

If the clause is omitted based on a determination under clause (2), a written report shall be furnished to the Congress.

CREDIT(S)

(Pub.L. 85-804, § 3, Aug. 28, 1958, 72 Stat. 972; Pub.L. 89-607, § 3, Sept. 27, 1966, 80 Stat. 851.)

50 U.S.C.A. § 1435

United States Code Annotated Currentness

Title 50. War and National Defense (Refs & Annos)

Chapter 29. National Defense Contracts (Refs & Annos)

§ 1435. Effective period

This chapter shall be effective only during a national emergency declared by Congress or the President and for six months after the termination thereof or until such earlier time as Congress, by concurrent resolution, may designate.

CREDIT(S)

(Pub.L. 85-804, § 4, formerly § 5, Aug. 28, 1958, 72 Stat. 973, renumbered § 5, Pub.L. 105-362, Title IX, § 901(r)(1)(B), Nov. 10, 1998, 112 Stat. 3291.)

C

**Effective: November 07, 2007**

Code of Federal Regulations Currentness
Title 48. Federal Acquisition Regulations System
Chapter 1. Federal Acquisition Regulation
Subchapter E. General Contracting Requirements
Part 33. Protests, Disputes, and Appeals (Refs & Annos)
Subpart 33.2 Disputes and Appeals (Refs & Annos)

**→33.205 Relationship of the Act to Pub.L. 85-804.**

(a) Requests for relief under Pub.L. 85-804 (50 U.S.C. 1431-1435) are not claims within the Contract Disputes Act of 1978 or the Disputes clause at 52.233-1, Disputes, and shall be processed under Subpart 50.1, Extraordinary Contractual Actions. However, relief formerly available only under Pub.L. 85-804; i.e., legal entitlement to rescission or reformation for mutual mistake, is now available within the authority of the contracting officer under the Contract Disputes Act of 1978 and the Disputes clause. In case of a question whether the contracting officer has authority to settle or decide specific types of claims, the contracting officer should seek legal advice.

(b) A contractor's allegation that it is entitled to rescission or reformation of its contract in order to correct or mitigate the effect of a mistake shall be treated as a claim under the Act. A contract may be reformed or rescinded by the contracting officer if the contractor would be entitled to such remedy or relief under the law of Federal contracts. Due to the complex legal issues likely to be associated with allegations of legal entitlement, contracting officers shall make written decisions, prepared with the advice and assistance of legal counsel, either granting or denying relief in whole or in part.

(c) A claim that is either denied or not approved in its entirety under paragraph (b) above may be cognizable as a request for relief under Pub.L. 85-804 as implemented by Subpart 50.1. However, the claim must first be submitted to the contracting officer for consideration under the Contract Disputes Act of 1978 because the claim is not cognizable under Public Law 85-804, as implemented by Subpart 50.1, unless other legal authority in the agency concerned is determined to be lacking or inadequate.

[72 FR 63030, Nov. 7, 2007]

SOURCE: 48 FR 42349, Sept. 19, 1983; 50 FR 2270, Jan. 15, 1985; 54 FR 5054, Jan. 31, 1989; 69 FR 25275, May 5, 2004; 69 FR 59700, Oct. 5, 2004; 70 FR 14954, March 23, 2005, unless otherwise noted.

AUTHORITY: 40 U.S.C. 121(c); 10 U.S.C. chapter 137; and 42 U.S.C. 2473(c).

48 C. F. R. 33.205, 48 CFR 33.205

Current through May 29, 2008; 73 FR 31014

Copr. © 2008 Thomson Reuters/ West

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

# RELEASE

Upon consideration of a reciprocal release from the United States, acting through the United States Department of Transportation, Federal Railroad Administration ("United States"), the receipt of which is hereby acknowledged, DeLeuw Cather & Company, the Ralph M. Parsons Company, DeLeuw Cather/Parsons, a joint venture, and each of them, ("DCP") hereby releases and forever discharges the United States, its officials, agents, employees, and attorneys, of and from any and all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages and any and all claims, demands and liabilities whatsoever of every name and nature, both in law and in equity, whether currently known or unknown, which DCP has or may have that arise from or relate in any way to the design and construction, prior to the date of this Release, of renovations and improvements to the South Station and associated structures, platforms, track and rail yards in Boston, Massachusetts (the "South Station Project"), including, without limitation, matters that arise from or relate to claims or litigation brought against or involving the United States or any other parties in connection with the South Station Project, including, without limitation, claims or litigation brought by or involving the Massachusetts Bay Transportation Authority.

IN WITNESS WHEREOF, DeLeuw Cather & Company, the Ralph M. Parsons Company, DeLeuw Cather/Parsons, a joint venture, and each

of them, have caused this Release to be signed by their respective officials, hereunto duly authorized this 6th day of March, 1995.

| Witness: | DeLeuw Cather & Company |
|---|---|
| [signature] | By: [signature] |
| | Title: |

| Witness: | Ralph M. Parsons Company |
|---|---|
| [signature] | By: [signature] |
| | Title: |

| Witness: | DeLeuw, Cather/Parsons, a joint venture |
|---|---|
| Paula M. Costantino | By: [signature] |
| | Title: |

2022137.01

Schedule

EXHIBIT
# 2A

Table of Contents


| ARTICLE | TITLE | Page No. |
|---|---|---|
| I | Definitions | 1 |
| II | Statement of Work | 4 |
| III | Responsibility for Total NEC System Performance | 6 |
| IV | Delivery Schedule and Completion of Performance | 7 |
| V | Project Direction | 7 |
| VI | ~~Key Personnel~~ | 8 |
| VII | Budget | 9 |
| VIII | Estimated Cost and Fixed Fee | 10 |
| IX | Incremental Funding Requests | 10 |
| X | Payment of Allowable Costs and Fixed Fee | 11 |
| XI | Period of Performance | 14 |
| XII | Indirect Costs (Provisional Billing Rates) | 14 |
| XIII | Advance Agreements | 15 |
| XIV | Indemnification under Public Law 85-804-Cost-Reimbursement Type Contracts (1974) Modified | 16 |
| XV | Government Furnished Property and Services | 20 |
| XVI | Interface with AMTRAK | 21 |
| XVII | Access to NEC | 22 |
| XVIII | Subcontracts | 22 |
| XIX | Miscellaneous | 23 |

Table of Contents (continued)


| | | Page No. |
|---|---|---|
| XX | Severability | 24 |
| XXI | Entire Agreement | 24 |
| XXII | Interpretation and Waiver | 24 |
| XXIII | OSHA Responsibility | 24 |
| XXIV | General Provisions | 25 |

| STANDARD FORM 252<br>AUGUST 1970 EDITION<br>GENERAL SERVICES ADMINISTRATION<br>FED PROC REG (41 CFR) 1-16.701<br>252-101 | **ARCHITECT-ENGINEER**<br>COST-PLUS-FIXED-FEE CONTRACT | 1. CONTRACT NO.<br>DOT-FR-76048<br>2. DATE OF CONTRACT<br>October 26, 1976 |
|---|---|---|

**3. NAME AND ADDRESS OF ARCHITECT-ENGINEER***

DeLeuw, Cather/Parsons
1201 Connecticut Avenue, N.W.
Washington, D.C. 20036

(Date of definitization October 25, 1979 )

**4. DEPARTMENT OR AGENCY AND ADDRESS***

Department of Transportation, Federal Railroad Administration, RAD-33
400-7th Street, S.W., Room ~~8210~~ 8206, Washington, D.C. 20590 (202) ~~755-9464~~ 9464

**5. PROJECT TITLE AND LOCATION**

Northeast Corridor Improvement Project
Washington, D.C. to Boston, Massachusetts

**6. CONTRACT FOR** *(General description of services to be provided)*

Architect-Engineering Services for systems engineering, program management, design, construction supervision, inspection, administration, procurement of long lead items and related services for the Northeast Corridor Improvement Program. These services are fully set out in this Standard Form 252 and the attached exhibits. This is definitization of Letter Contract DOT-FR-76048 dated October 26, 1976 and incorporates all changes thru the date of April 1, 1979. In consideration for the increased fixed fee, Indemnification under PL-85-804, and other benefits included in this definitized contract, DeLeuw, Cather/Parsons hereby waives any and all claims arising from constructive changes or change orders or any other cause based on facts and circumstances existing prior to April 1, 1979. All services specified herein shall be completed by ~~June 30, 1983~~, unless extended pursuant to the provisions of the Changes Clause of this contract.

**7. CONTRACT AMOUNT** *(Express in words and figures)*

~~Five~~ Hundred Forty ~~Six~~ Million Seventy Eight Thousand Five Hundred Fifty Six Dollars ~~($546,078,556)~~. $554,582,657 - mod # 74
~~$549,9[illegible]~~ ~~[illegible]~~ [illegible]

$540,593,028 (MOD 105)
540,6[illegible] 506.[illegible]4 (MOD 107)

**8. NEGOTIATION AUTHORITY**

41 U.S.C. (252) (c) (4)

**9. ADMINISTRATIVE, APPROPRIATION, AND ACCOUNTING DATA**

D7 33 20.10.00.000 35200 2590 (PR 6048-4)

*Include ZIP code, Area code, and Telephone Number

10. The United States of America (hereinafter called the Government) represented by the Contracting Officer executing this contract and the Architect-Engineer agree to perform this contract in strict accordance with the General Provisions (Standard Form 253) and the documents identified as follows, all of which are made a part of this contract:

A. This Standard Form 252 (August 1970)

B. Schedule consisting of a Table of Contents and Articles I through XXIV.

C. Exhibits 1 through 5 as follows:

| Exhibit | Title |
|---|---|
| 1 | Scope of Services |
| 2 | Reporting Requirements - Data Requirements |
| 3 (Task 200 series) | References |
| 4 (Task 306) deleted by MOD #7... | Procurement of Automatic Data Processing Equipment and Services |
| 5 (Task 113) | Implementation Plan - NECIP Logistics Planning System |

The parties hereto have executed this contract as of the date recorded in Item 2 above.

| | SIGNATURES | NAMES AND TITLES (Typed) |
|---|---|---|
| 11. ARCHITECT-ENGINEER | | |
| A | J.A. Caywood | J.A. Caywood, President DeLeuw, Cather & Company |
| B | Joseph Volpe, Jr. | Joseph Volpe, Jr., Senior Vice President, Ralph M. Parsons Company |
| C | | |
| D | | |
| 12. THE UNITED STATES OF AMERICA | | |
| | Joseph P. Sperty | Joseph P. Sperty, Director of Procurement, Northeast Corridor Improvement Project<br>Contracting Officer |

Standard Form 252 (8-70)

U.S. GOVERNMENT PRINTING OFFICE 1970

SCHEDULE

## ARTICLE I - DEFINITIONS

Section 1.01 Contractor
"Contractor" as used herein means and is interchangeable with the term "Architect-Engineer" and "A-E Contractor". "Contractor" means DeLeuw, Cather/Parsons. "DeLeuw, Cather/Parsons" means the Joint Venture of DeLeuw, Cather and Company and The Ralph M. Parsons Company.

Section 1.02 Associate Subcontractors
"Associate Subcontractors" means the following firms:

(a) Electrack, Inc.
(b) McDonald and Williams, AIA
(c) Parametric, Inc.
(d) Skidmore, Owings and Merrill
(e) Sverdrup & Parcel and Associates, Inc.
(f) Automated Sciences Group, Inc.
(g) Commonwealth Research Corporation
(h) Boone, Young and Associates
(i) Transportation and Distribution Associates, Inc.
(j) Louis T. Klauder and Associates
(k) Price, Williams and Associates
(l) Hudson, Leftwich

Any subcontracts with these firms must be approved pursuant to Clause 47 of the General Provisions entitled, "Subcontracts".

Section 1.03 AMTRAK
"AMTRAK" means the National Railroad Passenger Corporation.

Section 1.04 Conrail
"Conrail" means the Consolidated Rail Corporation.

Section 1.05 CC
"CC" means a construction contracting firm under contract to FRA for the performance of work on the NECIP.

Section 1.06 Contracting Officer
"Contracting Officer" means an official who has authority to enter into, administer and make changes to this contract and to make related determinations and findings on behalf of FRA. This includes a duly appointed successor or an authorized representative of the Contracting Officer acting within the limits of his authority.

Section 1.07 COTR
"COTR" means a Contracting Officer's Technical Representative. A COTR does not have the authority of a Contracting Officer to change the terms and conditions of this contract, whether pursuant to Clause 3 entitled "Changes" of the General Provisions of this contract or pursuant to any other provision of this contract, express or implied.

Section 1.08 FRA
"FRA" means the Federal Railroad Administration.

Section 1.09 Government
"Government" means the United States Government represented by FRA.

Section 1.10 NEC
"NEC" means the rail properties (as defined in section 102(12) of the Regional Rail Reorganization Act of 1973, as amended, P.C. 93-236, 87 STAT. 985, 45 U.S.C. 701 et seq.) designated to AMTRAK pursuant to sections 206(c)(1)(C) and 601(d) of the Regional Rail Reorganization Act and conveyed to AMTRAK by the Conrail on April 1, 1976.

Section 1.11 NECP
"NECP" means the Northeast Corridor Project within FRA.

Section 1.12 NECIP
"NECIP" means the Northeast Corridor Rail Passenger Service Improvement Program which encompasses activities associated with implementation of Title VII of the RRRR act.

Section 1.13 Project Director
"Project Director" means the individual appointed by the Administrator of FRA to head the NECIP and named in Section 5.01 or his designated representatives.

Section 1.14 RRRR Act or 4R Act
"RRRR Act or 4R Act" means the Railroad Revitalization and Regulatory Reform Act of 1976 (P.L. 94-210, 90 STAT. 31, 45 U.S.C. 801 et seq.) as amended.

Section 1.15 Work Element
"Work Element" means a discrete, individual item of work to be performed in the detailed design or construction of the NEC.

Section 1.16 Work Unit
"Work Unit" means an aggregation of Work Elements of one functional type, related to a specific site or facility, such as a station, a maintenance facility, or a designated geographical section of track.

Section 1.17 Work Package
"Work Package" means a document or assemblage of documents associated with a specific Work Unit or aggregation of Work Units for either design or construction:

(a) which describes the specifications and requirements for the detailed design of the Work Elements contained within the Work Unit(s), the schedule for performance and the estimated cost of the detailed design of each of the Work Elements, and a statement limiting the Governments' liability for costs therefore, all in contractual language suitable for inclusion in a subcontract for detailed design under this contract; or

(b) which contains drawings and specifications for the construction of one or more Work Units, the schedule and estimated cost for construction of each such Work Unit, and a statement limiting the Government's liability for costs therefor, all in contractual language suitable for inclusion in the Government's contract with AMTRAK or with a CC.

Section 1.18 Work Release
"Work Release" means a document issued by the COTR directing the A-E Contractor to proceed with any Work Package or other work to be performed under this contract, and containing a budget and a schedule for performance of work covered thereby.

Section 1.19 Railroad Development Project
"Railroad Development Project" means a complete program of development for a specific geographical segment or site on the NEC describing all work to be performed on such geographical segment or site as part of the NECIP.

Section 1.20 Corridor (previously Implementation) Master Plan
"Corridor Master Plan" means the plan to be produced by the A-E Contractor pursuant to Task 312 of the Scope of Services and approved by NECP which will define the work to be performed on the NECIP by Railroad Development Project and by Work Package and which will schedule all such work. ~~so that all services of the A-E Contractor hereunder, including demobilization and contract cleanup, will be completed by June 30, 1983.~~

Section 1.21 System Performance Specification
"System Performance Specification" means a complete comprehensive, cohesive statement of the performance which the NECIP will be designed and built to provide when completed, stated in terms of quantitative measures of performance wherever possible, and suitable for use as the basic standard for the design and construction of the NECIP (ref. Task 101).

Section 1.22 Subcontractors
"Subcontractors" includes purchase orders under this contract.

Section 1.23 ~~Project Manager~~
"~~Project Manager~~" means the individual furnished by the A-E Contractor to manage the performance of work under the contract, and ~~named in Section 6.01~~.

Section 1.24 Program Manager
"Program Manager" means the A-E Contractor exercises overall management responsibility for the implementation of the NECIP under FRA's direction and named in Section 2.02.

Mod #65 Section 1.25 Minority Business ...
(added) Section 1.26 Women-Owned

ARTICLE II - STATEMENT OF WORK

Section 2.01 Objective

The objective of this contract is to provide FRA with architect/engineer services as delineated in Section 2.02 which are needed by FRA in order to implement the NECIP so as to achieve the goals set forth in Section 703 of the RRRR Act within the funds authorized and appropriated therefor pursuant to Section 704 of the RRRR Act. The highlights of these goals, in the context of this contract, are as follows:

(a) Safety of the passengers and users of the Northeast Corridor must be paramount, and safety-related items should be completed prior to other items.

(b) Potential ridership should be considered, with those activities which benefit the greatest number of passengers completed before those involving fewer passengers.

(c) Reliability of intercity passenger service must be emphasized.

(d) Trip-time requirements as set forth in Section 703 of the 4R Act must be achieved to the extent compatible with the priorities cited in subparagraphs (a) through (c) of this paragraph.

(e) Reducing maintenance cost levels is desirable, and improvements which will pay for the investment by achieving lower operating or maintenance cost should be implemented.

(f) On-time performance of Northeast Corridor commuter and freight operations must be optimized, and construction operations should be scheduled in order that the fewest possible passengers are inconvenienced and service is maintained.

(g) Planning should focus on completing activities which will provide immediate benefits to the users of the Northeast Corridor.

are designed and constructed in such a manner that freight service will not be impaired.

Section 703(1)(A)(ii) of the 4R Act also addresses improvements to rail lines connecting, respectively, Harrisburg, Pennsylvania with Philadelphia, Pennsylvania - Albany, New York with New York, New York - Boston, Massachusetts with New Haven, Connecticut via Springfield, Massachusetts. Pursuant to Section 704(a)(1) of the 4R Act, such improvements are to be undertaken after the trip time goals set forth in Section 2.01(a) have been achieved. For the purposes of this contract, all activities to be undertaken will apply only to the NEC main line from Washington, D.C. to Boston, Massachusetts, except where specific and limited exceptions are made herein.

Section 2.02 Scope of Services

The A-E Contractor will be responsible through his in-house personnel, associate subcontractors, and subcontractors for all activities associated with producing the required construction documents to build the facilities required to implement the goals of Section 703 of the 4R Act of 1976. The A-E Contractor will serve as program manager for the implementation of the NECIP under FRA's direction. The A-E Contractor shall also, under FRA's direction, inspect the construction activities of AMTRAK and the various CC's and their respective subcontractors of all tiers. The A-E Contractor shall provide coordination and liaison with AMTRAK, Conrail, other modal users and relevant Federal, State and local agencies throughout the NEC to secure requisite approvals for various phases of the overall scope of services.

The services to be provided include the entire array of engineering and architectural services plus specialty services as required to execute the work as outlined in this work statement.

This scope of services has been organized into 4 basic categories as follows:

- 100 Systems Engineering
- 200 Engineering Design-Components and Facilities
- 300 Program Management
- 400 Construction Management

The specific tasks to be performed by the A-E Contractor are set forth in the Scope of Services which is attached hereto as Exhibit 1 and incorporated herein by reference.

In general, final documentation of the A-E Contractor's design work will consist of Work Packages for either design or construction. In the case of design Work Packages, these will normally be prepared by the A-E Contractor for performance by his design subcontractors other than associate subcontractors. Preliminary and final detailed design shall be accomplished by fixed price subcontracts supervised by the A-E Contractor, except where direct performance by the A-E Contractor or an associate subcontractor is clearly indicated for reasons of efficiency, economy, or technical considerations. No such assignment shall be made without the prior written consent of the Project Director.

In the case of construction and long lead material procurement Work Packages, these shall be prepared by the A-E Contractor for competitive bidding by CC's, or for performance by AMTRAK force account personnel or subcontractors as appropriate.

ARTICLE III - RESPONSIBILITY FOR TOTAL NEC SYSTEM PERFORMANCE

Section 3.01 Responsibility
As used in this Article III, "Responsibility" means the obligation to undertake or to initiate and to complete any properly authorized action within the scope of this contract necessary for NEC system performance, and to effect any corrections necessary to A-E Contractor output products where the Contracting Officer has determined that total NEC system performance is deficient.

Section 3.02 Responsibility for Design
The A-E Contractor shall be responsible for the professional quality and technical accuracy of each design, drawing, specification, or other design-related product or any services performed, produced or provided pursuant to this contract. The A-E Contractor shall so guide and coordinate such designs, drawings, specifications, and other design-related products and services that, when the NECIP is completed, the NEC will function properly and well as an integrated system. In doing so, the A-E Contractor shall assure that each subsystem of the NEC functions properly and well as an integrated subsystem.

Section 3.03 Errors or Deficiencies
At any time during the performance of this contract, but not later than six months after acceptance by the Government of the work performed by AMTRAK or a CC on the last Work Package completing a subsystem of the NEC, the Contracting Officer may require the A-E Contractor to correct or revise any design, drawing, specification, or other design-related product or any services performed under this contract to remedy any errors or deficiencies therein, or to remedy by correction or replacement, as directed by the Contracting Officer, any failure or deficiency of such subsystem which is due to an inadequacy or inadequacies of any one or any combination of designs, drawings, specifications, or other design-related products or any services performed, produced, or provided by the A-E Contractor under this contract, or both. The cost of activities undertaken pursuant to this Section 3.03 shall be allowable costs, subject to the provisions set forth in Clause 27 entitled "Allowable Cost, Fixed Fee, and Payment" of the General Provisions of this contract, but no additional fee shall be paid with respect thereto.

Section 3.04 Work Packages
The A-E Contractor shall so formulate construction Work Packages and so schedule the performance of construction Work Packages that all construction work performed on the NECIP can be performed in a logical sequence that will foster achievement of the goals of Section 703(1)(A)(i) of the RRRR Act and that, when all construction work performed on the NECIP is completed, the NEC will be an integrated railroad system which functions properly and well.

The A-E Contractor shall be responsible for the proper quality and thoroughness of inspections performed under this contract on work on the NECIP. The A-E Contractor shall inspect all construction work performed on the NECIP, whether by AMTRAK or a CC or a subcontractor of either at any tier, so as to assure that any deviation of such work from the design therefore approved by NECP or any construction deficiency shall be detected promptly. Whenever the A-E Contractor discovers any deviation of construction work from the design therefore approved by NECP or any construction deficiency, the A-E Contractor shall immediately notify AMTRAK or the CC, as appropriate. The A-E Contractor shall also be responsible for informing NECP concerning such inspections and the results thereof in accordance with the requirements of Task 403.

CONST. MGT. INSP. AUTHORITY ?

ARTICLE IV - DELIVERY SCHEDULE AND COMPLETION OF CONTRACT

Section 4.01 <u>Delivery Schedule</u>
Deliverable items prepared under this contract will be provided to the Contracting Officer in accordance with the requirements set forth in the Contract Data Requirements List which is attached hereto as Exhibit 2 and incorporated herein by reference.

Whenever this contract requires the A-E Contractor to render performance other than delivery of data, the A-E Contractor shall perform in accordance with the requirements set forth in this contract as authorized by appropriate Work Releases.

ARTICLE V - PROJECT DIRECTION

Section 5.01 <u>Project Director</u>
The Project Director is Louis S. Thompson, or such successor as FRA from time to time may designate. The Project Director shall not exercise the powers and responsibilities of a Contracting Officer with respect to the A-E Contractor.

Section 5.02 <u>Contracting Officer</u>
The Contracting Officer shall be as defined in Section ~~1.05.~~
No oral statement of any person and no written statement of any person other than the Contracting Officer shall modify or otherwise affect the terms or meaning of this contract. The A-E Contractor agrees that it shall not rely on the oral statement of any person other than the Contracting Officer for the interpretation of this contract.

Section 5.03 <u>Contracting Officer's Technical Representative</u>
The Contracting Officer shall designate in writing one or more COTR's. Each COTR shall be responsible for providing technical guidance to the A-E Contractor for a specified portion of the A-E Contractor's work under this contract, approving or disapproving each technical report submitted by the A-E Contractor with respect to that portion of the work under this contract, and evaluating that portion of the A-E Contractor's performance under this contract.

The A-E Contractor shall comply with the technical guidance received from each COTR unless he considers the guidance to be a change in the terms and conditions of this contract. In such event the A-E Contractor shall proceed to effect the requirements set forth in Clause 63 entitled "Notification of Changes" of the General Provisions of this contract.

Section 5.04 Technical Direction
The A-E Contractor will not proceed with any portion of the work to be performed pursuant to this contract until the A-E Contractor has received a Work Release therefor from the COTR.

(a) Each Work Release will contain specific directions to the A-E Contractor concerning performance of the work covered thereby. Upon receiving a Work Release from the COTR, the A-E Contractor will proceed immediately with the work covered by such Work Release. If the Contractor determines that he cannot complete work authorized on any work release within the approved schedule or budget for funds and manperiods, he will so notify the Project Director and obtain approval of a revised work release prior to exceeding the existing approval level.

(b) Subsection (a) of this Section 5.04 to the contrary notwithstanding, if the A-E Contractor thinks that all or any portion of a Work Release constitutes a change in the terms and conditions of this contract, the A-E Contractor shall immediately so inform the Contracting Officer pursuant to the provisions set forth in Clause 61 entitled "Notification of Changes" of the General Provisions.

ARTICLE VI - KEY PERSONNEL

1.1 Section 6.01 Listing

1.2 Delete the key personnel listing in its entirety and substitute thereof the following:

| Name | Position |
|---|---|
| R. H. Curtin | General Manager |
| R. P. Howell | Deputy General Manager |
| R. A. Kendall | Assistant Deputy General Mana |
| E. R. Stacey | Assistant to General Manager |
| N. C. Manitsas | Assistant General Manager, Su and Contracts |
| E. R. Sewell | Assistant General Manager, Engineering |
| R. Seedlock | Assistant General Manager, Construction |

COST SCHEDULE C — ~~MOD #49~~

Long Lead Items:
Estimated Cost ~~$163,000,000~~
Budget Amount $159,987,278

Mod #66

"Section 8.01 - Maximum Obligation

MOD 105

The total estimated cost for performance of this contract is ~~$524,964,258~~ 525,057,736.24 (107) plus a fixed fee of $15,628,770 for a total estimated (MOD 107) cost-plus-fixed-fee of ~~$540,593,028~~. $540,686,506.24 (107)

Section 8.02 Funding Limitation
The A-E Contractor will be reimbursed for the costs incurred by him in performing services hereunder, plus a fixed fee, in accordance with the applicable provisions of the Schedule and the General Provisions, subject to the following limitation made in respect thereto.

MOD 105

(a) Total funds available for payment and allotted to this contract: ~~$539,900,000~~ MOD 107 $539,993,478.24

(b) Estimated additional funds which may be provided, if funds are available: $693,028

(c) Total Estimated Cost (including a Fixed Fee): ~~$540,593,028~~ MOD 107 540,686,506.24

(MOD #68)

The total contract expenditures, including an appropriate portion of the fixed fee, shall not exceed the total of funds available. The General Provisions Clause 60 entitled "Limitation of Funds" shall apply in lieu of the Clause 26 entitled "Limitation of Cost" whenever an amount is stated in subsection (b) of this Section 8.02.

ARTICLE IX - INCREMENTAL FUNDING REQUESTS

Section 9.01 Requests
On or before September 1, 1977, and on each annual anniversary of that date, the A-E Contractor will submit to the Contracting Officer a request for funding for the following fiscal year (October 1 through September 30) based on an accompanying written estimate of the costs he expects to incur. If the A-E Contractor fails to submit an estimate by the required date, the Contracting Officer will make an estimate without input from the A-E Contractor. In either event, the Contracting Officer's final estimate of maximum costs shall be the total limit of contract funding for each fiscal year.

Section 9.02 Reporting
In addition to the reporting requirements of the General Provisions Clause 60 entitled "Limitation of Funds", the A-E Contractor shall immediately notify the Contracting Officer in writing

Section 6.02 Diversion Restriction

The personnel specified in Section 6.01 are considered to be essential to the work being performed hereunder. Prior to diverting any of the specified individuals to other programs, the A-E Contractor shall notify the Project Director reasonably in advance and shall submit justification (including proposed substitutions) in sufficient detail to permit evaluation of the impact on the program. No diversion shall be made by the A-E Contractor without the written consent of the Project Director: provided, that the Project Director may ratify in writing such diversion and such ratification shall constitute the consent of the Project Director required by this Section 6.02. The listing of key personnel may, with the consent of the contracting parties, be amended from time to time during the course of the contract to either add or delete personnel, as appropriate.

ARTICLE VII - BUDGET

The following budget sets limitations for reimbursement of costs for each schedule. Without the prior written approval of the Contracting Officer, the A-E Contractor may not exceed the total amount set forth in each schedule hereunder and costs may not be transferred between the schedules. The total estimated cost, including fee, for each cost schedule will be treated separately for the purposes of Clause 26 in the General Provisions entitled "Limitation of Cost" or, if applicable, Clause 60 entitled "Limitation of Funds".

Cost Schedule A

A-E Final Design
Estimated Cost:
Fixed Fee:
Total Budget Amo

Cost Schedule B

System Engineerin
Design Manageme
Program Managem
and Constructio
Management

Estimated Cost:
Fixed Fee:

Cost Schedule C

Long Lead Items
Estimated cost $159,687,778

Cost Schedule A MOD 105

| A-E Final Design: | |
|---|---|
| Estimated Cost: | $115,825,045 |
| Fixed Fee: | $ 504,178 |
| Total Budget Amount: | $116,329,223 |

Cost Schedule B

| Systems Engineering, Design Management, Program Management, and Construction Management: | |
|---|---|
| Estimated Cost: | $251,405,029 |
| Fixed Fee: | $ 15,124,592 |
| Total Budget Amount: | $266,529,621 |

(107)

Cost Schedule C

| Long Lead Items: | |
|---|---|
| Estimated Cost: | $157,734,184 |
| Total Budget Amount: | $157,734,184 |

if at any time the A-E Contractor expects to exceed its planned expenditure rate for the present quarter to a degree that indicates the amount funded will be exceeded prior to the end of the funding period.

ARTICLE X - PAYMENT OF ALLOWABLE COSTS AND FIXED FEE

Section 10.01 - Reimbursement of Costs Paid - Letter of Credit Method

(a) At the request of the A-E Contractor and subject to the requirements of this Section 10.01, the Government shall as an exception to the provisions of General Provision Clause 27 entitled "Allowable Cost, Fixed Fee, and Payment", make payment by use of the Letter of Credit method to reimburse the A-E Contractor for costs which have been paid and which constitute allowable costs pursuant to General Provision Clause 27, entitled "Allowable Cost, Fixed Fee, and Payment." Payment of fixed fee and any remaining costs which constitute allowable costs under General Provision Clause 27 will not be paid under this Letter of Credit method but will be paid to the A-E Contractor in accordance with Section 10.03.

(b) At the earliest feasible date after this contract is signed, the A-E Contractor shall submit to the Contracting Officer a statement of estimated cost, in a form satisfactory to the Contracting Officer, for costs for which the A-E Contractor will request reimbursement under the Letter of Credit Method during the then current quarter. At least ten (10) days prior to the first day of each succeeding quarter during the duration of this contract, the A-E Contractor shall submit to the Contracting Officer such statement of estimated costs to the reimbursed during such succeeding quarter.

(c) Promptly after receiving the first statement of estimated cost, the Government shall execute a Letter of Credit in an amount sufficient to pay such allowable costs during the then current quarter.

(i) The Letter of Credit shall be executed in the amount shown on the statement of estimated cost subject to any adjustments deemed necessary by the Government.

(ii) Upon execution of the Letter of Credit, it shall be transmitted to the Department of the Treasury.

(d) The A-E Contractor may draw on the Letter of Credit by presenting an original and two (2) copies of a properly executed Payment Voucher to the commercial bank named in the Letter of Credit. Each Payment Voucher will include a certification thereon signed by an appropriate official as follows:

I certify that the amount for which reimbursement is claimed includes only allowable costs which have been paid as defined in General Provision Clause 27, entitled "Allowable Costs, Fixed Fee, and Payment."

(Title) (Signature)

18 U.S.C. 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States, knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

The bank will then present the Payment Voucher to the designated Federal Reserve Bank for immediate payment.

(e) The A-E Contractor shall not present Payment Vouchers to the bank more frequently than once a day and shall not present Payment Vouchers for amounts less than $10,000.

(f) If the balance of funds available under the Letter of Credit are insufficient at any time to reimburse the A-E Contractor for allowable costs paid under this contract, the A-E Contractor shall promptly so advise the Contracting Officer in writing together with an estimate of funds needed for the remainder of the quarter. The Contracting Officer shall take appropriate action to amend the Letter of Credit.

(g) The Government shall make payment under this contract by Letter of Credit issued in accordance with 31 CFR Part 205 (Treasury Circular 1075) unless the Letter of Credit is revoked pursuant to subsection (i) of this Section 10.01. If the Letter of Credit is so revoked, the Government shall make all payments under this contract pursuant to Clause 27 of the General Provisions of this contract entitled, "Allowable Cost, Fixed Fee, and Payment."

(h) The Contracting Officer or the Department of the Treasury may revoke the unobligated portion of the Letter of Credit if:

(i) The A-E Contractor fails to comply with the reporting requirements of this Article X.

(ii) The A-E Contractor submits a Payment Voucher to the commercial bank for reimbursement of other than costs paid as defined in Clause 27 of the General Provision of this contract entitled, "Allowable Cost, Fixed Fee, and Payment."

(iii) The A-E Contractor fails to enforce the standards required under Section 5 (e)(3) of Treasury Circular 1075.

(i) When this contract is terminated or expires, the Letter of Credit shall be revoked.

Section 10.02 Proration of Fixed Fee

The A-E Contractor may submit invoices for fixed fee on a bi-weekly basis. Of the total contract fixed fee of ~~$12,061,317.~~ ~~[illegible]~~ (15,628,770

(i) $11,000,000

Paragraph (viii) is added:

(viii) $80,695, added by Modification 104 is allocated $16,995 to Schedule A and $63,700 to Schedule B. Payment of the additional fee in Schedule A (equitable adjustment for "In-House Design" set forth in DCP's Modification 11 dated July 11, 1985) will be made based on percentage of completion. $63,700 will be paid for Schedule B PMSE effort through September 30, 1985.

Paragraph (ix) is added as follows:

(ix) Of the fee set forth above in Cost Schedule A, $77,500 is paid in consideration for the contractor's performance of in-house design under Schedule A. This amount will be disbursed to the contractor on the basis of the percent completion of the in-house design work.

Paragraph (x) is added as follows:

(x) $693,300 will be paid on the basis of Schedule B effort expended for the period October 1, 1985 through September 30, 1987. Payment shall be made at the rate of $2,082.00 per manquarter. Should the effort expended under schedule B activities between October 1, 1985 and completion of the contract be less than the target 333 manquarter hours but more than the minimum 290.25 manquarters, and the Government has not exercised one or more of it's options under Article XXV, the Contractor shall be entitled to bill the balance of this fee set forth in the subparagraph (x), subject to any withholding provision of the contract.

...on 10 ...0, 1983, "In-House

...) $304,300 will be paid on the basis of Schedule B effort expended for th period October 1, 1984, through September 30, 1985. Payment will be made at the rate of $975.60 per manquarter.

... and the fixed fee in accordance with ...

ARTICLE XI - PERIOD OF PERFORMANCE

Section 11.01 Period of Performance

This is a ~~Term Type~~ LEVEL OF EFFORT contract. The period of performance is from the effective date of this contract through ~~June 30, 1983~~. SEPTEMBER 30, 1985 SEPTEMBER 30, 198 MOD 105

Section 11.02 Option to Extend

If as of September 30, 1985, the total effort expend in performance of the Scope of Wervices is less than 2050 Government shall have the option to extend the period of months. In the event the Government chooses to exercise imum effort limit set forth in Section 11.03, paragraph 2 manquarters in lieu of 2357.5 manquarter. It is further that continued performance of the contractor beyond March the Contractor to an equitable adjustment in fixed fee pu clause of this contract.

Section 11.03 - Level of Effort

"Section 11.03 - Level of Effort

1. The contractor shall furnish labor, facilities, and materials and other services necessary to perform Schedule B work requirements stated in Exhibit I.

2. (a) In accomplishing the Schedule B work set forth in Exhibit I during the period October 1, 1985 through September 30, 1987, and in consideration for payment of the fixed fee negotiated ... Contractor shall provide at least a minimum of

290.25, and a maximum of 333 direct labor manquarters (including overtime). This provision in no way alters the provisions of Clause 26, "Limitation of Cost."

(b) In the event direct labor manquarters in excess of the specified maximum amount are required to accomplish the scope of the work, and the Government has not exercised one or more of its options under Article XXV, any such additional effort authorized by the Contracting Officer shall form the basis for an adjustment to the fixed fee in accordance with the terms of this Article. In no event will such work be outside the general scope of work (Exhibit I) nor extend beyond the Period of Performance of this contract. The parties agree that any fee adjustment for any additional manquarters shall be based solely upon the quantity of additional manquarters being added to the maximum number of manquarters specified in this article.

(c) In the event fewer manquarters than the specified minimum number of direct labor manquarters are used by the contractor in accomplishing the prescribed work, and the Government has not invoked its rights under the clause of the General Provisions hereof entitled "Termination" during the contract period to adjust the contract for such reduced effort, an equitable adjustment shall be made in the fee. The parties agree that any fee adjustments shall be based solely upon the quantity of manquarters by which the number of direct labor manquarters furnished is less than the minimum number of direct labor manquarters specified in this Article. The resulting adjustment shall be evidenced by a contract modification."

ARTICLE XIII - ADVANCE AGREEMENTS

Article XII - INDIRECT COSTS - (PROVISIONAL BILLING RATES). Add the following paragraph:

"OVERHEAD CEILING RATES

reimbursement of overhead expenses during the period October 1, 1985 through September 30, 1987. However, in the event that lower overheads are established by audit during this period, the lower rates will apply."

| | | |
|---|---|---|
| Deleuw, Cather, & Company: | 110.62% | 83.71% |
| The Ralph M. Parsons Company: | 90.00% | 76.00% |

Direct Labor dollars are the basis for application of these ceiling overhead rates. These rates are established as a ceiling for maximum

shall be in accordance with the approved "DCP Travel Policy and Procedures for Application to the NECIP, dated October 1, 1976" as may be amended from time to time through mutual agreement of the A-E Contractor and the Contracting Officer.

Relocation costs upon satisfactory completion of assignment to original place of abode or another location selected by the contractor for personnel relocated for work under this contract are allowable under this contract provided such relocations do not exceed the costs of relocation to the point of origin. These will not be allowable if the employee is terminated at his convenience or at the convenience of the contractor prior to satisfactory completion of assignment.

Section 13.04 Application of Home Office Overhead
Home Office overhead will be applicable to all personnel supporting the project at facilities not provided for under this contract as direct costs and for personnel assigned TDY to the project at project facilities for sixty (60) days or less continuous assignment. Home office overhead will be applied to personnel assigned to the project and occupying existing A-E Contractor furnished facilities until direct costed facilities are available under this contract.

Section 13.05 Application of Off-Site Overhead
Off-site overhead will be applicable to all personnel, including field personnel, supporting the project other than those personnel for which home office overhead is applicable pursuant to Section 13.04.

Section 13.06 Bidding and Proposal Costs
The allowability and allocability of bidding and proposal costs will be determined pursuant to subpart 1-15.205-3 of the Federal Procurement Regulations as in effect on the date of the letter contract.

Section 13.07 Off-Site A-E Contract
This contract is an "off-site" A-E contract for purposes of determining allowability and allocability of costs in accordance with Clause 27 entitled "Allowable Cost, Fixed Fee and Payment" of the General Provisions.

ARTICLE XIV - INDEMNIFICATION UNDER PUBLIC LAW 85-804 - COST-REIMBURSEMENT TYPE CONTRACTS (1974) Modified.

Section 14.01
Pursuant to Public Law 85-804 (50 U.S.C. 1431-1435) and Executive Order 10789, as amended, and notwithstanding any other provision of this contract, but subject to the following sections of this Article XIV, the Government shall hold harmless and indemnify the A-E Contractor against:

i. claims (including reasonable expenses of litigation or settlement) by third persons (including employees of the A-E Contractor) for death, personal injury, or loss of, damage to, or loss of use of property;

ii. loss of or damage to property of the A-E Contractor, and loss of use of such property but excluding loss of profit; and

iii. loss of, damage to, or loss of use of property of the Government but excluding loss of profit;

to the extent that such a claim, loss or damage (A) arises out of or results from a risk defined in this contract to be unusually hazardous or nuclear in nature, (B) is not compensated by insurance or otherwise, and (C) is in excess of the first $1,000,000 in the aggregate of all such claims, loss, or damage, which aggregate amount of claims, loss, or damage shall be borne by the A-E Contractor. Any such claim, loss or damage within deductible amounts of A-E Contractor's insurance required to be maintained pursuant to this contract shall not be covered under this clause.

Section 14.02
The Government shall not be liable for:

i. claims by the United States (other than those arising through subrogation) against the A-E Contractor; or

ii. losses affecting the property of such A-E Contractor; when the claim, loss or damage was caused by the willful misconduct or lack of good faith on the part of any of the A-E Contractor's directors or officers, or principal officials. For purposes of this Article, the term "principal officials" means any of the A-E Contractor's managers, superintendents, or other equivalent representatives who have supervision or direction of:

A. all or substantially all of the A-E Contractor's business, or

B. all or substantially all of the A-E Contractor's operations at any one plant or separate location in which this contract is being performed, or

C. a separate and complete major industrial operation in connection with the performance of this contract.

The A-E Contractor shall not be indemnified under this Article for liability assumed under any contract or agreement unless such assumption of liability has been specifically authorized by the Secretary and approved by the Contracting Officer. When the Government has assumed liability for subcontracts, the term "A-E Contractor" in this section 14.02 shall include subcontractors.

Section 14.03
No payment shall be made by the Government under this Article unless the amount thereof shall first have been certified to be just and reasonable by the Secretary or his representative designated for such purpose. The rights and obligations of the parties under this Article shall survive the termination, expiration, or completion of this contract. The Government may discharge its liability under this section by making payments to the A-E Contractor or directly to parties to whom the A-E Contractor may be liable.

Section 14.04
With the prior written approval of the Contracting Officer, the A-E Contractor may include in any subcontract under this contract, the same provisions as those in this Article, whereby the A-E Contractor shall indemnify the subcontractor against any risk defined in this contract to be unusually hazardous or nuclear in nature. Such a subcontract shall provide the same rights and duties, and the same provisions for notice, furnishing of evidence or proof, and the like, between the A-E Contractor and the subcontractor as are established by this Article.

The Contracting Officer may also approve similar indemnification of subcontractors at any tier upon the same terms and conditions. Subcontracts providing for indemnification within the purview of this Article shall provide for the prompt notification to the Contracting Officer of any claim or action against, or of any loss by, the subcontractor which is covered by this Article, and shall entitle the Government at its election, to control or assist in the settlement or defense of any such claim or action. The Government shall indemnify the A-E Contractor with respect to his obligations to subcontractors under subcontract provisions thus approved by the Contracting Officer. The Government may discharge its obligations under this section by making payments directly to subcontractors or to parties to whom the subcontractor may be liable.

Section 14.05

If insurance coverage or other financial protection program approved by the Contracting Officer is reduced, the liability of the Government under this Article shall not be increased by reason of such reduction, unless such reduction is directed by the Contracting Officer.

Section 14.06

In addition to the A-E Contractor's responsibilities under the "Insurance-Liability to Third Persons" clause of this contract, which are hereby made applicable to claims under this Article, the A-E Contractor shall (i) promptly notify the Contracting Officer of any claim or action against, or of any loss by the A-E Contractor or any subcontractor which reasonably may be expected to involve indemnification under this Article, (ii) furnish evidence of proof of any claim, loss or damage covered by this Article in the manner and form required by the Government, permit and authorize the Government to direct, control or assist in the settlement or defense of any such claim or action. The cost of insurance (including self insurance), covering a risk defined in this contract as unusually hazardous or nuclear in nature shall not be reimbursed either as a direct or indirect cost except to the extent that such insurance has been required or approved under the "Insurance-Liability to Third Persons" clause hereof.

Section 14.07

"Limitation of Cost/Limitation of Funds" clauses of this contract do not apply to the Government's obligations under this Article. Such obligations shall be excepted from the release required under the "Allowable Cost" clause of this contract.

Section 14.08

For the purpose of this Article XIV, it is agreed that all risks, except the risks covered by the A-E Contractor's insurance policies covering automobile public liability, automobile physical damage (comprehensive and collision), workmen's compensation, and employer's liability, resulting from or in connection with the A-E Contractor's operations under this contract including, but not limited to services for systems engineering, program management, design, construction management, inspection and administration, and all related services for the Northeast Corridor Improvement Program as set out in and performed pursuant to this contract, as it may be changed from time to time in accordance with its terms, are unusually hazardous risks whether or not the A-E Contractor's liability arises from the design, fabrication, or furnishing of products or services under this contract and regardless of whether the harm caused by such risk occurs before or after delivery to the Government of services equipment, or materials under this contract, or before or after the acceptance of contract performance by the Government, or within or without the United States.

Section 14.09

The maximum liability of the Government under this Article XIV is $100,000,000. The parties agree that $100,000,000 is a reasonable estimate of the risk of liability to which the A-E Contractor is exposed under this contract, but that neither party now has an adequate factual basis for determining the true extent of that risk. Therefore, the parties further agree that the maximum liability of the Government under this Article XIV shall be increased and the contract modified accordingly:

(a) if settlements approved in writing by the Government or final judgments against the A-E Contractor and its subcontractors, or both, together with all reasonable expenses of litigation and settlements, for claims against which the A-E Contractor and its subcontractors are indemnified under section 14.01 exceed $100,000,000, in which event the maximum liability of the Government shall be increased to $100,000,000 plus the amount of such final judgments against the A-E Contractor and its subcontractors; or

(b) if an independent analysis of the risk to which the A-E Contractor and its subcontractors are indemnified under section 14.01 concludes that $100,000,000 is inadequate, the maximum liability of the Government shall be increased to an amount which, in the opinion of the Contracting Officer, the independent risk analysis shows to be adequate, but in no case shall the liability be set at an amount which is less than an amount reached through computa- tions provided for in (a) above.

Section 14.10

Claims submitted to the Secretary or his representative designated for such purpose for certification pursuant to section 14.03 that the amounts thereof are just and reasonable shall include an amount equal to the interest cost, including any fees, placement costs or similar expenses, incurred by the A-E Contractor for funds borrowed to satisfy a settlement or judgment between the date a settlement agreement is signed by all parties or a final judgment is entered by a court of competent jurisdiction and the date on which the Government makes payment to the A-E Contractor on such claim pursuant to this Article.

Section 14.11

The Government shall process any and all claims under this Article XIV in a reasonable, but expeditious, manner. Where funds then available to the Government are insufficient to pay claims certified pursuant to section 14.03 to be just and reasonable in amount, the Government shall promptly prepare and submit to the Congress a request for a supplemental appropriation in an amount sufficient to pay such claims or otherwise arrange to pay such claims. The FRA shall use its best efforts to obtain prompt Congressional approval of any supplemental appropriation sought pursuant to this Article.

Section 14.12

The Government's obligation under section 14.01 is expressly conditioned upon and subject to the availability of appropriated funds from which payment can be made.

ARTICLE XV - GOVERNMENT FURNISHED PROPERTY AND SERVICES

Section 15.01 Facilities

The A-E Contractor will be provided with construction job site field offices (including equipment located therein, utilities and janitorial services).

Section 15.02 Equipment

With the prior written approval of the Contracting Officer, or his authorized representative, the A-E Contractor may purchase, as an allowable cost item, the following types of equipment if necessary to the performance of this contract:

(a) Office Furnishings
(b) Office Equipment

Section 15.03 Services

The A-E Contractor will be provided with the following services:

(a) Flagmen and security police to cover work in high risk areas on property owned or controlled by AMTRAK and other property as specified by the Project Director.

(b) Security guards to protect material and other property in storage along the NEC portion of AMTRAK right-of-way.

ARTICLE XVI - INTERFACE WITH AMTRAK

Section 16.01 General Relationship
As directed by the Project Director, the A-E Contractor will work closely with AMTRAK. In order to develop the System Performance Specification (Task 101) and the Program Requirements Report (Task 102), and because AMTRAK is the user of the NEC, the A-E Contractor shall learn:

(a) AMTRAK's view of AMTRAK's needs for the NEC including, without limitation, such things as the types of equipment which AMTRAK foresees using or intends to use on the NEC, AMTRAK's projection of the maintenance required by various types of construction, and AMTRAK's projection of the consequences of maintenance requirements on AMTRAK's operations, labor force, and budget; and

(b) AMTRAK's projected requirements for use of the NEC during the NECIP by intercity passenger, commuter, and freight trains.

Section 16.02 Reviews
The A-E Contractor will permit AMTRAK to review the A-E Contractor's work informally from time to time and will submit drafts to AMTRAK of the output products from tasks in the 100 series and 200 series of the Scope of Services at the times required in this contract or in Work Releases.

Section 16.03 Construction Scheduling
Under AMTRAK's contract with FRA, AMTRAK is required to coordinate construction activities on property AMTRAK controls with rail operations on those properties. AMTRAK is also required to provide to the A-E Contractor detailed information concerning the times at which particular portions of the NEC controlled by AMTRAK will be made available for construction activities on the NECIP. The A-E Contractor will use such information supplied by AMTRAK in formulating schedules and budgets for construction Work Packages.

Section 16.04 Inspection
Pursuant to Task 403 the A-E Contractor will inspect all construction work performed by AMTRAK or an AMTRAK subcontractor of any tier.

Section 16.05 Cooperation from AMTRAK
FRA will use its best efforts to cause AMTRAK to cooperate fully with the A-E Contractor as required for performance of the A-E Contractor's work under this contract.

Section 16.06 Interacting of Subcontractors with AMTRAK
The A-E Contractor shall coordinate the interaction of its subcontractors with AMTRAK in accordance with this contract and with the direction of the Project Director.

Section 16.07 Safety Precautions
At all times while on AMTRAK property or any portion of the NEC over which trains are being operated, the A-E Contractor shall comply with AMTRAK's safety requirements.

ARTICLE XVII - ACCESS TO NEC

Section 17.01 Rights of Access
As needed for the A-E Contractor to perform under this contract, the Government will permit the A-E Contractor to use any rights of access which the Government has to any real property related to the NEC.

Section 17.02 Exercise of Rights of Access
The A-E Contractor shall exercise rights of access to real property provided to the A-E Contractor by the Government pursuant to Section 17.01 prudently, in full compliance with the limitations on such rights and with all duties associated with such rights, with due care in view of the hazardous activities conducted on the NEC, and without damaging in any way the real property so entered upon or personalty located thereon.

(a) The A-E Contractor will consult with the owner or the entity in possession and control, as appropriate, of any real property on which the A-E Contractor proposes to enter pursuant to any right of access provided under Section 17.01 before entering onto such real property and will coordinate its entry and activities at all times with the owner or entity in possession and control of such property.

(b) At all times when on the real property of others pursuant to rights of access provided under Section 17.01, each employee, agent, contractor, subcontractor, licensee, or invitee of the A-E Contractor will wear in plain sight identification supplied to the A-E Contractor by NECP for such purpose.

ARTICLE XVIII - SUBCONTRACTS

All subcontracts for detail design shall be awarded for a firm-fixed-price, except as otherwise agreed to by the Contracting Officer. Any other subcontracts shall be awarded, whenever possible and prudent, on a firm-fixed-price basis. The approved Procurement Procedures (Task 307) will be followed in preparation and award of all subcontracts.

ARTICLE XIX - MISCELLANEOUS

Section 19.01 No Waiver
The Government shall not be deemed to have waived or varied any agreement, covenant, requirement, obligation, duty, right, or other provision of any kind whatsoever unless such waiver or variation is in writing and signed by the Contracting Officer.

Except as specifically provided for in this contract, neither the Government's review, approval or acceptance of, nor payment for, any performance required under this contract to be rendered by the A-E Contractor shall be construed to operate as a waiver of any rights under this contract or of any cause of action arising out of the performance of this contract.

Section 19.02 Sole Benefit
This contract is for the sole benefit of the Government and the A-E Contractor.

Section 19.03 Duty Policy

(a) Except as provided in Clause 44, General Provisions, and with the exception of such overtime or multiple shift operations approved by the Project Director, the A-E Contractor and his subcontractors shall work a standard forty-hour, five-day week. also clause #11

(b) The A-E Contractor and his subcontractors will observe and be limited to nine holidays per year.

Section 19.04 Control and Reporting

(a) The work will be controlled and reported utilizing thirteen (13) four-week periods per year in lieu of calendar months.

(b) Control and reporting will be to the Task/Subtask level except as otherwise required in Exhibit 2 "Contract Data Requirements List".

Section 19.05 Order of Precedence
In the event of an inconsistency between provisions of this contract, the inconsistency shall be resolved by giving precedence in the following order:

(a) the Schedule (Less Articles II and XXIV)
(b) The General Provisions (Schedule Article XXIV)
(c) Scope of Services (Schedule Article II and Exhibit 1)
(d) Reporting Requirements - Data Requirements (Exhibit 2)
(e) Other Exhibits and Referenced Documents

ARTICLE XX - SEVERABILITY

If any term or provision hereof is or becomes invalid or unenforceable, Contractor and Government will in good faith attempt to replace the invalid or unenforceable term or provision by a term or provision which is valid and enforceable, and which comes as close as possible to expressing the intention of the invalid or unenforceable term or provision.

ARTICLE XXI - ENTIRE AGREEMENT

This Agreement and the Exhibits hereto constitute the entire agreement between the Parties and supersede all previous agreements and understandings with respect to the subject matter hereof, and may not be altered or amended except by the written agreement of the Parties. The contracting parties' duties, obligations, and liabilities hereunder shall be limited to those expressly provided in this Agreement and the Exhibits hereto, and no other duties, obligations, liabilities, or warranties shall be implied, except as provided by law. This agreement includes all changes through the date of definitization.

ARTICLE XXII - INTERPRETATION AND WAIVER

Section 22.01 Interpretation
The captions in the Agreement are for convenience of the Parties in identification of the several provisions and shall not constitute a part of this Agreement nor be considered interpretative hereof.

Section 22.02 Waiver
Failure of either Party to exercise any option, right, or privilege under this Agreement, or to demand compliance of any obligation or convenant of the other Party, shall not constitute a waiver of any such right, privilege, or option, or of the performance thereof, unless written waiver is required in such event and is evidenced by a properly executed instrument. A waiver of any term hereof or right hereunder in any specific instance shall not constitute a waiver in any other instance.

ARTICLE XXIII - OSHA RESPONSIBILITY

The contractor shall advise the Contracting Officer whenever it identifies a violation of the Occupational Safety and Health Act, 29 U.S.C. §651 et seq., or regulations promulgated thereunder, by a construction contractor or the National Passenger Railroad Corporation (AMTRAK). The Contracting Officer shall be responsible for all corrective and enforcement actions required by the Act and the regulations.

Add the following Article XXV - OPTIONS FOR SCHEDULE B SERVICES: MOD 103

"The Contracting Officer may, by written order, exercise any of the following three options to increase the level-of-effort specified in Article XI.

| | |
|---|---|
| Option I | 42.75 Manquarters |
| Option II | 20.00 Manquarters |
| Option III | 17.00 Manquarters |

Total estimated costs for Option I are $975,000 with no-fee and a maximum of 42.75 Manquarters.

Total estimated costs for Option II are $517,300, plus a fixed-fee of $49,500, and a maximum of 20 Manquarters.

Total estimated costs for Option III are $426,867, plus a fixed-fee of $41,200, and a maximum of 17 Manquarters.

The Contracting Officer may exercise the option by notification to the Contractor at any time during the term of this contract."

MOD #

[illegible] Mod 101.

ARTICLE XXIV - GENERAL PROVISIONS


| Clause Number | Title | Page |
|---|---|---|
| 1 | Definitions | 27 |
| 2 | Inspection | 27 |
| 3 | Changes | 27 |
| 4 | Termination | 28 |
| 5 | Disputes | 33 |
| 6 | Assignment of Claims | 34 |
| 7 | Government Rights (Unlimited) | 35 |
| 8 | Examination of Records by Comptroller General | 35 |
| 9 | Covenant Against Contingent Fees | 36 |
| 10 | Officials Not To Benefit | 37 |
| 11 | Contract Work Hours and Safety Standards Act - Overtime Compensation | 37 |
| 12 | Convict Labor | 38 |
| 13 • | Equal Opportunity Clause | 38 |
| 14 | Composition of Contractor | 40 |
| 15 • | Utilization of Small Business Concerns and Small Business Concerns Owned and Controlled by Socially and Economically Disadvantaged Individuals | 40 |
| 16 • | Small Business and Small Businesses Subcontracting Plan (Negotiated) | 41 |
| 17 | Certification of Drawings and Other Documents | 42 |
| 18 | Preparation of Specifications | 43 |
| 19 | Redesign Responsibility | 43 |
| 20 | Building Codes | 44 |
| 21 | Contractor's Data Certification | 44 |
| 22 | General Services Administration Supply Sources | 44 |
| 23 | Construction Exclusion | 44 |
| 24 | Information Exclusion | 45 |
| 25 | Requirements For Registration of Designers | 45 |
| 26 | Limitation of Cost | 45 |
| 27 | Allowable Cost, Fixed Fee and Payment | 46 |
| 28 | Utilization of Labor Surplus Area Concerns | 49 |
| 29 | Competition in Subcontracting | 50 |
| 30 | Walsh-Healey Public Contracts Act | 50 |
| 31 | Buy American Act | 50 |
| 32 | Dissemination of Contract Information | 51 |
| 33 | Notice of Delays | 51 |
| 34 | Gratuities | 52 |
| 35 | Priorities, Allocations, and Allotments | 52 |

| Clause Number | Title | Page |
|---|---|---|
| 36 | New Materials | 53 |
| 37 | Interpretation or Modification | 53 |
| 38 | Insurance — Liability to Third Persons | 53 |
| 39 | Excusable Delays | 55 |
| 40 | Audit | 56 |
| 41 | Price Reduction for Defective Cost or Pricing Data | 57 |
| 42 | Subcontractor Cost or Pricing Data | 58 |
| 43 | Negotiated Overhead Rates | 59 |
| 44 | Payment for Overtime Premiums | 60 |
| 45 | Government Property | 61 |
| 46 | Notice and Assistance Regarding Patent and Copyright Infringement | 66 |
| 47 | Subcontracts | 67 |
| 48 | Disabled Veterans and Veterans of the Vietnam Era | 69 |
| 49 | Authorization and Consent | 72 |
| 50 | Interest | 72 |
| 51 | Cost Accounting Standards | 73 |
| 52 | Administration of Cost Accounting Standards | 76 |
| 53 | Employment of the Handicapped | 77 |
| 54 | Preference for U.S. Flag Air Carriers | 78 |
| 55 | Labor Surplus Area Subcontracting Program | 79 |
| 56 | Clean Air and Water | 80 |
| 57 | Use of Questionnaires or Survey Plans | 81 |
| 58 | Use of U.S. - Flag Commerical Vessels | 82 |
| 59 | Printing, Binding and Duplicating | 83 |
| 60 | Limitation of Funds | 83 |
| 61 | Notification of Changes | 85 |
| 62 | Affirmative Action Program | 87 |
| 63 | Certification - Wage and Price Standards | 92 |

1. DEFINITIONS
(Standard Form 253, Apr 75)

(a) The term "head of the agency" or "Secretary" as used herein means the Secretary, or any other head of the executive or military department of other Federal agency; and the term "his duly authorized representative" means any person or persons or board (other than the Contracting Officer) authorized to act for the head of the agency or the Secretary.

2. INSPECTION
(DOTPR 12-7.5101-4, Oct 77)

The Government, through any authorized representative, may at all reasonable times, inspect or otherwise evaluate the work being performed hereunder and the premises in which it is being performed. If any inspection or evaluation is made by the Government on the premises of the Architect-Engineer or subcontractors, the Architect-Engineer shall provide and shall require his subcontractors to provide all reasonable facilities and assistance for the safety and convenience of the Government representatives in the performance of their duties. All inspections and evaluations shall be performed in such a manner as will not unduly delay the work.

3. CHANGES
(FPR 1-7.202-2, Jan 74 modified)

(a) The Contracting Officer may at any time, by a written order, and without notice to the sureties, if any, make changes within the general scope of this contract in the services to be performed.

(b) If any such change causes as increase or decrease in the estimated cost of, or the time required for, the performance of any part of the work under this contract, whether changed or not changed by any such order, or otherwise affects any other provision of this contract, an equitable adjustment shall be made: (1) In the estimated cost or delivery schedule, or both; (2) in the amount of any fixed-fee to be paid to the contractor; and (3) in such other provisions of the contract as may be affected, and the contract shall be modified in writing accordingly. **Any claim by the Contractor for adjustment under this clause must be asserted within 30 days from the date of receipt by the Contractor of the notification of change: Provided, however, that the Contracting Officer, if he decides that the facts justify such action, may receive and act upon any such claim asserted at any time prior to final payment** under this contract. Failure to agree to any adjustment shall be a dispute concerning a question of fact within the meaning of the clause of this contract entitled "Disputes." However, except as provided in paragraph (c), below, nothing in this clause shall excuse the Contractor for proceeding with the contract as changed.

(c) Notwithstanding the provisions of paragraphs (a) and (b) above, the estimated cost of this contract and, if this contract is incrementally funded, the funds allotted for the performance therefore shall not be increased or deemed to be increased except by specific written modification of the contract indicating the new contract estimated cost and, if this contract is incrementally funded, the new amount allotted to the contract. Until such modification is made, the Contractor shall not be obligated to continue performance or incur costs beyond the point established in the clause of this contract entitled "Limitation of Cost" or "Limitation of Funds."

4. TERMINATION
(FPR 1-8.702, Mar 72 modified)

(a) The performance of work under the contract may be terminated by the Government in accordance with this clause in whole, or from time to time in part:

(1) Whenever the Contractor shall default in performance of this contract in accordance with its terms (including in the term "default" any such failure by the Contractor to make progress in the prosecution of the work hereunder as endangers such performance), and shall fail to cure such default within a period of ten days (or such longer period as the Contracting Officer may allow) after receipt from the Contracting Officer of a notice specifying the default; or

(2) Whenever for any reason the Contracting Officer shall determine that such termination is in the best interest of the Government.

Any such termination shall be effected by delivery to the Contractor of a Notice of Termination specifying whether termination is for the default of the Contractor or for the convenience of the Government, the extent to which performance of work under the contract is terminated, and the date upon which such termination becomes effective. If, after notice of termination of this contract for default under (1) above, it is determined for any reason that the Contractor was not in default pursuant to (1), or that the Contractor's failure to perform or to make progress in performance is due to causes beyond the control and without the fault or negligence of the Contractor pursuant to the provisions of the clause of this contract relating to excusable delays, the Notice of Termination shall be deemed to have been issued under (2) above, and the rights and obligations of the parties hereto shall in such event be governed accordingly.

(b) After receipt of a Notice of Termination and except as otherwise directed by the Contracting Officer, the Contractor shall:

(1) Stop work under the contract on the date and to the extent specified in the Notice of Termination.

(2) Place no further orders of subcontracts for materials services or facilities, except as may be necessary for completion of such portion of work under the contract as is not terminated;

(3) Terminate all orders and subcontracts to the extent that they relate to the performance of work terminated by the Notice of Termination;

(4) Assign to the Government, in the manner and to the extent directed by the Contracting Officer, all of the right, title, and interest of the Contractor unde the orders or subcontracts so terminated, in which case the Government shall have the right, in its discretion, to settle or pay any or all claims arising out of the termination of such orders and subcontracts;

(5) With the approval or ratification of the Contracting Officer, to the extent he may require, which approval or ratification shall be final and conclusive for all purposes of this clause, settle all outstanding liabilities and all claims arising out of such termination of orders and subcontracts, the cost of which would be reimbursable in whole or in part, in accordance with the provisions of this contract;

(6) Transfer title to the Government (to the extent that title has not already been transferred) and deliver in the manner, at the times, and to the extent directed by the Contracting Officer, (i) the fabricated or unfabricated parts work in process completed work, supplies, and other material produced as a part of, or acquired in respect of the performance of, the work terminated by the Notice of Termination; (ii) the completed or partially completed plans, drawings, information, and other property which, if the contract had been completed, would be required to be furnished to the Government; and (iii) the jigs, dies, and fixtures, and other special tools and tooling acquired or manufactured for the performance of this contract for the cost of which the Contractor has been or will be reimbursed under this contract;

(7) Use his best efforts to sell, in the manner at the times, to the extent, and at the price or prices directed or authorized by the Contracting Officer, any property of the types referred to in (6) above; Provided, however, that the Contractor (1) shall not be required to extend credit to any purchaser, and (ii) may acquire any such property under the conditions prescribed by and at a price or prices approved by the Contracting Officer; And provided further, That the proceeds of any such transfer or disposition shall be applied in reduction of any payments to be made by the Government to the Contractor under this contract or shall otherwise be credited to the price or cost of the work covered by the price or cost of the work covered by this contract or paid in such other manner as the Contracting Officer may direct;

(8) Complete performance of such part of the work as shall not have been terminated by the Notice of Termination; and

(9) Take such action as may be necessary, or as the Contracting Officer may direct, for the protection and preservation of the property related to this contract which is in the possession of the Contractor and in which the Government has or may acquire an interest.

The Contractor shall proceed immediately with the performance of the above obligations notwithstanding any delay in determining or adjusting the amount of the fee, or any item of reimbursable cost, under this clause. At any time after expiration of the plant clearance period, as defined in Subpart 1-8.1 of the Federal Procurement Regulations (41 CFR 1-8.1), as the definition may be amended from time to time, the Contractor may submit to the Contracting Office a list, certified as to quantity and quality, of any or all items of termination inventory not previously disposed of, exclusive of terms the disposition of which has been directed or authorized by the Contracting Officer, and may request the Government to remove such items or enter into a storage agreement covering them. Not later than fifteen (15) days thereafter, the Government will accept such items and remove them or enter into a storage agreement covering the same: Provided, That the list submitted shall be subject to verification by the Contracting Officer upon removal of the items or, if the itmes are stored , within forty-five (45) days from the date of submission of the list, and any necessary adjustment to correct the list as submitted shall be made prior to final settlement.

(c) After receipt of a Notice of Termination, the Contractor shall submit to the Contracting Officer his termination claim in the form and with the certification prescribed by the Contracting Officer. Such claim shall be submitted promptly but in no event later than one year from the effective date of termination, unless one or more extensions in writing are granted by the Contracting Officer upon request of the Contractor made in writing within such one-year period or authorized extension thereof. However, if the Contracting Officer determines that the facts justify such action, he may receive and act upon any such termination claim at any time after such termination claim at any time after such one-year period or any extension thereof. However, if the Contracting Officer determines that the facts justify such action, he may receive and act upon any such termination claim at any time after such one-year period or any extension thereof. Upon failure of the Contractor to submit his termination claim within the time allowed, the contracting Officer may, subject to any review required by the contracting agency's procedures in effect as of the date of execution of this contract, determine, on the basis of information available to him, the amount, if any, due to the

Contractor by reason of the termination and shall thereupon pay to the Contractor the amount so determined.

(d) Subject to the provisions of paragraph (c), and subject to any review required by the contracting agency's procedures in effect as of the date of execution of this contract, the Contractor and the Contracting Officer may agree upon the whole or any part of the amount of amounts to be paid (including an allowance for the fee) to the Contractor by reason of the total or partial termination of work pursuant to this clause. The contract shall be amended accordingly, and the Contractor shall be paid the agreed amount.

(e) In the event of the failure of the Contractor and the Contracting Officer to agree in whole or in part, as provided in paragraph (d) as to the amounts with respect to costs and fee, or as to the amount of the fee, to be paid to the contractor in connection with the termination of work pursuant to this clause, the Contracting Officer shall, subject to any review required by the contracting agency's procedures in effect as of the date of execution of this contract determine, on the basis of information available to him, the amount, if any, due to the Contractor by reason of the termination and shall pay to the contractor the amount determined as follows;

(1) If the settlement includes cost and fee-

(i) There shall be included therein all costs and expenses reimbursable in accordance with this contract, not previously paid to the Contractor for the performance of this contract prior to the effective date of the Notice of Termination, and such of these costs as may continue for a reasonable time thereafter with the approval of or as directed by the Contracting Officer: Provided, however, That the Contractor shall proceed as rapidly as practicable to discontinue such costs;

(ii) There shall be included therein so far as not included under (i) above, the cost of setting and paying claims arising out of the termination of work under subcontracts or orders, as provided in paragraph (b)(5) above, which are properly chargeable to the terminated portion of the contract;

(iii) There shall be included therein the reasonable costs of settlement, including accounting, legal, clerical, and other expenses reasonably necessary for the preparation of settlement claims and supporting data with respect to the terminated portion of the contract and for the termination and settlement of subcontracts thereunder, together with reasonable storage, transportation, and other costs incurred in connection with the protection or disposition of termination inventory: Provided, however, That if the termination is for delivery of the Contractor there shall not be included any amounts for the preparation of the Contractor's settlement proposal; and

(iv) There shall be included therein a portion of the fee payable under the contract determined as follows-

(A) In the event of the termination of this contract for the convenience of the Government and not for the default of the Contractor, there shall be paid a percentage of the fee equivalent to the percentage of the completion of work contemplated by the contract, but exclusive of subcontract effort included in subcontractors' termination claims, less fee payments previously made hereunder; or

(B) In the event of the termination of this contract for the default of the Contractor, the total fee payable shall be such proportionate part of the fee (or, if this contract calls for articles of different types of such part of the fee as is reasonably allocable to the type of article under consideration) as the total number of articles delivered to and accepted by the Government bears to the total number of articles of a like kind called for by this contract.

If the amount determined under this subparagraph (1) is less than the total payment theretofore made to the Contractor the Contractor shall repay to the Government the excess amount.

(2) If the settlement includes only the fee, the amount thereof will be determined in accordance with subparagraph (1) (iv) above.

(f) Costs claimed, agreed to, or determined pursuant to paragraphs (c), (d), and (e) of this clause shall be in accordance with the contract cost principles and procedures in Part 1-15 of the Federal Procurement; Regulations (41 CFR 1-15) in effect on the date of this contract.

(g) The Contractor shall have the right of appeal, under the clause of this contract entitled "Disputes," from any determination made by the Contracting Officer under paragraph (c) or (e) above, except that, if the Contractor has failed to submit his claim within the time provided in paragraph (c) above and has failed to request extension of such time, he shall have no such right of appeal. In any case where the Contracting Officer has made a determination of the amount due under paragraph (c) or (e) above, the Government shall pay to the Contractor the following amount due under paragraph (c) or (e) above, the Government shall pay to the Contractor the following: (1) If there is no right of appeal hereunder or if no timely appeal has been taken, the amount so determined by the Contracting Officer, or (2) if an appeal has been taken, the amount finally determined on such appeal.

(h) In arriving at the amount due the Contractor under this clause there shall be deducted (1) all unliquidated advance or other payments theretofore made to the Contractor, applicable to the terminated portion of this contract, (2) any claim which the Government may have against the Contractor in connection with this contract, and (3) the agreed price for, or the proceeds of sale of, any materials, supplies, or other

things acquired by the Contractor or sold pursuant to the provisions of this clause and not otherwise recovered by or credited to the Government.

(i) In the event of a partial termination the portion of the fee which is payable with respect to the work under the continued portion of the contract shall be equitably adjusted by agreement between the Contractor an the Contracting Officer, and such adjustment shall be evidenced by an amendment to this contract.

(j) The Government may from time to time, under such terms and conditions as it may prescribe, make partial payments and payments on account against costs incurred by the Contractor in connection with the terminated portion of the contract whenever in the opinion of the Contracting Officer the aggregate of such payments shall be within the amount to which the Contractor will be entitled hereunder. If the total of such payments is in excess of the amount finally determined to be due under this clause, such excess shall be payable by the Contractor to the Government upon demand together with interest computed at the rate established by the Secretary of the Treasury pursuant to Pub. L. 92-41 (50 U.S.C. App. 1215 (b)(2) for the Renegotiation Board, for the period from the date such excess payment is received by the Contractor to the date on which such excess is repaid to the Government: Provided, however, That no interest shall be charged with respect to any such excess payment attributable to a reduction in the Contractor's claim by reason of retention or other disposition of termination inventory until 10 days after the date of such retention or disposition, or such later date as determined by the Contracting Officer by reason of the circumstances.

(k) The provisions of this clause relating to the fee shall be inapplicable if this contract does not provide for payment of a fee.

5. DISPUTES
(FPR 1-7.102-12, Mar 79)

(a) This contract is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601 et. seq.). If a dispute arises relating to the contract, the contractor may submit a claim to the Contracting Officer who shall issue a written decision on the dispute in the manner specified in DAR 1-314 (FPR 1-1.318).

(b) "Claim" means

(1) a written request submitted to the Contracting Officer;

(2) for payment of money, adjustment of contract terms, or other relief;

(3) which is in dispute or remains unresolved after a reasonable time for its review and disposition by the Government; and

(4) for which a Contracting Officer's decision is demanded.

(c) In the case of disputed requests or amendments to such requests for payment exceeding $50,000, or with any amendment causing the total request in dispute to exceed $50,000, the Contractor shall certify, at the time of submission as a claim, as follows:

> I certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief; and that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable.

(Contractor's Name)
(Title)

(d) The Government shall pay the contractor interest

(1) on the amount found due on claims submitted under this clause;

(2) at the rates fixed by the Secretary of the Treasury, under the Renegotiation Act, Public Law 92-41;

(3) from the date the Contracting Officer receives the claim, until the Government makes payment.

(e) The decision of the Contracting Officer shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency unless an appeal or action is timely commenced within the times specified by the Contract Disputes Act of 1978.

(f) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal or action related to the contract, and comply with any decision of the Contracting Officer.

6. ASSIGNMENT OF CLAIMS
(Standard Form 253, Apr 75)

(a) Pursuant to the provisions of the Assignment of Claims Act of 1940, as amended (31 U.S.C. 203, 41 U.S.C. 15), if this contract provides for payments aggregating $1,000 or more, claims for moneys due or to become due the Architect-Engineer from the Government under this contract may be assigned to a bank, trust company, or other financing institution, including any Federal lending agency, and may thereafter be further assigned and reassigned to any such institution. Any such assignment or reassignment shall cover all amounts payable under this contract and not already paid, and shall not be made to more than one party except that any such assignment or reassignment may be mae to one party as agent or trustee for two or more parties participating in such financing. Unless

otherwise provided in this contract, payments to assignee of any moneys due or to become due under this contract shall not, to the extent provided in said Act, as amended, be subject to reduction or set off. (The preceding sentence applies only if this contract is made in time of war or national emergency as defined in said Act; and is with the Department of Defense, the General Services Administration, the Energy Research and Development Administration, the National Aeronautics and Space Administration, the Federal Aviation Administration, or any other department or agency of the United States designated by the President pursuant to Clause 4 of the provison of section 1 of the Assignment of Claims Act of 1940, as amended by the Act of May 15, 1951, 65 Stat. 41.)

(b) in no event shall copies of this contract or of any plans, specifications, or other similar documents relating to work under this contract, if marked "Top Secret," "Secret," or "Confidental," be furnished to any assignee of any claim arising under this contract or to any other person not entitled to receive the same. However, a copy of any part or all of this contract so marked may be furnished, or any information contained therein may be disclosed, to such assignee upon the prior written authorization of the Contracting Officer.

7. GOVERNMENT RIGHTS (UNLIMITED)
(Standard Form 253, Apr 75)

The Government shall have unlimited rights, for the benefit of the Government, in all drawings, designs, specifications, notes and other work developed in the performance of this contract, including the right to use same on any other Government work without additional cost to the Government; and with respect thereto the Architect-Engineer agrees to and does hereby grant to the Government a royalty-free license to all such data which he may cover by copyright and to all designs as to which he may assert any rights or establish any claim under the design patent or copyright laws. The Architect-Engineer for a period of three (3) years after completion of the project agrees to furnish and to provide access to the originals or copies or all such materials on the request of the Contracting Officer.

8. EXAMINATION OF RECORDS BY COMPTROLLER GENERAL
(Standard Form 253, Apr 75)

(a) This clause is applicable if the amount of this contract exceeds $10,000 and was entered into by means of negotiation, including small business restricted advertising, but is not applicable if this contract was entered into by means of format advertising.

(b) The Architect-Engineer agrees that the Comptroller General of the United States or any of his duly authorized representatives shall, until the expiration of 3 years after final payment under this contract or such lesser time specified in either appendix M of the Armed Services Procurement Regulation or the Federal Procurement Regulations Part 1-20, as appropriate, have access to and the right to examine any directly pertinent books, documents, papers, and records of the Architect-Engineer involving transactions related to this contract.

(c) The Architect-Engineer further agrees to include in all his subcontracts hereunder a provision to the effect that the subcontractor agrees that the Comptroller General of the United States or any of his duly authorized representatives shall, until the expiration of 3 years after final payment under the subcontract or such lesser time specified in either Appendix M of the Armed Services Procurement Regulation or the Federal Procurement Regulations Part 1-20, as appropriate, have access to and the right to examine any directly pertinent books, documents, papers, and records of such subcontractor, involving transactions related to the subcontract. The term "subcontract" as used in this clause excludes (1) purchase orders not exceeding $10,000 and (2) subcontracts or purchase orders for public utility services at rates established for uniform applicability to the general public.

(d) The periods of access and examination described in (b) and (c), above, for records which relate to (1) appeals under the "Disputes" clause of this contract, (2) litigation or the settlement of claims arising out of the performance of this contract; or (3) costs and expenses of this contract as to which exception has been taken by the Comptroller General or any of his duly authorized representatives, shall continue until such appeals, litigation, claims, or exceptions have been disposed of.

9. COVENANT AGAINST CONTINGENT FEES
(Standard Form 253, Apr 75)

The Architect Engineer warrants that no person or selling agency has been employed or retained to solicit or secure this contract upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the Architect-Engineer for the purpose of securing business. For breach or violation of this warranty the Government shall have the right to annul this contract without liability or in its discretion to deduct from the contract price or consideration, or otherwise recover, the full amount of such commission, percentage, brokerage, or contingent fee.

10. OFFICIALS NOT TO BENEFIT
(Standard Form 253, Apr 75)

No member of or delegate to Congress, or resident commissioner, shall be admitted to any share or part of this contract, or to any benefit that may arise therefrom; but this provision shall not be construed to extend to this contract if made with a corporation for its general benefit.

11. CONTRACT WORK HOURS AND SAFETY STANDARDS ACT - OVERTIME COMPENSATION
(Standard Form 253, Apr 75)

This contract, in the extent that it is of a character specified in the Contract Work Hours and Safety Standards Act (40 U.S.C. 327-333), is subject to the following provisions and to all other applicable provisions and exceptions of such Act and the regulations of the Secretary of Labor thereunder.

(a) Overtime requirements. No Architect-Engineer or subcontractor contracting for any part of the contract work which may require or involve the employment of laborers, mechanics, apprentices, trainees, watchmen, and guards shall require or permit any laborer, mechanic, apprentice, trainee, watchman, or guard in any workweek in which he is employed on such work in excess of 8 hours in any calendar day or in excess of 40 hours in such workweek on work subject to the provisions of the Contract Work Hours and Safety Standards Act unless such laborer, mechanic, apprentice, trainee, watchman, or guard receives compensation at a rate not less than one and one-half times his basic rate of pay for all such hours worked in excess of 8 hours in any calendar day or in excess of 40 hours in such workweek, whichever is the greater number of overtime hours.

(b) Violation; liability for unpaid wages; liquidated damages, in the event of any violation of the provisions of paragraph (a), the Architect-Engineer and any subcontractor responsible therefor shall be liable to any affected employee for his unpaid wages. In addition, such Architect-Engineer and subcontractor shall be liable to the United States for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer, mechanic, apprentice, trainee, watchman, or guard employed in violation of the provisions of paragraph (a) in the sum of $10 for each calendar day on which such employee was required or permitted to be employed on such work in excess of 8 hours or in excess of the standard workweek of 40 hours with out payment or the overtime wages required by paragraph (a).

(c) Withholding for unpaid wages and liquidated damages. The Contracting Officer may withhold from the Architect-Engineer, from any moneys payable on account of work performed by the Architect-Engineer or subcontractor, such sums as may

administratively be determined to be necessary to satisfy any liabilities of such Architect-Engineer or subcontractor for unpaid wages and liquidated damages as provided in the provisions of paragraph (b).

(d) Subcontracts. The Architect-Engineer shall insert paragraph (a) through (d) of this clause and the preamble in all subcontracts, and shall require their inclusion in all subcontracts of any tier.

(e) Records. The Architect-Engineer shall maintain payroll records containing the information specified in 29 CRF 516.2(a). Such records shall be preserved for 3 years from the completion of the contract.

12. CONVICT LABOR
(Standard Form 253, Apr 75)

In connection with the performance of work under this contract, the Architect-Engineer agrees not to employ any person undergoing sentence of imprisonment except as provided by Public Law 89-176, September 10, 1965 (18 U.S.C. 4082(c)(2)) and Executive Order 11755.December 29, 1973.

13. EQUAL OPPORTUNITY CLAUSE
(Standard Form 253, Apr 75)

(The following clause is applicable unless this contract in exempt under the rules, regulations, and relevant orders of the Secretary of Labor (41 CFR, ch. 60).)

During the performance of this contract, the Architect-Engineer agrees as follows:

(a) The Architect-Engineer will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin. The Architect-Engineer will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, or national origin. Such action shall include, but not be limited to, the following: Employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Architect-Engineer agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the Contracting Officer setting forth the provisions of this Equal Opportunity clause.

(b) The Architect-Engineer will, in all solicitations or advertisements for employees placed by or on behalf of the Architect-Engineer, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, or national origin.

(c) The Architect-Engineer will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency Contracting Officer, advising the labor union or workers' representative of the Architect Engineer's commitments under this Equal Opportunity clause, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(d) The Architect-Engineer will comply with all provisions of Executive Order No. 11246 of September 24, 1965, as amended by Executive Order 11375 of October 13, 1967. and of the rules, regulations, and relevant orders of the Secretary of Labor.

(e) The Architect-Engineer will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, as amended by Executive Order No. 11375 of October 13, 1967, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(f) In the event of the Architect-Engineer's noncompliance with the Equal Opportunity clause of this contract or with any of the said rules, regulations, or orders, this contract may be canceled, terminated, or suspended, in whole or in part, and the Architect-Engineer may be declared ineligible for further Government contracts, in accordance with procedures authorized in Executive Order No. 11246 of September 24, 1965, as amended by Executive Order No. 11375 of October 13, 1967, and such other sanctions may be imposed and remedies invoked as provided in Executive Order No. 11246 of September 24, 1965, as amended by Executive Order No. 11375 of October 13, 1967, or by rule, regulations, or order of the Secretary of Labor, or as otherwise provided by law.

(g) The Architect-Engineer will include the provisions of paragraphs (a) through (g) in every subcontract or purchase order unless exempted by rules, regulations or orders of the Secretary of Labor issued pursuant to section 204 of Executive Order No. 11246 of September 24, 1965, as amended by Executive Order No. 11375 of October 13, 1967, so that such provisions will be binding upon each subcontractor or vendor. The Architect-Engineer will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions, including sanctions for noncompliance; Provided, however, that in the event the Architect-Engineer becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the Architect-Engineering may request the United States to enter into such litigation to protect the interests of the United States.

14. COMPOSITION OF CONTRACTOR
(DOTPR 12-7.5401-1, Jun 72)

If the Contractor hereunder is comprised of more than one legal entity, each entity shall be jointly and severally liable hereunder.

15. UTILIZATION OF SMALL BUSINESS CONCERNS AND SMALL BUSINESS CONCERNS OWNED AND CONTROLLED BY SOCIALLY AND ECONOMICALLY DISADVANTAGED INDIVIDUALS
(Federal Register, Vol. 44, No. 118 June 1979)

(a) It is the policy of the United States that small business concerns and small business concerns owned and controlled by socially and economically disadvantaged individuals shall have the maximum practicable opportunity to participate in the performance of contracts let by any Federal agency.

(b) The contractor hereby agrees to carry out this policy in the awarding of subcontracts to the fullest extent consistent with the efficient performance of this contract. The contractor further agrees to cooperate in any studies or surveys that may be conducted by the Small Business Administration or the contracting agency which may be necessary to determine the extent of the contractor's compliance with this clause.

(c) (1) The term "small business concern" shall mean a small business as defined pursuant to Section 3 of the Small Business Act and in relevant regulations promulgated pursuant thereto.

(2) The term "small business concern owned and controlled by socially and economically disadvantaged individuals" shall mean a small business concern:

(i) which is at least 51 per centum owned by one or more socially and economically disadvantaged individuals; or in the case of any publicly owned business at least 51 per centum of the stock of which is owned by one or more socially and economically disadvantaged individuals; and

(ii) whose management and daily business operations are controlled by one or more of such individuals.

The contractor shall presume that socially and economically disadvantaged individuals include Black Americans, Hispanic Americans, Native Americans, and other minorities, or any other indidivual found to be disadvantaged by the Small Business Administration pursuant to section 8(a) of the Small Business Act.

(d) Contractors acting in good faith may rely on written representations by their subcontractors as either a small business concern or a small business concern owned and controlled by socially and economically disadvantaged individuals.

16. SMALL BUSINESS AND SMALL DISADVANTAGED BUSINESS SUBCONTRACTING PLAN (NEGOTIATED)
(Federal Register, Vol. 44, No. 78, April 79)

(a) The offeror acknowledges that it is aware of the subcontracting plan requirements in this provision, and, if it is the apparent successful offeror, agrees to negotiate a plan which includes:

(1) Percentage goals (expressed in terms of percentage of total planned subcontracting dollars) for the utilization as subcontractors of small business concerns and small business concerns owned by socially and economically disadvantaged individuals; (For the purposes of the subcontracting plan, the contractor shall include all purchases which contribute to the performance of the contract, including a proportionate share of products, services, etc. whose costs are normally allocated as indirect or overhead costs.)

(2) The name of an individual within the employ of the offeror who will administer the subcontracting program of the offeror and a description of the duties of such individual;

(3) A description of the efforts the offeror will take to assure that small business concerns and small business concerns owned and controlled by socially and economically disadvantaged individuals will have an equitable opportunity to compete for subcontracts;

(4) Assurances that the offeror will include the clause entitled Utilization of Small Business Concerns and Small Business Concerns Owned and Controlled by Socially and Economically Disadvantaged Individuals in all subcontracts which offer further subcontracting opportunities and to require all subcontractors (except small business concerns) who receive subcontracts in excess of $500,000, or in the case of a contract for the construction of any public facility, $1,000,000, to adopt a plan similar to the plan agreed to by the offeror,

(5) Assurances that the offeror will submit such periodic reports and cooperate in any studies or surveys as may be required by the contracting agency or the Small Business Administration in order to determine the extent of compliance by the offeror with the subcontracting plan; and

(6) A recitation of the types of records the offeror will maintain to demonstrate procedures which have been adopted to comply with the requirements and goals set forth in the plan, including the establishment of source lists of small business concerns and small business concerns owned and controlled by socially and economically disadvantaged individuals; and efforts to identify and award subcontracts to such small business concerns.

(b) The offeror understands that:

(1) No contract will be awarded unless and until an acceptable plan is negotiated with the contracting officer and that an acceptable plan will be incorporated into the contract, as a material part thereof.

(2) An acceptable plan must, in the determination of the contracting officer, provide the maximum practicable opportunity for small business concerns and small business concerns owned and controlled by socially and economically disadvantaged persons to participate in the performance of the contract.

(3) If a subcontracting plan acceptable to the contracting officer is not negotiated within the time limits prescribed, the offeror shall be ineligible for an award. The contracting officer shall notify the contractor in writing of his reasons for determining a subcontracting plan to be unacceptable. Such notice shall be given early enough in the negotiation process to allow the contractor to modify the plan within the time limits prescribed.

(4) Prior compliance of the offeror with other such subcontracting plans under previous contracts will be considered by the contracting officer in determining the responsibility of the offeror for award of the contract.

(5) It is the offeror's responsibility to develop a satisfactory subcontracting plan with respect to both small business concerns and small business concerns owned and controlled by socially and economically disadvantaged individuals and that each such aspect of the offeror's plan will be judged independently of the other.

(c) Subcontracting plans are not required of small business concerns.

(d) The failure of any contractor or subcontractor to comply in good faith with (1) the clause entitled Utilization of Small Business Concerns and Small Business Concerns Owned and Controlled by Socially and Economically Disadvantaged Individuals or (2) an approved plan required by this Small Business and Small Disadvantaged Business Subcontracting Plan (Negotiated) provision, will be a material breach of such contract or subcontract.

(e) Nothing contained in this provision supersedes the requirements of Defense Manpower Policy 4A or any successor policy.

17. CERTIFICATION OF DRAWINGS AND OTHER DOCUMENTS (DOTPR 12-7.5101-6, Oct 77 modified)

The Architect-Engineer or his authorized representative, for example his subcontractor, shall sign the original tracings of all drawings and the first page of all specifications, estimates, or similar documents under the Architect Engineer's printed name and over the affixed replica of his professional seal or his registration certificate number, including the State or jurisdiction of issuance.

18. PREPARATION OF SPECIFICATIONS
(DOTPR 12-7.5103-2, Oct 77, modified)

The Architect-Engineer shall make reference to voluntary specifications and standards prepared by recognized professional, manufacturer or construction societies where the products and services to be furnished are commercially available and will adequately serve the Government's requirements, provided the products have an established commercial market acceptability. If voluntary specifications and standards are not available or will not adequately serve the Government's requirements, the Architect-Engineer shall use either a Federal specification or standard or furnish descriptions of the items or materials containing all the fundamental properties and all the essential requirements to be met by the items or materials, whichever in the opinion of the Architect-Engineer will best serve the Government's requirements. When an item or material cannot be described because of its technical construction or composition or because it is a proprietary item, the name of one, and if available, several, suitable commercial products shall be included as part of the required description, followed by the words "or equal". If it is determined that one and only one brand of item or material will meet the requirement, the Architect-Engineer shall so state and shall give full justification for that determination. Specifications will not duplicate, contradict or cover the same subject matter contained in the general and special provisions to be used with the construction contract. A complete set of construction contract general and special provisions will be furnished to the Architect-Engineer by the Contracting Officer.

19. REDESIGN RESPONSIBILITY
(DOTPR 12-7.5103-3, Oct 77, modified)

(a) The Architect-Engineer shall accomplish the design services required under this contract so as to permit the award of construction contracts in amounts not to exceed the estimated construction cost, including any amendment thereof, furnished by the Government for each work package.

(b) After bids or offers on the construction contract for each work package are opened, the estimated construction contract price shall be increased by a percentage representing the increase in the level of building construction costs during the period between the date of preparation of the work package and the date bids or offers were opened. The percentage of increase shall be determined by averaging the building construction cost indices for that period as published by the Engineering News-Record Building Cost Index, the Associated General Contractors of America Construction Cost Index, and E. H. Boeckh & Associates.

(c) If the lowest acceptable bid or offer exceeds by more than ten percent that estimated construction contract price, adjusted in accordance with paragraph (b) above, the Architect-Engineer shall redesign or make such revisions in the drawings and specifications of work package as are required to meet the

(iv) There shall be included therein a portion of the fee payable under the contract determined as follows-

(A) In the event of the termination of this contract for the convenience of the Government and not for the default of the Contractor, there shall be paid a percentage of the fee equivalent to the percentage of the completion of work contemplated by the contract, but exclusive of subcontract effort included in subcontractors' termination claims, less fee payments previously made hereunder; or

(B) In the event of the termination of this contract for the default of the Contractor, the total fee payable shall be such proportionate part of the fee (or, if this contract calls for articles of different types of such part of the fee as is reasonably allocable to the type of article under consideration) as the total number of articles delivered to and accepted by the Government bears to the total number of articles of a like kind called for by this contract.

If the amount determined under this subparagraph (1) is less than the total payment theretofore made to the Contractor the Contractor shall repay to the Government the excess amount.

(2) If the settlement includes only the fee, the amount thereof will be determined in accordance with subparagraph (1) (iv) above.

(f) Costs claimed, agreed to, or determined pursuant to paragraphs (c), (d), and (e) of this clause shall be in accordance with the contract cost principles and procedures in Part 1-15 of the Federal Procurement; Regulations (41 CFR 1-15) in effect on the date of this contract.

(g) The Contractor shall have the right of appeal, under the clause of this contract entitled "Disputes," from any determination made by the Contracting Officer under paragraph (c) or (e) above, except that, if the Contractor has failed to submit his claim within the time provided in paragraph (c) above and has failed to request extension of such time, he shall have no such right of appeal. In any case where the Contracting Officer has made a determination of the amount due under paragraph (c) or (e) above, the Government shall pay to the Contractor the following amount due under paragraph (c) or (e) above, the Government shall pay to the Contractor the following: (1) If there is no right of appeal hereunder or if no timely appeal has been taken, the amount so determined by the Contracting Officer, or (2) if an appeal has been taken, the amount finally determined on such appeal.

(h) In arriving at the amount due the Contractor under this clause there shall be deducted (1) all unliquidated advance or other payments theretofore made to the Contractor, applicable to the terminated portion of this contract, (2) any claim which the Government may have against the Contractor in connection with this contract, and (3) the agreed price for, or the proceeds of sale of, any materials, supplies, or other

things acquired by the Contractor or sold pursuant to the provisions of this clause and not otherwise recovered by or credited to the Government.

(i) In the event of a partial termination the portion of the fee which is payable with respect to the work under the continued portion of the contract shall be equitably adjusted by agreement between the Contractor an the Contracting Officer, and such adjustment shall be evidenced by an amendment to this contract.

(j) The Government may from time to time, under such terms and conditions as it may prescribe, make partial payments and payments on account against costs incurred by the Contractor in connection with the terminated portion of the contract whenever in the opinion of the Contracting Officer the aggregate of such payments shall be within the amount to which the Contractor will be entitled hereunder. If the total of such payments is in excess of the amount finally determined to be due under this clause, such excess shall be payable by the Contractor to the Government upon demand together with interest computed at the rate established by the Secretary of the Treasury pursuant to Pub. L. 92-41 (50 U.S.C. App. 1215 (b)(2) for the Renegotiation Board, for the period from the date such excess payment is received by the Contractor to the date on which such excess is repaid to the Government: *Provided, however,* That no interest shall be charged with respect to any such excess payment attributable to a reduction in the Contractor's claim by reason of retention or other disposition of termination inventory until 10 days after the date of such retention or disposition, or such later date as determined by the Contracting Officer by reason of the circumstances.

(k) The provisions of this clause relating to the fee shall be inapplicable if this contract does not provide for payment of a fee.

5. DISPUTES
(FPR 1-7.102-12, Mar 79)

(a) This contract is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601 et. seq.). If a dispute arises relating to the contract, the contractor may submit a claim to the Contracting Officer who shall issue a written decision on the dispute in the manner specified in DAR 1-314 (FPR 1-1.318).

(b) "Claim" means

(1) a written request submitted to the Contracting Officer;

(2) for payment of money, adjustment of contract terms, or other relief;

(3) which is in dispute or remains unresolved after a reasonable time for its review and disposition by the Government; and

(4) for which a Contracting Officer's decision is demanded.

(c) In the case of disputed requests or amendments to such requests for payment exceeding $50,000, or with any amendment causing the total request in dispute to exceed $50,000, the Contractor shall certify, at the time of submission as a claim, as follows:

> I certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief; and that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable.

(Contractor's Name)
(Title)

(d) The Government shall pay the contractor interest

(1) on the amount found due on claims submitted under this clause;

(2) at the rates fixed by the Secretary of the Treasury, under the Renegotiation Act, Public Law 92-41;

(3) from the date the Contracting Officer receives the claim, until the Government makes payment.

(e) The decision of the Contracting Officer shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency unless an appeal or action is timely commenced within the times specified by the Contract Disputes Act of 1978.

(f) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal or action related to the contract, and comply with any decision of the Contracting Officer.

6. ASSIGNMENT OF CLAIMS
(Standard Form 253, Apr 75)

(a) Pursuant to the provisions of the Assignment of Claims Act of 1940, as amended (31 U.S.C. 203, 41 U.S.C. 15), if this contract provides for payments aggregating $1,000 or more, claims for moneys due or to become due the Architect-Engineer from the Government under this contract may be assigned to a bank, trust company, or other financing institution, including any Federal lending agency, and may thereafter be further assigned and reassigned to any such institution. Any such assignment or reassignment shall cover all amounts payable under this contract and not already paid, and shall not be made to more than one party except that any such assignment or reassignment may be mae to one party as agent or trustee for two or more parties participating in such financing. Unless