IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARSONS TRANSPORTATION GROUP, INC., | : | |
| Plaintiff, | : | |
| v. | : | No. 08-79C<br>(Chief Judge Damich) |
| THE UNITED STATES, | : | |
| Defendant. | : | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I, II AND III FOR LACK OF SUBJECT MATTER JURISDICTION**

George H. Seitz, III (DE0667)
SEITZ, VAN OGTROP & GREEN, P.A
222 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-0600
(302) 888-0606 fax
gseitz@svglaw.com
Attorneys for Plaintiff

Of Counsel:
Michael A. Hordell, Esquire
Heather Kilgore Weiner, Esquire
Pepper Hamilton LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, District of Columbia 20005-2004
Telephone: (202) 220-1232

Dated: September 9, 2008

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

STATEMENT OF FACTS ..... 1

QUESTION PRESENTED ..... 6

ARGUMENT ..... 6

A. The Court of Federal Claims Possesses Jurisdiction Over DCP's Claims Pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601-613 ..... 6

B. In the Alternative, DCP's Claims Fall Within the Court's Six (6) Year Statute of Limitations ..... 11

C. No Statute of Limitations Apply to the A&C and WSA Claims ..... 14

D. Questions of Fact Prevent Consideration of the Application of the Statute of Limitations to the MBTA Losses ..... 15

CONCLUSION ..... 16

# TABLE OF AUTHORITIES

*Abraham v. United States*,
81 Fed. Cl. 178, 181 .......... 11

*Aerolineas Argentinas v. United States*,
77 F.3d 1564 , 1572 .......... 10

*Board of Governors of North Carolina v. United States*,
10 Ct. Cl. 27, 29 .......... 12
Brighton Village Assocs. V. United States,
52 F.3d 1056, 1060 .......... 12

*Brown v. American Family Ins. Group*,
989 P.2d 196, 198 .......... 10

*Coastal Corp. v. United States*,
713 F.2d 728, 730 .......... 7

*Drew v. Brownlee*,
95 Fed. Appx. 978 .......... 10

Hopland Band of Pomo Indians v. United States,
855 F.2d 1573, 1577 .......... 12

*Kinsey v. United States*,
852 F.2d 556, 557 .......... 12

*Malone v. United States*,
849 F.2d 1441, 1444 .......... 7

*Murdock Machine & Engineering Company of Utah v. United States*,
873 F.2d 1410, 1413 .......... 10

*Paragon Energy Corp. v. United States*,
645 F.2d 966, 975 .......... 9, 10

*Reynolds v. Army and Air Force Exch. Serv.*,
846 F.2d 746, 747 .......... 6, 12

*Scheuer v. Rhodes*,
416 U.S. 232, 236 .......... 6

Stack v. United States,
25 Cl. Ct. 634, 637 .......... 12

Todd v. United States,
386 F.3d 1091, 1094 .......... 11

United States v. Testan,
424 U.S. 392, 398 .......... 11

*Wille v. Geico Casualty Co.*,
2 P.3d 888, 892 .......... 11

## I. STATEMENT OF FACTS

### A. The Contract

On or about October 26, 1976, the Federal Railroad Administration ("FRA") awarded Contract Number DOT-FR-76048 (the "Contract") to DeLeuw Cather/Parsons ("DCP") to provide services as prime architect-engineer and program manager for the Northeast Corridor Improvement Project ("NECIP"), a program undertaken by FRA pursuant to Title 7 of the Railroad Revitalization and Regulatory Reform Act of 1976. (DCP2, ¶7)[1] The NECIP was designed to make improvements to the rail facilities located on the Northeast Corridor served by the National Railroad Passenger Corporation ("Amtrak") Id. ¶8. The Contract originally contemplated that DCP would carry professional liability insurance to guard against any claims arising out of professional malpractice. Id.

On December 8, 1978, the FRA wrote to DCP discussing the items being negotiated by DCP and FRA as part of the definitization process. These included the total amount of indemnification, whether *all* risks would be covered and the amount of the deductible, if any. (DCP159-161) DCP and the FRA agreed that all risks assumed by DCP under the Contract were covered by the indemnification clause, to the extent they exceeded $1,000,000 and were not otherwise covered by insurance. (DCP25-29)

However, as the definitization process moved forward, in a letter dated April 4, 1979, the FRA stated it would not pay for DCP's proposed malpractice insurance coverage. Instead, the FRA suggested providing the same protection to DCP through indemnification under Public Law 85-804. (DCP162-163) Subsequent negotiations led to a Memorandum of Negotiations dated May 31, 1979, pursuant to which the FRA agreed to indemnify DCP under P.L. 85-804 pursuant

[1] Parsons is filing a Joint Appendix in support of this brief and other related briefs filed concurrently herewith. References to the Appendix are designated as DCP___ followed by the page number(s).

to authority granted FRA in the fiscal year 1979 DOT Appropriations Act. (DCP31-32) The maximum liability of the Government under the indemnity was One Hundred million dollars ($100,000,000), but such amount was subject to increase if necessary. Id. As a result of this indemnification under P.L. 85-804, DCP was *not* required to maintain professional errors and omissions insurance coverage for the NECIP, but did retain comprehensive general liability insurance. Id.

As finally definitized on October 25, 1979, the indemnification provision provided the FRA would hold DCP harmless from:

> (i) claims (including reasonable expenses of litigation or settlement) by third persons (including employees of the A-E Contractor) for death, personal injury, or loss of, damage to, or loss of use of property;
>
> (ii) loss of or damage to property of the A-E Contractor, and loss of use of such property but excluding loss of profit…
>
> (iii) loss of, damage to, or loss of use of property of the Government but excluding loss of profit;
>
> to the extent that such a claim, loss or damage (A) arises out of or results from a risk defined in this contract to be unusually hazardous or nuclear in nature, (B) is not compensated by insurance or otherwise, and (C) is in excess of the first $1,000,000 in the aggregate of all such claims, loss, or damage, which aggregate amount of claims, loss, or damage shall be borne by the A-E Contractor. Any such claim, loss or damage within deductible amounts of A-E Contractor's insurance required to be maintained pursuant to this contract shall not be covered under this clause.

(DCP25) (emphasis added). Further, pursuant to §14.08 of the Contract, all of DCP's risks, except those covered by insurance, were defined as ultra-hazardous:

> Section 14.08
> For the purpose of this Article XIV, it is agreed that all risks, except the risks covered by the A-E Contractor's insurance policies covering automobile public liability, automobile physical damage (comprehensive and collision), workmen's compensation, and employer's liability, resulting from or in connection with the A-E

> Contractor's operations under this contract including, but not limited to services for systems engineering, program management, design, construction management, inspection and administration, and all related services for the Northeast Corridor Improvement Program as set out in and performed pursuant to this contract, as it may be changed from time to time in accordance with its terms, are usually hazardous risks whether or not the A-E Contractor's liability arises from the design, fabrication, or furnishing of products or services under this contract and regardless of whether the harm caused by such risk occurs before or after delivery to the Government of services equipment, or materials under this contract, or before or after the acceptance of contract performance by the Government, or within or without the United States.

DCP28 (emphasis added)

B. Review of the Claims

1. *Wilbur Smith Associates Claims*

In the mid-1980s, pursuant to the Contract, DCP provided architectural/engineering services for the design and construction of the Stamford Transportation Center in Stamford, Connecticut. DCP subcontracted this design to Wilbur Smith Associates ("WSA"). During construction, numerous design defects were encountered and WSA was required to perform additional redesign work to address the structural weaknesses caused by its design defects. (DCP150-156) WSA requested $1,210,845 from DCP for the extra work on the structural elements of the Stamford Transportation Center submitting its claims to an arbitration panel on October 27, 1986. Eventually, the panel awarded WSA only $377,636 of the amount it requested. DCP paid WSA $377,636 to satisfy the arbitration award. (DCP5-6)

2. *A&C Fuel Corporation Claims*

On April 18, 1985, a vessel owned by the A&C Fuel Corporation ("A&C") collided with the Penn Mainline Bridge operated by Amtrak and designed by DCP under the Contract. On October 31, 1986, A&C sued Amtrak to recover damages to its vessel resulting from the

collision. A&C claimed that DCP was aware of the negligent design work of its subcontractor, Ammann & Whitney, on the temporary operating system and failed to act to correct this known defect, which was a contributing factor in the collision. Parsons paid $20,833.33 to settle the A&C claim. (DCP6, ¶¶ 25-26)(DCP54-61, Ex. F)(DCP209-234)

3. *DCP Legal Fees*

Parsons was represented by the Gadsby & Hannah, P.A. law firm in both the WSA and A&C claim matters. The Gadsby firm billed DCP total legal fees in the amount of $408,002.74[2] for services performed on these claims. (DCP6, ¶¶ 27-29)(DCP 63, Ex. G) Parsons' losses from the WSA and A&C claim totaled $806,472.07 as of 1990.

4. *Massachusetts Bay Transportation Authority Claims*

Under the Contract, DCP also performed architectural and engineering services for renovations and improvements to the South Station and associated structures, platforms, track and rail yards in Boston, Massachusetts (the "South Station Project") in coordination with the Massachusetts Bay Transportation Authority ("MBTA"). On April 25, 1988, the MBTA sued Parsons in the Commonwealth of Massachusetts seeking damages resulting from delay claims brought by JF White Construction Company ("White"), the South Station Project's general contractor. (DCP7, ¶¶ 30-32)(DCP65-79)

---

[2] The record does not presently reflect the amount of legal fees attributable to each case. Discovery is continuing and Parsons has obtained copies of the Gadsby billings and is attempting to assign the costs associated with each claim matter. Some depositions may be required for a complete reconciliation. Parsons believes that if the Court determines the legal fees fall under the indemnification deductible, such a breakdown is unnecessary.

On or after March 16, 1995, DCP made a payment of $425,000 to settle the claims asserted by White. (DCP65-79) In addition, DCP paid attorneys' fees and expenses in excess of $553,943.43 associated with the South Station Project claims. (DCP80) Thus, DCP's total losses for the MBTA claim were $978,943.43. Parsons seeks to include this amount as part of the deductible and to the extent it exceeds the deductible, seeks reimbursement from the FRA under Article XIV of the Contract.

C. The Government's Breach

On March 20, 2007,[3] DCP submitted a claim to the FRA under FAR 50.403-1,[4] requesting reimbursement under the indemnification provision in the amount of $1,400,497.92. (DCP111-124) Despite the fact that DCP had complied with all requirements necessary to obtain an equitable adjustment, FRA, on April 20, 2007, responded to DCP's request, essentially denying each claim. (DCP126-135) On May 15, 2007, DCP wrote to the FRA requesting clarification of whether its April 20, 2007 determination was a final decision on the claim. (DCP137-138) On May 29, 2007, FRA responded that its response could be considered an exhaustion of administrative remedies, but did not say that its April 20, 2007 action was a final decision. (DCP140) On or about November 16, 2007, DCP submitted a claim to FRA seeking the sum certain of $1,400,497.92, plus interest for damages and fees sustained by Parsons. Specifically, the letter stated:

> This letter constitutes a claim by [DCP] for money owed to [DCP] due to the Government's breach of Contract Number DOT-FR-

[3] DCP initially submitted its request to FRA on October 10, 2006, but FRA, on January 3, 2007, objected to the form and requested that DCP resubmit. (DCP108-109)

[4] DCP submitted its claim pursuant to FAR 50.403-1 based on FRA's request that it do so. *See*, April 13, 2006 letter. (DCP94-96)

> 76048, which arose out of the Government's refusal to honor the contract's indemnity provision.

(DCP141-143) On December 12, 2007, FRA responded by letter, refusing to act on DCP's November 16, 2007 claim for breach of contract. (DCP145-146)

In response, on February 8, 2008, within one (1) year of the Contracting Officer's final decision,[5] DCP filed a suit in the Court of Federal Claims for breach of contract pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601-613.

## II. QUESTION PRESENTED

Whether DCP's claims resting on the WSA, A&C and MBTA losses, and associated legal fees and expenses, are barred by the statute of limitations?

## III. ARGUMENT

For the purposes of a motion to dismiss, the facts alleged in the complaint are construed in the light most favorable to the non-moving party, *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), and the facts alleged in the complaint are deemed to be true for the purposes of this motion. *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed. Cir.1988).

### A. The Court of Federal Claims Possesses Jurisdiction Over DCP's Claims Pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601-613

The Government contends this Court lacks jurisdiction over DCP's claims in Counts I, II and III of the Complaint for lack of subject matter jurisdiction. Specifically, the Government states that these claims should be dismissed because "they accrued more than six

[5] Regardless of which FRA letter the Court considers to constitute the Contracting Officer's final decision, DCP filed its breach of contract claim within the one (1) year time limitation.

years before Parsons commenced this action." Motion at 4. DCP disagrees with the Government's characterization of its claims. As is discussed in greater detail below, DCP's Counts I, II and III do not seek indemnification from the FRA under Public Law 85-804. Rather, DCP seeks relief from this Court for FRA's breach of the Contract by improperly failing to indemnify DCP in accordance with the provisions of the Contract. DCP's claims are classic breach of contract claims which fall squarely within the Contract Disputes Act, and thus, within jurisdiction of the Court of Federal Claims.

The Contract Disputes Act of 1978 ("CDA"), Pub. L. No. 95-563, 92 Stat. 23827 (1978) (codified at 41 U.S.C. §§ 601-613), provides jurisdiction to the United States Court of Federal Claims ("COFC") over claims based on "any express . . . contract . . . entered into by an executive agency for – (1) the procurement of property, other than real property in being; [or] (2) the procurement of services." 41 U.S.C. §§ 602(a)(3); 609; *see also Coastal Corp. v. United States*, 713 F.2d 728, 730 (Fed. Cir. 1983). The CDA broadened the Court's jurisdiction to include "all disputes relating to a contract, including breach of contract issues." *Malone v. United States*, 849 F.2d 1441, 1444 (Fed. Cir. 1988).

Under the CDA, a contractor must first submit a claim against the government relating to a contract to the contracting officer for a final decision. 41 U.S.C. § 605(a) (2002). A final decision by the contracting officer, or the failure of the contracting officer to render a decision within the specified time period, serves as the basis for appeal to this Court. 41 U.S.C. § 609(a) (2002); 41 U.S.C. § 605(c)(5) (2000). The CDA provides that an action "shall be filed within twelve months from the date of receipt by the contractor of the decision of the contracting officer concerning the claim." 41 U.S.C. § 609(a)(3) (2002). The CDA further provides that "[t]he

contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor." 41 U.S.C. § 605(a) (2000).

In the instant case, DCP's claims clearly fall within this Court's CDA jurisdiction. There is no dispute that the FRA awarded Contract Number DOT-FR-76048 to DCP to provide services as prime architect-engineer and program manager for the Northeast Corridor Improvement Project. There is also no dispute that the Contract included the P.L. 85-804 indemnification provision. The FRA breached the Contract on April 20, 2007 when it refused to indemnify DCP in accordance with the Contract. As required by the CDA, DCP submitted a certified claim to FRA's Director, Acquisition & Grants Services, on November 16, 2007, requesting a final decision from the contracting officer for money owed to DCP due to the Government's breach.[6] FRA denied DCP's claim on December 17, 2007, refusing to indemnify DCP in accordance with the Contract, and thus, breaching the Contract. Upon denial of the claim, DCP timely filed its breach of contract claims, on February 8, 2008, within a year of the contracting officer's final decision.

Although the precise jurisdictional issue of breach of contract for failure to comply with Public Law 85-804 has not been previously addressed by this Court, the Armed Services Board of Contract Appeals ("ASBCA") considered similar issues in *The Boeing Co.*, ASBCA No. 54853, 06-1 BCA ¶ 33270. There, The Boeing Company ("Boeing") submitted a certified claim to the Contracting Officer for recovery pursuant to the Public Law 85-804 indemnification clause in its contract with the United States Air Force ("Air Force"). When the Air Force denied Boeing's claim, Boeing filed suit alleging that the Air Force breached its contract by failing to

---

[6] DCP submitted its claim to Illona M. Williams, FRA's Director of Acquisition & Grants Services, since it was unable to identify the current contracting officer. Ms. Williams as Director is in charge of FRA's procurement staff.

honor its indemnification obligations to Boeing. The Air Force argued, *inter alia*, that the CDA did not confer jurisdiction to the ASBCA to hear appeals under Public Law 85-804 and that Boeing's exclusive remedy was to seek relief under Public Law 85-804. The ASBCA disagreed with the Air Force, finding that Boeing's allegations "plainly fall within our breach jurisdiction." *Boeing* at 11. The ASBCA explained:

> [T]he complaint alleges that each of the contracts was for the procurement of property or services (findings 1, 6, 9, 14, 18), which brings the contracts within 41 U.S.C. § 602(a). The complaint also alleges compliance with other statutory prerequisites, such as submission of a certified claim and a final decision by the contracting officer (finding 28). Substantively, the complaint alleges the classic breach of contract elements of nonperformance of a contractual duty, and resulting damages (finding 29). *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS §§ 235(2), 236 (1979). As we have found, for the development contract, as well as for the first through fourth production contracts, Boeing has alleged that the breach lies in respondent's refusal to honor its indemnification obligations, as a result of which Boeing and/or Lockheed has incurred losses (finding 29).

*Boeing* at 11. Further, the ASBCA concluded that Public Law 85-804 did not divest it of its CDA jurisdiction over Boeing's appeal, stating:

> We emphasize that the relief that Boeing seeks is confined to recovery for breach of contract. Thus, in each of the five counts of the complaint, Boeing alleges, with respect to each of the five prime contracts, that the government's "refusal to honor its indemnification obligations to Boeing and/or [Lockheed] constitutes a breach" (finding 29). We recognize that "Congress intended to exclude from the operation of the Contract Disputes Act the broadly discretionary settlement authority conferred by laws such as Public Law 85-804 . . . [A] claim solely and directly based upon 85-804 . . . is precluded from consideration under the Contract Disputes Act." *Paragon Energy Corp. v. United States*, 645 F.2d 966, 975 (Ct. Cl. 1981). But a claim for a contract adjustment based "solely and directly" on Public Law 85-804 is not before us, inasmuch as Boeing nowhere prays for an order directing any executive branch official to "enter into contracts or into amendments or modifications of contracts . . . [or] to make advance payments thereon." 50 U.S.C. § 1431.

*Boeing* at 12.

In the instant case, similar to *Boeing*, DCP's Complaint alleges a breach of contract by FRA pursuant to the CDA. *See Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996) ("In deciding whether there is subject matter jurisdiction, the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings."). Accordingly, the Court has subject matter jurisdiction over Counts I, II and III.

Important to note is the distinction between a breach claim under Public Law 85-804 and a contract adjustment under Public Law 85-804:

> The distinction between a breach claim under Public Law 85-804 and a contract adjustment under that statute is at the heart of the cases principally relied upon by the government. Thus, *Murdock Machine & Engineering Company of Utah v. United States*, 873 F.2d 1410, 1413 (Fed. Cir. 1989), involved the finality of a contract adjustment board's conversion of a contract from a fixed-price type to a cost reimbursement type. The court held that the adjustment board's decision was final and could neither be repudiated by the contracting officer in his decision nor by the Board on appeal. But the court did not question our jurisdiction over a breach claim with respect to the resulting contract, as modified by the adjustment board. Similarly, *Paragon Energy, supra*, 645 F.2d at 974-75, articulates the same distinction, as does *Centurion Electronics Service*, ASBCA No. 51956, 03-1 BCA ¶ 32,097 at 158,660, *aff'd, Drew v. Brownlee*, 95 Fed. Appx. 978 (Fed. Cir. 2004), and other cases cited by the government.

*Boeing*, at 12-13. In its motion, the Government states that "[r]equests for indemnification pursuant to Public Law 85-804 are not cognizable pursuant to the CDA" (Motion, p. 7), but fails to address the distinction between a request for indemnification and a breach claim. Further, the Government cites *Brown v. American Family Ins. Group*, 989 P.2d 196, 198 (Colo. App. 1999), for the contention that the statute of limitations cannot be triggered when an indemnitor refuses payment because it would "effectively eliminate[ ] the statute of limitations and frustrate[ ] its

purpose"; however, the Government fails to mention the majority view on this issue which states that an action for a claim for benefits accrues and the statute of limitations begins to run, when a breach of the contract occurs, *i.e.*, when the indemnitor refuses to make a payment. *Accord, Wille v. Geico Casualty Co.*, 2 P.3d 888, 892 (Ok. Sup. Ct. 2000) ("The majority of jurisdictions which have considered this question have decided that the recovery . . . is premised upon the insurance contract without which no liability could be imposed upon the insurer. These courts recognize that until a breach of the insurance contract occurs, there is no controversy under the contract upon which a party may sue. . . . [W]e [have] held that the insurer's refusal to pay it's insured on a valid claim constituted a breach of contract.").

B. In the Alternative, DCP's Claims Fall Within the Court's Six (6) Year Statute of Limitations

Although DCP believes its claims are within this Court's CDA jurisdiction, it contends, in the alternative, that its claims fall within this Court's six year statute of limitations. Specifically, the Tucker Act, 28 U.S.C. § 1491 states "[t]he United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1); *Abraham v. United States*, 81 Fed. Cl. 178, 181 (Fed. Cl. 2008). The Tucker Act is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . the Act merely confers jurisdiction upon it whenever the substantive right exists." *United States v. Testan,* 424 U.S. 392, 398 (1976). To pursue a claim within the jurisdictional reach of the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a

substantive right for money damages against the United States separate from the Tucker Act[.]"). The burden of establishing jurisdiction falls upon the party asserting jurisdiction. *Abrams*, 81 Fed. Cl. at 181. Under the Tucker Act, a claim does not require a plaintiff to pursue any administrative remedies. The claim can be brought directly into the COFC and is subject to the six-year statute of limitations period. *Board of Governors of North Carolina v. United States*, 10 Ct. Cl. 27, 29 (Ct. Cl. 1986).

A claim first accrues for purposes of 28 U.S.C. § 2501 "when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." *See Kinsey v. United States,* 852 F.2d 556, 557 (Fed. Cir. 1988) (quoting *Oceanic Steamship Co. v. United States,* 165 Ct.Cl. 217 (1964)); *see also Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed. Cir. 1988) Generally, "[i]n the case of a breach of a contract, a cause of action accrues when the breach occurs." *Manufacturers Aircraft Ass'n v. United States,* 77 Ct.Cl. 481, 523 (1933); *see also Brighton Village Assocs. v. United States,* 52 F.3d 1056, 1060 (Fed. Cir. 1995).

In the instant case, an express contract exists between DCP and the FRA. In its Complaint, DCP alleges the FRA breached the Contract when it failed to comply with the indemnification provision in the Contract and seeks damages owed pursuant to the Contract. Accordingly, looking at DCP's Complaint in the light most favorable to DCP, DCP has alleged a breach of contract over which this court has jurisdiction. *See Reynolds,* 846 F.2d at 747 (allegation that plaintiff and the Government entered into a contract is sufficient to support Tucker Act jurisdiction); *see also Stack v. United States*, 25 Cl. Ct. 634, 637 (1992). Moreover, the breach at issue occurred on April 20, 2007, when the FRA refused to comply with the

indemnification provision in the Contract, which is well within the six (6) year statute of limitations. *See Manufacturers Aircraft*, 77 Ct. Cl. at 523 (claim accrues at time of breach).

Further, *Geico supra.,* concerned the question of when a claim arose for uninsured benefits under an insurance policy. Rather then finding the claim arose when the accident occurred, the Court found that it did not arise until the insurer turned down a valid claim. It did so because the majority of courts facing this question recognized that until the breach of the insurance contract occurs, there is no controversy under the contract upon which a party may sue. 2 P.3d at 892. The breach occurs only when the insurer refuses a valid claim. The rational behind this rule is that an insured may not be aware of the nature and scope of a claim until long after the accident. The nature of the injuries, the amount of available coverage, and cost of treatment are all unknown. 2 P.2d at 892.

Much the same is true under our circumstances. In requiring DCP to forego malpractice insurance coverage in exchange for P.L. 85-804 protection, the FRA was, in effect, acting as DCP's insurer. Just as in *Geico*, DCP did not know the nature or the extent of indemnification claims in 1995, even if the payments in the MBTA claim did accumulate its losses above the $1,000,000 limit. There is no evidence DCP knew it had reached its deductible at that time.[7] DCP also did not know the nature and extent of its potential losses from the Gordon/Finger case pending in Delaware. One could argue that once DCP's losses reached $1,000,000, it had claims falling under the Article XIV. To so hold, however, would require DCP to file its claims on a piecemeal basis filing a new claim each time payments above the $1,000,000 deductible were made.[8]

---

[7] As discussed in related briefing, there is some evidence FRA may have paid the WSA claims.

[8] Even at the present time, DCP does not know the extent of its losses for the remaining claims in Delaware and the Government is contending that claim for declaratory relief is premature.

(continued...)

Indeed it would have been logical for DCP to have waited until the Delaware litigation had ended and then sought reimbursement under Article XIV. It was only when DCP learned that the FRA intended to refuse any claim for indemnification that it made a valid request to the FRA. FRA refused and that is when the breach occurred. Under the facts of our case, that is when the claims arose and the statute of limitations began to run.

For these reasons, the cases cited by the Government are in apposite. This case does not involve one dispute ending when liability is determined or settlement is made. This dispute involves a long term contract and a number of disputes spread out over 20 years. The extent of the losses are still unknown. For these reasons, this Court should not require DCP to split its causes of actions over that 20 year period. Instead, logic dictates that this Court should find that the statute begins to run when the controversy arose at the time of breach in 2007.

Accordingly, the Government's Motion to Dismiss must be denied.

C. <u>No Statute of Limitations Apply to the A&C and WSA Claims</u>

In the alternative, with regard to the A&C and WSA claims, losses were incurred in the 1980's and totaled $806,472.07. No statute of limitations is applicable to these losses because they are included for the purpose of satisfying the deductible requirement of Article XIV. They are not "claims". In any event, it does not apply to the A&C and WSA claims, which occurred first, and together did not satisfy the $1,000,000 deductible. For these reasons, no statute of limitations analysis is applicable to these losses. In addition, as discussed below, until it is established when the applicable deductible was reached, this Court should not consider the statute of limitations question.

---

(continued...)

The Government cites no case dealing with the application of the statue of limitations in the breach of contract situation. It cites only general cases dealing with the accrual of claims in indemnification dealings with the date liability determined. For the reasons stated in Arguments 1 and 2, those cases have no application to our facts.

D. Questions of Fact Prevent Consideration of the Application of the Statute of Limitations to the MBTA Losses

As discussed above, the record is not developed sufficiently to determine when DCP met the deductible requirement and whether some or all of the MBTA losses are included in DCP's claim for reimbursement under Article XIV. To the extent these expenses are included only to meet the deductible requirement, they do not constitute claims and no statute of limitations is applicable. Some of these losses[9] may be above the deductible limit and constitute part of DCP's claim. Until the record is developed to identify when the deductible was reached, it is premature to rule on the Government's motion to dismiss.

[9] There are also unresolved issues of whether FRA has already paid some or all of the WSA losses.

## IV. CONCLUSION

For the foregoing reasons and authorities cited herein, Parsons respectfully requests that the Court deny the Government's Motion to Dismiss Counts I, II and III for Lack of Subject Matter Jurisdiction.

Respectfully submitted,

SEITZ, VAN OGTROP & GREEN, P.A

/s/ George H. Seitz, III

GEORGE H. SEITZ, III (DE0667)
222 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-0600
(302) 888-0606 fax
gseitz@svglaw.com
Attorneys for Plaintiff

Of Counsel:
Michael A. Hordell, Esquire
Heather Kilgore Weiner, Esquire
Pepper Hamilton LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, District of Columbia 20005-2004
Telephone: (202) 220-1232

Dated: September 9, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2008, a copy of the foregoing *Plaintiff's Brief In Opposition to Defendant's Motion to Dismiss Counts I, II and III for Lack of Subject Matter Jurisdiction* was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *George H. Seitz, III*

George H. Seitz, III