IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PARSONS TRANSPORTATION GROUP, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 08-79C |
| v. | : | (Chief Judge Damich) |
| | : | |
| THE UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNT III**

George H. Seitz, III (DE0667)
SEITZ, VAN OGTROP & GREEN, P.A
222 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-0600
(302) 888-0606 fax
gseitz@svglaw.com
Attorneys for Plaintiff

Of Counsel:
Michael A. Hordell, Esquire
Heather Kilgore Weiner, Esquire
Pepper Hamilton LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, District of Columbia 20005-2004
Telephone: (202) 220-1232

Dated: September 9, 2008

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

STATEMENT OF FACTS ........ 1

QUESTION PRESENTED ........ 5

ARGUMENT ........ 6

A. DCP's Indemnification Claims Accrued After the Release was Executed; Accordingly, Such Indemnification Claims Were Not Covered by The Release ........ 6

B. The Release Does Not Relieve FRA From Indemnifying DCP Because It Was a Condition Precedent To A Settlement Agreement That Limited FRA's Liability Under The Indemnification Clause Found in DCP's Contract ........ 8

C. Questions of Fact Exists Concerning the Intended Meaning of the Release and Settlement Agreement Precluding Summary Judgment ........ 9

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

*Axion Corp. v. US*,
68 Fed. Cl. 468 .......... 7

*Bank of America National Trust and Savings Association v. Gillaizeau*,
766 F.2d 709 .......... 10

*In Re Sardo Corporation v. Turner Construction Co.*,
1996 WL 362756 .......... 10

*Information Systems and Networks Corporation v. U.S.*,
68 Fed.Cl. 336, 341 .......... 9

*Johnson, Drake & Riper, Inc. v. US*,
531 F.2d 1037 .......... 7

*Nippon Hodo Company, Ltd. V. U.S.*,
160 F.Supp. 501, 502 .......... 10

*W & F Bldg. Maint. Co. v. U.S.*,
56 Fed.Cl. 62, 69 .......... 10

*Wille v. Geico Casualty Co.*,
2 P.3d 888, 892 .......... 6

# I. STATEMENT OF FACTS

## A. The Contract

On or about October 26, 1976, the Federal Railroad Administration ("FRA") awarded Contract Number DOT-FR-76048 (the "Contract") to DeLeuw Cather/Parsons ("DCP") to provide services as prime architect-engineer and program manager for the Northeast Corridor Improvement Project ("NECIP"), a program undertaken by FRA pursuant to Title 7 of the Railroad Revitalization and Regulatory Reform Act of 1976. (DCP2, ¶7)[1] The NECIP was designed to make improvements to the rail facilities located on the Northeast Corridor served by the National Railroad Passenger Corporation ("Amtrak"). Id., ¶8 The Contract originally contemplated that DCP would carry professional liability insurance to guard against any claims arising out of professional malpractice. Id.

On December 8, 1978, the FRA wrote to DCP discussing the items being negotiated by DCP and FRA as part of the definitization process. These included the total amount of indemnification, whether *all* risks would be covered and the amount of the deductible, if any. (DCP159-161) DCP and the FRA agreed that all risks assumed by DCP under the Contract were covered by the indemnification clause, to the extent they exceeded $1,000,000 and were not otherwise covered by insurance. (DCP25-29)

However, as the definitization process moved forward, in a letter dated April 4, 1979, the FRA stated it would not pay for DCP's proposed malpractice insurance coverage. Instead, the FRA suggested providing the same protection to DCP through indemnification under Public Law 85-804. (DCP162-163) Subsequent negotiations led to a Memorandum of Negotiations dated May 31, 1979, pursuant to which the FRA agreed to indemnify DCP under P.L. 85-804 pursuant

---

[1] Parsons is filing a Joint Appendix in support of this brief and other related briefs filed concurrently herewith. References to the Appendix are designated as DCP___ followed by the page number(s).

to authority granted FRA in the fiscal year 1979 DOT Appropriations Act. (DCP131-132) The maximum liability of the Government under the indemnity was One Hundred million dollars ($100,000,000), but such amount was subject to increase if necessary. Id. As a result of this indemnification under P.L. 85-804, DCP was *not* required to maintain professional errors and omissions insurance coverage for the NECIP, but did retain comprehensive general liability insurance. Id.

As finally definitized on October 25, 1979, the indemnification provision provided the FRA would hold DCP harmless from:

> (i) claims (including reasonable expenses of litigation or settlement) by third persons (including employees of the A-E Contractor) for death, personal injury, or loss of, damage to, or loss of use of property;
>
> (ii) loss of or damage to property of the A-E Contractor, and loss of use of such property but excluding loss of profit…
>
> (iii) loss of, damage to, or loss of use of property of the Government but excluding loss of profit;
>
> to the extent that such a claim, loss or damage (A) arises out of or results from a risk defined in this contract to be unusually hazardous or nuclear in nature, (B) is not compensated by insurance or otherwise, and (C) is in excess of the first $1,000,000 in the aggregate of all such claims, loss, or damage, which aggregate amount of claims, loss, or damage shall be borne by the A-E Contractor. Any such claim, loss or damage within deductible amounts of A-E Contractor's insurance required to be maintained pursuant to this contract shall not be covered under this clause.

(DCP25) (emphasis added). Further, pursuant to §14.08 of the Contract, all of DCP's risks, except those covered by insurance, were defined as ultra-hazardous:

> Section 14.08
> For the purpose of this Article XIV, it is agreed that all risks, except the risks covered by the A-E Contractor's insurance policies covering automobile public liability, automobile physical damage (comprehensive and collision), workmen's compensation, and employer's liability, resulting from or in connection with the A-E

> Contractor's operations under this contract including, but not limited to services for systems engineering, program management, design, construction management, inspection and administration, and all related services for the Northeast Corridor Improvement Program as set out in and performed pursuant to this contract, as it may be changed from time to time in accordance with its terms, are usually hazardous risks whether or not the A-E Contractor's liability arises from the design, fabrication, or furnishing of products or services under this contract and regardless of whether the harm caused by such risk occurs before or after delivery to the Government of services equipment, or materials under this contract, or before or after the acceptance of contract performance by the Government, or within or without the United States.

DCP28 (emphasis added)

B. <u>Review of the Claims</u>

1. *Wilbur Smith Associates Claims*

In the mid-1980s, pursuant to the Contract, DCP provided architectural/engineering services for the design and construction of the Stamford Transportation Center in Stamford, Connecticut. (cite) DCP subcontracted this design to Wilbur Smith Associates ("WSA"). During construction, numerous design defects were encountered. WSA contended it was required to perform additional redesign work to address the structural weaknesses caused by its design defects. (DCP150-156) WSA requested $1,210,845 from DCP for the extra work on the structural elements of the Stamford Transportation Center submitting its claims to an arbitration panel on October 27, 1986. Eventually, the panel awarded WSA only $377,636 of the amount it requested. DCP paid WSA $377,636 to satisfy the arbitration award. (DCP5-6)

2. *A&C Fuel Corporation Claims*

On April 18, 1985, a vessel owned by the A&C Fuel Corporation ("A&C") collided with the Penn Mainline Bridge operated by Amtrak and designed by DCP under the Contract. On

October 31, 1986, A&C sued Amtrak to recover damages to its vessel resulting from the collision. A&C claimed that DCP was aware of the negligent design work of its subcontractor, Ammann & Whitney, on the temporary operating system and failed to act to correct this known defect, which was a contributing factor in the collision. Parsons paid $20,833.33 to settle the A&C claim. (DCP6, ¶¶ 25-26; DCP54-61; DCP209-234)

3. *DCP Legal Fees*

Parsons was represented by the Gadsby & Hannah, P.A. law firm in both the WSA and A&C claim matters. The Gadsby firm billed DCP total legal fees in the amount of $408,002.74[2] for services performed on these claims. (DCP6, ¶¶ 27-29; DCP63) Parsons' losses from the WSA and A&C claim totaled $806,472.07 as of 1990.

4. *Massachusetts Bay Transportation Authority Claims*

Under the Contract, DCP also performed architectural and engineering services for renovations and improvements to the South Station and associated structures, platforms, track and rail yards in Boston, Massachusetts (the "South Station Project") in coordination with the Massachusetts Bay Transportation Authority ("MBTA"). On April 24, 1984, the MBTA contracted with JF White Contracting, Inc. ("JF White") to serve as general contractor for the South Station Project. The work for the South Station Project took longer than stipulated in the MBTA/JF White contract and JF White brought a claim for delay damages against the MBTA. On April 25, 1988, the MBTA sued DCP and others in the Commonwealth of Massachusetts

---

[2] The record does not presently reflect the amount of legal fees attributable to each case. Discovery is continuing and Parsons has obtained copies of the Gadsby billings and is attempting to assign the costs associated with each claim matter. Some depositions may be required for a complete reconciliation. Parsons believes that if the Court determines the legal fees fall under the indemnification deductible, such a breakdown is unnecessary.

seeking damages on its own behalf and to resolve the JF White claims. (DCP7, ¶¶ 30-32; DCP65-79

The litigation continued until 1995 when the parties entered into a Settlement Agreement which provided that prior to the Settlement Agreement becoming effective and the required payments thereunder being made, the FRA and DCP, among others, were required to execute reciprocal releases. (DCP68, ¶10) DCP signed the Settlement Agreement on March 16, 1995 and under the terms thereof, was required to pay $425,000 to JF White within five (5) days, which it did. Id. DCP executed a limited reciprocal release (the "Release") in favor of the FRA on March 16, 1995, ten (10) days before it executed the Settlement Agreement. The Release was limited to claims arising out of the design and construction of the South Station Project. It was also specifically limited to claims existing prior to the date of the Release. (Release, Appendix to Defendant's Motion for Summary Judgment)

In addition, DCP paid attorneys' fees and expenses in excess of $553,943.43[3] associated with the South Station Project claims. (DCP80) Thus, DCP's total losses arising out of the MBTA claim were $978,943.43.

## II. QUESTION PRESENTED

Whether the Release, limited in scope by its express terms, effectively released claims for indemnification that had not yet accrued at the time the Release was executed.

[3] Certain of the fees may have been incurred prior to the execution of the Release. The record does not establish the exact amount of fees incurred and whether they had satisfied the deductible requirement.

III. ARGUMENT

A. DCP's Indemnification Claims Accrued After the Release was Executed; Accordingly, Such Indemnification Claims Were Not Covered by The Release

The Release executed on March 16, 1995 by DCP in favor of the FRA did not have the effect of releasing claims for indemnification under the Contract for the MBTA losses. The Release was not a general release and was expressly limited to claims related "...to the design and construction, prior to the date of the Release, of renovations and improvements to the South Station [project]...".

DCP did not have a indemnification claim that it could release as of March 16, 1995 (the date the Release was executed) because, as of that date, DCP had no right to indemnification. The Release was executed on March 16, 1995. DCP did not pay JF White the $425,000 settlement monies until some time after March 16, 1995, the day it signed the Settlement Agreement.[4] Under the circumstances presented here, a claim for indemnification accrues only when a breach of the contract occurs, *i.e.*, when the indemnitor refuses to make a payment. *See, Wille v. Geico Casualty Co.*, 2 P.3d 888, 892 (Ok. Sup. Ct. 2000)[5] holding that until a breach of the insurance contract occurs, there is no controversy under the contract upon which a party may sue. For these reasons, DCP's claims arose in 2007, long after the Release was signed in 1995.[6]

---

[4] The last signatory signed the Settlement Agreement on April 28, 1995, which could be considered the date the Settlement Agreement was finalized. (DCP77)

[5] The rational for this holding, also applicable here, is discussed in Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss Counts I, II and III filed concurrently herewith.

[6] Even if the Court were to hold that a claim for indemnification accrues at the time the indemnitee (here, DCP) makes actual payment to a third party, payment was made *after* the Release was executed, and thus, could not have been encompassed within the scope of the claims released thereunder.

Thus, DCP's claim for indemnification had not yet accrued and could not have been encompassed with the claims covered by the Release.[7]

The cases cited by the Government offer no support for its contentions in this case. DCP does not dispute the general rule that a release which is complete on its face reflects unqualified acceptance of its terms. *Axion Corp. v. US*, 68 Fed. Cl. 468 (2005). DCP, in fact, relies on the express limiting terms of the Release to support its opposition to the Government's pending motion. Moreover, DCP does not disagree with the holding in *Johnson, Drake & Riper, Inc. v. US,* 531 F.2d 1037 (Ct. CR. 1976) that absent vitiating circumstances, a general release bars claims based on events occurring prior to the date of the release. However, the *Johnson, Drake* case is inapplicable here. The Release executed by DCP was not a general release, it was limited by its express terms. The Release only covered claims arising from or relating to the design and construction of the South Station Project; it did not cover *all* claims held by DCP as against the FRA. More troubling for summary judgment purposes, the Release does not contemplate future actions – it covers only claims that DCP "has or may have" and then further limits such claims to those existing ***prior to the date of the Release***. The Government is essentially asking this Court to re-write the Release to include claims that DCP "has, may have or hereafter can have". There is simply no basis for the Court to do so.

This issue is particularly important here since the Release was signed *before* DCP's cause of action for indemnification accrued. As discussed *infra*, DCP's indemnification claim did not accrue until the FRA refused indemnification and breached the Contract. Thus, in order to grant

[7] Further, the indemnification claims could not have been included in the claims released because as of March 16, 1995, DCP was still paying out under its deductible. Prior to March, 1995, DCP had arguably incurred losses falling under the indemnification provisions for sums paid out on the A&C Fuel and WSA matters, the only claims prior to MBTA. The losses for those matters totaled $805,638 and did not satisfy the deductible requirement of the indemnification clause. While additional discovery is needed to ascertain exact figures, it appears that as of the date of the MBTA payment, DCP had not yet satisfied the $1,000,000 deducible and thus, did not yet have a claim for indemnification.

the Government's motion for summary judgment, the Court must conclude that the Release encompassed an unmatured claim for indemnification. The record, at this stage, does not support such a finding and the motion should be denied.

B. <u>The Release Does Not Relieve FRA From Indemnifying DCP Because It Was a Condition Precedent To A Settlement Agreement That Limited FRA's Liability Under The Indemnification Clause Found in DCP's Contract</u>

The Government erroneously contends that the Release precludes DCP from seeking indemnification for the MBTA claims or counting the amount of the MBTA claims towards the deductible. DCP's basis for signing this Release, however, becomes clear upon review of the language of the subsequent Settlement Agreement. The Settlement Agreement required the parties to enter into the Release as a condition precedent to the settlement because the parties involved in the litigation concerning these limited issues could not reach a settlement without the certainty that the FRA would not pursue claims[8] against DCP, HS/CB and SOM concerning the South Station Project issues. The benefit that inured to the FRA as a result of a settlement in this regard was a limitation of its liability under Article XIV of its Contract with DCP. Upon information and belief, DCP entered into this Release in light of its obligation/duty to ensure that all claims submitted pursuant to its Contract with FRA were "just and reasonable".[9] Limiting liability, in this instance, where there was a distinct possibility that the damages that DCP would have been found responsible for would have far exceeded the $425,000 it was required to pay under the Settlement Agreement *i.e.*, upon information and belief, the

[8] We are unaware of what claims the Release refers to as none are definitized.

[9] Whether executing the Release in this instance was consistent with its obligation or duty, while open to debate, is not an issue here since, upon information and belief, the FRA was fully aware of the facts surrounding the South Station Project and appears to be nothing less than a willing participant in the Settlement.

Complaint alleged $24 million in damages,[10] made business sense. DCP was acting like a responsible contractor and attempting to mitigate damages that the FRA would eventually have to pay under Article XIV of its contract with DCP. Any other rationale fails to provide even a scintilla of support necessary to argue that entering into the Release has any legitimate and/or sound business basis. Moreover, it was FRA, not DCP that truly benefited under the Settlement, which condensed the amount of loss, since FRA was under the contractual obligation to indemnify DCP up to $100 million.

C. Questions of Fact Exists Concerning the Intended Meaning of the Release and Settlement Agreement Precluding Summary Judgment

The dispute presented is over the proper interpretation of the Release and subsequent Settlement Agreement. The Court's inquiry into the scope of these two documents begins with an examination of the documents' own language. *Information Systems and Networks Corporation v. U.S.*, 68 Fed.Cl. 336, 341 (2005). The terms of the Release and Settlement Agreement should be accorded their plain and ordinary meaning. Id. The contractual language must be given the meaning that a "reasonably intelligent person acquainted with the contemporaneous circumstances" would reach. *Id.* (quoting *Allied Tech. Group. Inc. v. U.S.*, 39 Fed.Cl. 125, 138 (1997)). A contract is ambiguous, however, where there are two reasonable interpretations that are consistent with the contract language. *Information Systems*, 68 Fed.Cl. at 341. "The joint intent of the parties, if ascertainable, is decisive." Id. "Before making a conclusive determination about an agreement's ambiguity, or lack thereof, the court should consider the context in which the agreement was executed." *W & F Bldg. Maint. Co. v. U.S.*, 56 Fed.Cl. 62, 69 (2003).

[10] *See* Letter dated Oct. 21, 1988 from S. Mark Lindsey, Chief Counsel, FRA to William A. Horne, Goulston & Storrs, regarding Claim by MBTA. (DCP147-149)

DCP contends that application of the plain meaning of the terms of the Release entitles DCP to indemnification under the Contract, as the Release plainly and unambiguously only refers to the "South Station" project. Applying the rule that a court must look at the larger context under which the release was signed, it becomes even more evident that the indemnification claims asserted by DCP are not to be barred by the Release. The Settlement Agreement specifically required DCP and the FRA to enter into reciprocal releases ***before*** the Settlement Agreement became effective. *See*, Settlement Agreement, ¶10. The purpose of the Release being entered into before the Settlement Agreement was to take effect, and the clear intention of the parties thereto, was precisely to preserve the sort of indemnification claims currently at issue. "To grant the Government's motion would require a decision on [the court's] part that the execution of a release broad enough in terms to include the claim here in question, *ipso facto*, releases the claim even though the parties did not intend to release it." *Nippon Hodo Company, Ltd. V. U.S.*, 160 F.Supp. 501, 502 (Ct.Cl. 1958). Such a decision would also serve to elevate form over substance and impose "upon parties a bargain which they never intended to make." Id.

At the very least, the Release and related Settlement Agreement raise questions of fact over the parties' contractual intent precluding summary judgment. *See*, *In Re Sardo Corporation v. Turner Construction Co.*, 1996 WL 362756 (Bkrtcy. N.D.Ill.); *Bank of America National Trust and Savings Association v. Gillaizeau*, 766 F.2d 709 (2d Cir. 1985) (ambiguities contained in release presents question of fact precluding summary judgment). While DCP contends it is quite obvious the language in the Settlement Agreement requiring prior execution of the reciprocal

releases was done to exclude the indemnification payment from the scope of the Release, the Government disagrees. Discovery on this point of contractual intent is necessary.[11]

## IV. CONCLUSION

For the foregoing reasons and authorities cited herein, Parsons respectfully requests that the Court deny the Government's Motion for Summary Judgment Upon Count III.

Respectfully submitted,

SEITZ, VAN OGTROP & GREEN, P.A

/s/ George H. Seitz, III

GEORGE H. SEITZ, III (DE0667)
222 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-0600
(302) 888-0606 fax
gseitz@svglaw.com
Attorneys for Plaintiff

Of Counsel:
Michael A. Hordell, Esquire
Heather Kilgore Weiner, Esquire
Pepper Hamilton LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, District of Columbia 20005-2004
Telephone: (202) 220-1232

Dated: September 9, 2008

[11] If the Court determines the Release language bars recovery, depending on what discovery shows as to contractual intent, DCP may have a claim for reformation. *See, Axion* at p. 477-478.

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2008, a copy of the foregoing *Plaintiff's Brief In Opposition to Defendant's Motion for Summary Judgment Upon Count III* was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *George H. Seitz, III*

George H. Seitz, III