# EXHIBIT A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PARSONS TRANSPORTATION GROUP, INC., Plaintiff,

v.

THE UNITED STATES, Defendant.

No. 08-79C
(Chief Judge Damich)

**JOINT APPENDIX IN SUPPORT OF (A) PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNT III (B) PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS, I, II AND III FOR LACK OF JURISDICTION, AND (C) PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT UPON THE PLEADINGS UPON COUNTS I AND III**

George H. Seitz, III (DE0667)
SEITZ, VAN OGTROP & GREEN, P.A
222 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-0600
(302) 888-0606 fax
gseitz@svglaw.com
Attorneys for Plaintiff

Of Counsel:
Michael A. Hordell, Esquire
Heather Kilgore Weiner, Esquire
Pepper Hamilton LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, District of Columbia 20005-2004
Telephone: (202) 220-1232

Dated: September 9, 2008

RECEIVED
OVER THE COUNTER
FEB 8 2008
THE OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PARSONS TRANSPORTATION GROUP INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>FEDERAL RAILROAD ADMINISTRATION,<br><br>Defendant. | No. ______________ |

***COMPLAINT***

**Parties**

1. Plaintiff Parsons Transportation Group, Inc. ("Parsons") is a corporation existing under the laws of the State of Illinois and is successor in interest to Deleuw, Cather Parsons ("DCP"), a joint venture comprised of DeLeuw Cather & Company, an Illinois corporation, and Ralph M. Parsons, a Nevada corporation.

2. Defendant United States Federal Railroad Administration ("FRA") is a division of the Department of Transportation having offices at 1129 Vermont Avenue Northwest, Washington, D.C. 20590. Service will be made by the Clerk of the Court pursuant to Rules of the Court of Federal Claims (RCFC 4).

**Jurisdiction**

3. This claim is for breach of contract for the failure of the FRA to honor its obligation, pursuant to Article XIV of the parties' contract, to indemnify Parsons for damages

and fees sustained from the mid 1980s to the present in connection with work performed by DCP on the Northeast Corridor Improvement Project under contract with the FRA.

4. This is a civil action brought by Plaintiff Parsons against the United States pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601-613, and the Tucker Act, 28 U.S.C. § 1491.

5. This action is an appeal from a December 12, 2007 final decision ("Final Decision") (*See* Exhibit A) by FRA denying a November 16, 2007 claim ("Claim") (*See* Exhibit B) by Parsons seeking the sum certain of $1,400,497.92, plus interest for damages and fees sustained by Parsons.

6. Parsons timely appeals from the December 12, 2007 Final Decision in accordance with 41 U.S.C. § 609(a)(1).

**Background**

7. On or about October 25, 1979, the FRA awarded contract number DOT-FR-76048 (the "Agreement") to DCP to provide services as prime architect-engineer and program manager for the Northeast Corridor Improvement Project ("NECIP"), a program undertaken by FRA pursuant to Title 7 of the Railroad Revitalization and Regulatory Reform Act of 1976.

8. The NECIP was designed to make improvements to the rail facilities located on the Northeast Corridor served by the National Railroad Passenger Corporation ("Amtrak"). The Agreement originally executed provided that DCP would carry professional liability insurance to guard against any claims arising out of professional malpractice. In

addition, under the original letter contract, DOT-FR-76048, the FRA was obligated to indemnify DCP under Article XIV up to one hundred million dollars ($100,000,000) against third party tort claims arising from professional services rendered by DCP on the NECIP.

9. Subsequently this Agreement was amended and FRA agreed to indemnify DCP pursuant to authority granted FRA in the fiscal year 1979 DOT Appropriations Act.

10. The maximum liability of the Government under the indemnity was one hundred million dollars ($100,000,000) but such amount was subject to increase if necessary.

11. As a result of such indemnification, DCP was not required to maintain professional errors and omissions insurance coverage for the NECIP but did retain comprehensive general liability insurance. These provisions were designed to protect DCP from claims that would otherwise be covered by malpractice insurance and DCP looked to the FRA indemnification for that protection. A copy of the memorandum of negotiation leading to such agreement is attached hereto as Exhibit C.

12. As amended, the NECIP Agreement provides the FRA would hold DCP harmless from:

(i) claims (including reasonable expenses of litigation or settlement) by third persons (including employees of the A-E Contractor) for death, personal injury, or loss of, damage to, or loss of use of property;

(ii) loss of or damage to property of the A-E Contractor, and loss of use of such property but excluding loss of profit; and,

(iii) loss of, damage to, or loss of use of property of the Government but excluding loss of profit;

> to the extent that such a claim, loss or damage (A) arises out of or results from a risk defined in this

> contract to be unusually hazardous or nuclear in nature, (B) is not compensated by insurance or otherwise, and (C) is in excess of the first $1,000,000 in the aggregate of all such claims, loss, or damage, which aggregate amount of claims, loss, or damage shall be borne by the A-E Contractor. Any such claim, loss or damage within deductible amounts of A-E Contractor's insurance required to be maintained pursuant to this contract shall not be covered under this clause.

13. Under the terms of the Agreement, the FRA is obligated to indemnify DCP for damages sustained in the Northeast Corridor Improvement Project in excess of $1,000,000.

14. As is more specifically set forth above, DCP's claims have exceeded $1,000,000.

<u>**Gordon-Finger Claims**</u>

15. During the mid-1980s, DCP provided architectural/engineering services in connection with improvements made to the Amtrak's Wilmington rail yard. This work included the design and construction of a building known as the Wheel Shop in their Wilmington yard.

16. During the construction of the Wheel Shop, excavated material, allegedly containing PCB contaminated soil, was removed from the rail yard and deposited on property owned by the Arthur J. Krieger, Bernard M. Gordon and Louis J. Finger and others. ("Gordon-Finger Plaintiffs").

17. The Gordon-Finger Plaintiffs filed an action in the Chancery Court of the State of Delaware, C.A. No. 10753 against DCP and others seeking damages and remediation of

the allegedly contaminated soil. DCP's attorney's fees and expenses in this action have totaled in excess of $425,000.00.

18. A trial on liability was held in January 2000 and DCP and Amtrak were found liable.

19. On May 21, 2004, DCP paid the Estate of Arthur Krieger plaintiffs $195,000 in settlement of its claims.

20. The claims of the Gordon-Finger Plaintiffs remain unresolved and are pending a hearing on the damages.

21. To date, DCPs fees, expenses and settlement expenses for the Gordon-Finger Plaintiffs' claims have totaled in excess of $615,000.00. (*See* Exhibit D)

**Stamford Claims**

22. In the mid-1980s, DCP provided under the Agreement architectural/engineering services in connection with the design and construction of the Stamford Transportation Center in Stamford, Connecticut.

23. During construction of the Stamford Station, numerous design defects were discovered in connection with the work. Subsequently, on October 22, 1986, Wilber Smith Associates ("WSA") provided engineering services to DCP for the Stamford Station. On October 27, 1986, WSA submitted a claim to DCP in the amount of $1,210,845 for extra work on the structural elements of the Stamford Station resulting from such alleged design deficiencies.

24. WSA submitted its claims to arbitration. Ultimately an arbitration panel entered an award in favor of WSA and against DCP in the amount of $377,636 plus interest and attorneys fees. (*See* Exhibit E)

**A&C Fuel Claims**

25. On or about April 18, 1985, a vessel owned by the A&C Fuel Corporation collided with the Penn Mainline Bridge operated by Amtrak and designed by DCP in connection with the NECIP. A&C sued Amtrak to recover damages to its vessel in the collision.

26. Ultimately DCP was brought in as a fourth party defendant in the action and eventually paid $20,833.33 to settle the claim. (*See* Exhibit F)

**Stamford and A&C Fuel Claims Attorneys Fees**

27. The same law firm represented DCP on both the Stamford and A&C Fuel Claims. Its bills did not break down the fees associated with Stamford from these associated with A&C.

28. The combined fees for Stamford and A&C was $408,002.74. (*See* Exhibit G)

29. DCP sustained damages and expense in connection with the A&C and WSA claims as follows:

a) A&C Settlement - $20,833.33

b) WSA Arbitration Award - $377,636.00

c) Combined Attorneys Fees for A&C and WSA actions - $408,002.74

As a result, DCP has sustained losses in excess of $806,472.07 in connection with these NECIP claims.

**Massachusetts Bay Transportation Authority Claims**

30. Under the Agreement, DCP also performed architectural engineering services in connection with the construction of renovations and improvements to the South Station and associated structures platforms, track and rail yards in Boston, Massachusetts ("the South Station Project") in coordination with the Massachusetts Bay Transportation Authority ("MBTA").

31. On April 25, 1988, the MBTA sued DCP in the Commonwealth of Massachusetts seeking damages on its own behalf and as a result of claims brought by JF White Construction Company ("White"), the project's general contractor, arising from an alleged delay in the South Station Project.

32. On or about March 15, 1995, DCP entered into a settlement of South Station claims and paid $425,000 to settle such claims. In addition, DCP paid attorneys fees in excess of $553,000 associated with the South Station project. DCP's total payments in connection with the MBTA claims was $978,943.43. (*See* Exhibit H)

**Demands on the FRA**

33. Parsons, as more fully described herein, has complied with all requirements necessary to obtain an equitable adjustment under the Contract. As noted above, FRA agreed to include an indemnification clause under Public Law 85-804. *See* Memorandum of Negotiation dated May 10, 1979 (under which FRA agreed to include such a provision in

Letter Contract DOT-FR-76048.) (*See* Exhibit C) Further, Parsons has complied with the applicable provisions of Article XIV of the Contract:

a. Parsons sought equitable adjustments for judgments, settlements and expenses incurred for claims of third parties arising out of risks defined in the Contract to be unusually hazardous, not compensated by insurance and are in excess of $1,000,000 in the aggregate of all such claims, loss or damages as provided by Article XIV, § 14.01 of the Contract and are not excluded under § 14.02. Further, § 14.08 provides that all risks resulting from Parsons' work under the Contract, except those covered by specified insurance policies, none of which applies here, are covered by the indemnification provision.

b. Parsons has complied with the provision of § 14.06 and the Insurance-Liability to Third Persons Clause by promptly notifying the Contracting Officer of all claims for which indemnification is sought under this request and providing FRA with all pertinent papers relating to all claims, thus providing the Government with the opportunity to avail itself of the right to control or assist in the defense or settlement of all such claims. In furtherance of its contractual obligations, it was Parsons' practice to notify the Contracting Officer/Government in writing of all such claims.

34. Parsons also provided more recent notice to FRA of these claims and its ability to assist or control in settlement or defense of the claims in its letters dated February 4, 2004, February 17, 2004, November 1, 2004, March 22, 2004, February 24, 2005, and May 5, 2005 attached hereto collectively as Exhibit I.

35. On May 5, 2005, Parsons submitted a claim to the FRA for indemnification under the Agreement, hoping to avoid the need for filing a formal claim. The FRA refused to grant this request.

36. On November 8, 2005, Parsons filed with the FRA a Statement of Claim under the Contract Disputes Act of 1978 seeking to recover $1,355,448.83 pursuant to FRA's indemnification obligation under the Agreement.

37. On December 1, 2005, the FRA responded to this claim contending it was not cognizable under the Contracts Dispute Act and that it fell under Public Law 85-804 and should be processed under Federal Acquisition Regulation ("FAR") Part 50.

38. In an effort to resolve this procedural dispute and again seeking to resolve this dispute informally, representatives of Parsons and FRA met in Washington, DC on January 12, 2006. No resolution was reached by the parties. However, the FRA representatives agreed to provide an explanation supporting its contention that the claim was properly filed under FAR Part 50 as well as the information it requested Parsons' submission contain.

39. On April 13, 2006, the FRA provided a letter to Parsons requesting that the claim be presented as an equitable adjustment under FAR Part 50 and itemizing the elements to be presented in the claim. (*See* Exhibit J)

40. On October 10, 2006, in response to FRA's April 13, 2006 letter, Parsons submitted a claim under FAR, Subpart 50.403.1 requesting a reimbursement in the amount of $1,400,497.92 under the indemnification provision of the Agreement. (*See* Exhibit K)

On January 3, 2007, the FRA wrote to Parsons objecting to the form of its October 10, 2006 letter and requesting it be resubmitted. (*See* Exhibit L)

41. On March 20, 2007, Parsons resubmitted its claim for equitable adjustment under FAR Part 50, seeking reimbursement in the amount of $1,400,497.92 under the indemnification provision of the Agreement. (*See* Exhibit M)

42. Despite the fact that Parsons has complied with all requirements necessary to obtain an equitable adjustment, on April 20, 2007, the FRA responded to Parsons' claim essentially denying each claim with the exception of an erroneous allowance of $20,833.33 credit to the $1,000,000 deductible requirement under the indemnification provision of the Agreement. (*See* Exhibit N)

43. On May 15, 2007, Parsons wrote to the FRA requesting clarification of whether its April 20, 2007 determination was a final decision on the claim. (*See* Exhibit O)

44. On May 29, 2007, the FRA responded stating that its response could be considered an exhaustion of administrative remedies. It did not state that its April 20, 2007 action was a final decision. (*See* Exhibit P)

45. On November 16, 2007, Parsons submitted a claim to the FRA for breach of contract for the Government's refusal to honor its indemnity obligations under the Agreement. (*See* Exhibit B)

46. On December 12, 2007, the FRA wrote to Parsons refusing to act on the November 16, 2007 claim for breach of contract. (*See* Exhibit A)

47. Based on the FRA's denial of Parsons' claim, Parsons now brings its breach of contract claim pursuant to the Contracts Disputes Act. If the FRA's breaches of the Agreement are not within the purview of the Contract Disputes Act, Parsons brings this claim pursuant to the Tucker Act.

## COUNT I
**Breach of Contract: Stamford Claims**

48. DCP repeats and realleges the claims asserted in paragraphs 1 through 47 above.

49. As is more specifically set forth above, under the Agreement, FRA is obligated to indemnify DCP for damages, fees and expenses incurred in the WSA claims.

50. Pursuant to the terms of the Agreement, it was DCP's practice to provide FRA with notice of its claims to provide the FRA the opportunity to defend each claim. In spite of such notice, FRA did not defend any of the actions.

51. DCP payments for damages and fees associated with the A&C, WSA, a portion of the MBTA claims satisfy the $1,000,000 threshold for the indemnification provision.

52. FRA is obligated to indemnify DCP for the MBTA and Gordon-Finger claims to the extent they exceed the $1,000,000 threshold.

53. DCP has demanded that FRA reimburse it under the terms of its Indemnification Agreement. Despite repeated demands, FRA has refused to make payments under the Agreement.

54. As a result of this refusal, FRA is in breach of the Agreement. As a result of the FRA breach, DCP has been damaged and has been unable to recoup indemnity funds owed under the Agreement with respect to the Stamford claims.

**COUNT II**
**Breach of Contract: A&C Fuel Claims**

55. DCP repeats and realleges the claims asserted in paragraphs 1 through 54 above.

56. As is more specifically set forth above, under the Agreement, FRA is obligated to indemnify DCP for damages, fees and expenses incurred in the A&C claims.

57. Pursuant to the terms of the Agreement, it was DCP's practice to provide FRA with notice of its claims to provide the FRA the opportunity to defend each claim. In spite of such notice, FRA did not defend any of the actions.

58. DCP payments for damages and fees associated with the A&C, WSA, a portion of the MBTA claims satisfy the $1,000,000 threshold for the indemnification provision.

59. FRA is obligated to indemnify DCP for the MBTA and Gordon-Finger claims to the extent they exceed the $1,000,000 threshold.

60. DCP has demanded that FRA reimburse it under the terms of its Indemnification Agreement. Despite repeated demands, FRA has refused to make payments under the Agreement.

61. As a result of this refusal, FRA is in breach of the Agreement. As a result of the FRA breach, DCP has been damaged and has been unable to recoup indemnity funds owed under the Agreement with respect to the A&C Fuel claims.

**COUNT III**
**Breach of Contract: Massachusetts Bay Transportation Authority Claims**

62. DCP repeats and realleges the claims asserted in paragraphs 1 through 61 above.

63. As is more specifically set forth above, under the Agreement, FRA is obligated to indemnify DCP for damages, fees and expenses incurred in the MBTA claims.

64. Pursuant to the terms of the Agreement, it was DCP's practice to provide FRA with notice of its claims to provide the FRA the opportunity to defend each claim. In spite of such notice, FRA did not defend any of the actions.

65. DCP payments for damages and fees associated with the A&C, WSA, a portion of the MBTA claims satisfy the $1,000,000 threshold for the indemnification provision.

66. FRA is obligated to indemnify DCP for the MBTA and Gordon-Finger claims to the extent they exceed the $1,000,000 threshold.

67. DCP has demanded that FRA reimburse it under the terms of its Indemnification Agreement. Despite repeated demands, FRA has refused to make payments under the Agreement.

68. As a result of this refusal, FRA is in breach of the Agreement. As a result of the FRA breach, DCP has been damaged and has been unable to recoup indemnity funds owed under the Agreement with respect to the MBTA claims.

**COUNT IV**
**Breach of Contract: Gordon-Finger Claims**

69. DCP repeats and realleges the claims asserted in paragraphs 1 through 68 above.

70. As is more specifically set forth above, under the Agreement, FRA is obligated to indemnify DCP for damages, fees and expenses incurred in the Gordon-Finger claims.

71. Pursuant to the terms of the Agreement, it was DCP's practice to provide FRA with notice of its claims to provide the FRA the opportunity to defend each claim. In spite of such notice, FRA did not defend any of the actions.

72. DCP payments for damages and fees associated with the A&C, WSA, a portion of the MBTA claims satisfy the $1,000,000 threshold for the indemnification provision.

73. FRA is obligated to indemnify DCP for the MBTA and Gordon-Finger claims to the extent they exceed the $1,000,000 threshold.

74. DCP has demanded that FRA reimburse it under the terms of its Indemnification Agreement. Despite repeated demands, FRA has refused to make payments under the Agreement.

75. As a result of this refusal, FRA is in breach of the Agreement. As a result of the FRA breach, DCP has been damaged and has been unable to recoup indemnity funds owed under the Agreement with respect to the Gordon-Finger claims.

**COUNT V**
**Declaratory Judgment: Gordon-Finger Claims**

76. DCP repeats and realleges the claims asserted in paragraphs 1 through 75 above.

77. As a result of the FRA's failure to fulfill its contractual obligations, an actual controversy exists to whether the FRA will provide additional indemnification for the claims asserted by the Gordon-Finger Plaintiffs in the Chancery Court.

78. As a result of FRA's breach, DCP is entitled to declaratory relief that under the Agreement, FRA is obligated to indemnify DCP for any additional legal fees, expenses, and damages paid by DCP and the Gordon-Finger Plaintiffs in the Chancery Court action.

WHEREFORE, Parsons demands this Court:

1. award Parsons $1,400,497.92 for sums due under the indemnification clause;
2. declare that FRA is obligated to indemnify Parsons for any future expenses incurred in the Gordon-Finger claim;
3. award costs, interests and attorneys fees on this claim; and,
4. such other relief as this Court deems just and proper.

Respectfully submitted,

SEITZ, VAN OGTROP & GREEN, P.A.

GEORGE H. SEITZ, III (#667)
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE 19801
(302) 888-0600
(302) 888-0606
Attorneys for Plaintiff

Dated: February 7, 2008

Of Counsel:

Michael A. Hordell, Esquire
Heather Kilgore Weiner, Esquire
Pepper Hamilton LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, District of Columbia 20005-2004
Telephone: (202) 220-1232

# EXHIBIT A

U.S. Department of Transportation

**Federal Railroad Administration**

1120 Vermont Ave., N.W.
Washington, D.C. 20590

DEC 12 2007

DEC 17 2007

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

George H. Seitz, III
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue–Suite 1500
Wilmington, DE 19899

Re: Parsons Transportation Group's Claim
Under Public Contract Number DOT-FR-76048

Dear Mr. Seitz:

The following information concerns the above-referenced claim, dated November 16, 2007, which you have filed following our April 20, 2007, response to your March 20, 2007, request for an equitable adjustment under the above-referenced public contract. This most recent claim relates to exactly the same matter which was the subject of the request for an equitable adjustment.

As you have previously been advised, any claim for indemnification, which would be filed pursuant to Public Law 85-804, is not cognizable under the Contract Disputes Act. See FAR 33.205(a). Rather, such a claim must be processed pursuant to FAR Part 50 as an equitable adjustment.

Pursuant to FAR Part 50, you filed a request for an equitable adjustment on March 20, 2007. On April 20, 2007, this agency conditionally granted the request for an equitable adjustment with respect to one element of the request (subject to the presentation of certain documentary evidence), and denied the rest of the request. No such documentary evidence has been supplied with respect to the conditionally granted request.

As has been previously stated in prior correspondence on this issue, the procedures provided for in the Contract Disputes Act with reference to final agency decisions on contract claims and appeals to agency boards of contract appeals (now amalgamated in the General Services Administration) do not apply to a request for an equitable adjustment filed under FAR Part 50. See 41 U.S.C. §§ 605–607 with respect to the process for appealing final agency decisions on contract claims to agency boards of contract appeals, which provisions clearly do not apply to an excluded request for an equitable adjustment under FAR Part 50.

It has also been determined that a contract adjustment board is not an appropriate entity to re-hear the issues raised by your request for an equitable adjustment and disposed of by the contracting officer of this agency (my predecessor, Illona M. Williams).

Your appropriate remedy is to file an action directly with the United States Court of Federal Claims with respect to those elements for which your request for an equitable adjustment was denied. See 28 U.S.C. §§ 1491 et seq. For such purposes, you may consider your request for an equitable adjustment and the agency's response to constitute an exhaustion of your administrative remedies concerning this matter.

Because your administrative remedies have been exhausted, I am without authority to take any action with respect to your November 16, 2007, claim, and I intend to take none with respect to this or any other claim you might file with respect to the same matter.

As previously stated, your administrative remedies have been exhausted.

Sincerely,

Charles N. Nurse
Director
Office of Acquisition and Grants Services

cc: S. Mark Lindsey, Chief Counsel
Gareth W. Rosenau, Senior Attorney

# EXHIBIT B

SEITZ, VAN OGTROP & GREEN, P.A.
ATTORNEYS AND COUNSELLORS AT LAW

222 DELAWARE AVENUE, SUITE 1500
POST OFFICE BOX 68
WILMINGTON, DELAWARE 19899

BERNARD A. VAN OGTROP
GEORGE H. SEITZ, III
JAMES S. GREEN
R. KARL HILL
PATRICIA P. McGONIGLE
KEVIN A. GUERKE

(302) 888-0600
FAX: (302) 888-0606

Writer's Direct Dial: (302) 888-7602
Writer's E-Mail Address: gseitz@svglaw.com
www.lawyers.com/svglaw

November 16, 2007

Illona M. Williams, Director
Acquisitions & Grant Services
Office of Acquisitions and Grant Services, Stop 50
Federal Railroad Administration
Department of Transportation
1120 Vermont Avenue, N.W.
Washington, D.C. 20590

RE: Parsons Transportation Group's Claim Pursuant to Public Contract Number DOT-FR-76048

Dear Ms. Williams:

This letter constitutes a claim by Parsons Transportation Group, Inc., as successor to the interest of DeLeuw Cather/Parsons Joint Venture ( herein after "Parsons"), for money owed to Parsons due to the Government's breach of Contract Number DOT-FR-76048, which arose out of the Government's refusal to honor the contract's indemnity provision. Specifically, Parsons seeks the sum certain of $1,400,497.92 together with interest, costs and attorneys fees.

Article XIV of contract number DOT-FR-76048 (the "Contract"), between Parsons and the Federal Railroad Administration ("FRA"), as modified by the May 31, 1979, Memorandum of Negotiation, attached hereto as Exhibit A, provided that FRA would hold Parsons harmless from:

> (i) claims (including reasonable expenses of litigation or settlement) by third persons (including employees of the A-E Contractor) for death, personal injury, or loss of, damage to, or loss of use of property;
>
> . . .

> (c) … in excess of the first $1,000,000 in the aggregate of all such claims, loss, or damage, which aggregate amount of claims, loss, or damage shall be borne by the A-E Contractor. Any such claim, loss or damage within deductible amounts of A-E Contractor's insurance required to be maintained pursuant to this contract shall not be covered under this clause.

The Contract also provided that all risks related to the NECIP are defined to be "unusually hazardous or nuclear in nature." Exhibit B, Contract, Article XIV, ¶14.06.

In accordance with the Contract, Parsons submitted a properly filed request to FRA for indemnity on March 20, 2007. On April 20, 2007, FRA refused to honor Parsons' request for indemnification, thus breaching the Contract. See Attachment C.

Since FRA's refusal to honor the Contract on March 20, 2007, Parsons attempted to have this matter referred to the Contracts Adjustment Board, the entity authorized to hear an appeal of FRA's denial of Parsons' request, only to find that the Department of Transportation (DOT) currently did not have a procedure in place to constitute a Contracts Adjustment Board. In furtherance of this pursuit, Parsons, through counsel Michael A. Hordell, conducted the following conversations with Department of Transportation officials:

- On June 12, 2007, and June 13, 2007, Parsons' counsel conducted teleconferences with DOT's Office of General Counsel, the Office of the Secretary of Transportation and the Procurement Office.

- On June 26, 2007, Parsons' counsel spoke with Mr. D. Litman, DOT Procurement Office.

- On June 29, 2007, Parsons' spoke with Ms. Mary Kay Langan-Feirson, DOT, Office of General Counsel.

- On July 10, 2007, Parsons' counsel spoke with Ms. R. Monroe, DOT, Procurement Office.

- On July 23, 2007, Parsons' counsel again spoke with Mary Kay Langan-Feirson, DOT, Office of General Counsel.

The consensus of all of these conversations is that procedures do not exist to constitute a Contracts Adjustment Board and that DOT was analyzing whether it would establish

procedures, and, if so, what they would consist of, and if not, what other alternatives were available to DOT in this regard. Accordingly, Parsons has filed this claim.

At this writing, Parsons' losses under the Contract, excluding unresolved claims, now total $2,400,497.92. Due to the Government's breach of contract, the Government owes Parsons a total of $1,400,497.92 ($2,400,497.92 less deductible ($1,000,000)).

The documentation in Parsons' possession justifying this amount is the Contract itself, attached as Exhibit B, including the Memorandum of Understanding dated May 31, 1979, attached as Exhibit A.

Parsons requests a final decision from the contracting officer on this matter. Furthermore, this is to advise that Parsons will keep you advised in regard to the unresolved claims. Any questions should be directed to George H. Seitz, III, Counsel to Parsons.

Respectfully Submitted,

George H. Seitz, III

GHS:drc
Enclosures
cc: Richard L. Reddy, Esquire (w/o encl.)(via facsimile)
Micheal A. Hordell (w/o encl.)(via facsimile)
Attorney for Parsons Transportation Group, Inc.

**CERTIFICATION**

---

I, JAMES ROLLINGS, certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Respectfully Submitted,

James Rollings

Relevant portions of
Exhibit B to letter to
I. Williams dated 11/16/07

Section 13.06 Bidding and Proposal Costs
The allowability and allocability of bidding and proposal costs will be determined pursuant to subpart 1-15.205-3 of the Federal Procurement Regulations as in effect on the date of the letter contract.

Section 13.07 Off-Site A-E Contract
This contract is an "off-site" A-E contract for purposes of determining allowability and allocability of costs in accordance with Clause 27 entitled "Allowable Cost, Fixed Fee and Payment" of the General Provisions.

ARTICLE XIV - INDEMNIFICATION UNDER PUBLIC LAW 85-804 - COST-REIMBURSEMENT TYPE CONTRACTS (1974) Modified.

Section 14.01
Pursuant to Public Law 85-804 (50 U.S.C. 1431-1435) and Executive Order 10789, as amended, and notwithstanding any other provision of this contract, but subject to the following sections of this Article XIV, the Government shall hold harmless and indemnify the A-E Contractor against:

i. claims (including reasonable expenses of litigation or settlement) by third persons (including employees of the A-E Contractor) for death, personal injury, or loss of, damage to, or loss of use of property;

ii. loss of or damage to property of the A-E Contractor, and loss of use of such property but excluding loss of profit; and

iii. loss of, damage to, or loss of use of property of the Government but excluding loss of profit;

to the extent that such a claim, loss or damage (A) arises out of or results from a risk defined in this contract to be unusually hazardous or nuclear in nature, (B) is not compensated by insurance or otherwise, and (C) is in excess of the first $1,000,000 in the aggregate of all such claims, loss, or damage, which aggregate amount of claims, loss, or damage shall be borne by the A-E Contractor. Any such claim, loss or damage within deductible amounts of A-E Contractor's insurance required to be maintained pursuant to this contract shall not be covered under this clause.

Section 14.02
The Government shall not be liable for:

i. claims by the United States (other than those arising through subrogation) against the A-E Contractor; or



DCP 25

ii. losses affecting the property of such A-E Contractor; when the claim, loss or damage was caused by the willful misconduct or lack of good faith on the part of any of the A-E Contractor's directors or officers, or principal officials. For purposes of this Article, the term "principal officials" means any of the A-E Contractor's managers, superintendents, or other equivalent representatives who have supervision or direction of:

A. all or substantially all of the A-E Contractor's business, or

B. all or substantially all of the A-E Contractor's operations at any one plant or separate location in which this contract is being performed, or

C. a separate and complete major industrial operation in connection with the performance of this contract.

The A-E Contractor shall not be indemnified under this Article for liability assumed under any contract or agreement unless such assumption of liability has been specifically authorized by the Secretary and approved by the Contracting Officer. When the Government has assumed liability for subcontracts, the term "A-E Contractor" in this section 14.02 shall include subcontractors.

Section 14.03

No payment shall be made by the Government under this Article unless the amount thereof shall first have been certified to be just and reasonable by the Secretary or his representative designated for such purpose. The rights and obligations of the parties under this Article shall survive the termination, expiration, or completion of this contract. The Government may discharge its liability under this section by making payments to the A-E Contractor or directly to parties to whom the A-E Contractor may be liable. ☆

Section 14.04

With the prior written approval of the Contracting Officer, the A-E Contractor may include in any subcontract under this contract, the same provisions as those in this Article, whereby the A-E Contractor shall indemnify the subcontractor against any risk defined in this contract to be unusually hazardous or nuclear in nature. Such a subcontract shall provide the same rights and duties, and the same provisions for notice, furnishing of evidence or proof, and the like, between the A-E Contractor and the subcontractor as are established by this Article.

The Contracting Officer may also approve similar indemnification of subcontractors at any tier upon the same terms and conditions. Subcontracts providing for indemnification within the purview of this Article shall provide for the prompt notification to the Contracting Officer of any claim or action against, or of any loss by, the subcontractor which is covered by this Article, and shall entitle the Government at its election, to control or assist in the settlement or defense of any such claim or action. The Government shall indemnify the A-E Contractor with respect to his obligations to subcontractors under subcontract provisions thus approved by the Contracting Officer. The Government may discharge its obligations under this section by making payments directly to subcontractors or to parties to whom the subcontractor may be liable.

Section 14.05
If insurance coverage or other financial protection program approved by the Contracting Officer is reduced, the liability of the Government under this Article shall not be increased by reason of such reduction, unless such reduction is directed by the Contracting Officer.

Section 14.06
In addition to the A-E Contractor's responsibilities under the "Insurance-Liability to Third Persons" clause of this contract, which are hereby made applicable to claims under this Article, the A-E Contractor shall (i) promptly notify the Contracting Officer of any claim or action against, or of any loss by the A-E Contractor or any subcontractor which reasonably may be expected to involve indemnification under this Article, (ii) furnish evidence of proof of any claim, loss or damage covered by this Article in the manner and form required by the Government, permit and authorize the Government to direct, control or assist in the settlement or defense of any such claim or action. The cost of insurance (including self insurance), covering a risk defined in this contract as unusually hazardous or nuclear in nature shall not be reimbursed either as a direct or indirect cost except to the extent that such insurance has been required or approved under the "Insurance-Liability to Third Persons" clause hereof.

Section 14.07
"Limitation of Cost/Limitation of Funds" clauses of this contract do not apply to the Government's obligations under this Article. Such obligations shall be excepted from the release required under the "Allowable Cost" clause of this contract.

Section 14.08

For the purpose of this Article XIV, it is agreed that all risks, except the risks covered by the A-E Contractor's insurance policies covering automobile public liability, automobile physical damage (comprehensive and collision), workmen's compensation, and employer's liability, resulting from or in connection with the A-E Contractor's operations under this contract including, but not limited to services for systems engineering, program management, design, construction management, inspection and administration, and all related services for the Northeast Corridor Improvement Program as set out in and performed pursuant to this contract, as it may be changed from time to time in accordance with its terms, are unusually hazardous risks whether or not the A-E Contractor's liability arises from the design, fabrication, or furnishing of products or services under this contract and regardless of whether the harm caused by such risk occurs before or after delivery to the Government of services equipment, or materials under this contract, or before or after the acceptance of contract performance by the Government, or within or without the United States.

Section 14.09

The maximum liability of the Government under this Article XIV is $100,000,000. The parties agree that $100,000,000 is a reasonable estimate of the risk of liability to which the A-E Contractor is exposed under this contract, but that neither party now has an adequate factual basis for determining the true extent of that risk. Therefore, the parties further agree that the maximum liability of the Government under this Article XIV shall be increased and the contract modified accordingly:

(a) if settlements approved in writing by the Government or final judgments against the A-E Contractor and its subcontractors, or both, together with all reasonable expenses of litigation and settlements, for claims against which the A-E Contractor and its subcontractors are indemnified under section 14.01 exceed $100,000,000, in which event the maximum liability of the Government shall be increased to $100,000,000 plus the amount of such final judgments against the A-E Contractor and its subcontractors; or

(b) if an independent analysis of the risk to which the A-E Contractor and its subcontractors are indemnified under section 14.01 concludes that $100,000,000 is inadequate, the maximum liability of the Government shall be increased to an amount which, in the opinion of the Contracting Officer, the independent risk analysis shows to be adequate, but in no case shall the liability be set at an amount which is less than an amount reached through computa- tions provided for in (a) above.

Section 14.10

Claims submitted to the Secretary or his representative designated for such purpose for certification pursuant to section 14.03 that the amounts thereof are just and reasonable shall include an amount equal to the interest cost, including any fees, placement costs or similar expenses, incurred by the A-E Contractor for funds borrowed to satisfy a settlement or judgment between the date a settlement agreement is signed by all parties or a final judgment is entered by a court of competent jurisdiction and the date on which the Government makes payment to the A-E Contractor on such claim pursuant to this Article.

Section 14.11

The Government shall process any and all claims under this Article XIV in a reasonable, but expeditious, manner. Where funds then available to the Government are insufficient to pay claims certified pursuant to section 14.03 to be just and reasonable in amount, the Government shall promptly prepare and submit to the Congress a request for a supplemental appropriation in an amount sufficient to pay such claims or otherwise arrange to pay such claims. The FRA shall use its best efforts to obtain prompt Congressional approval of any supplemental appropriation sought pursuant to this Article.

Section 14.12

The Government's obligation under section 14.01 is expressly conditioned upon and subject to the availability of appropriated funds from which payment can be made.

ARTICLE XV - GOVERNMENT FURNISHED PROPERTY AND SERVICES

Section 15.01 Facilities

The A-E Contractor will be provided with construction job site field offices (including equipment located therein, utilities and janitorial services).

Section 15.02 Equipment

With the prior written approval of the Contracting Officer, or his authorized representative, the A-E Contractor may purchase, as an allowable cost item, the following types of equipment if necessary to the performance of this contract:

(a) Office Furnishings
(b) Office Equipment

Section 15.03 Services

The A-E Contractor will be provided with the following services:

(a) Flagmen and security police to cover work in high risk areas on property owned or controlled by AMTRAK and other property as specified by the Project Director.

# EXHIBIT C

MAY 31 1979

MEMORANDUM OF NEGOTIATION RE INDEMNIFICATION OF DCP FOR DEFINITIVE DCP CONTRACT DOT-FR-76048

In a series of meetings, representatives of FRA and DCP met to resolve the issue of FRA's indemnification of DCP under Article XIV of Letter Contract DOT-FR-76048. The letter contract provides an indemnity of $100 million against third-party tort claims arising from professional services rendered by DCP on the NECIP. That indemnity is supported by $100 million of appropriated and available Federal funds. FRA and DCP wanted to replace that indemnity with an indemnity under P.L. 85-804 pursuant to authority granted FRA in the Fiscal Year 1979 DOT Appropriations Act. After lengthy negotiations, the parties agreed that:

(1) FRA would indemnify DCP under P.L. 85-804 rather than from the appropriated funds now set aside for that purpose.

(2) The maximum liability of the Government will remain $100 million at present but, because neither DCP nor FRA has an adequate factual foundation for predicting the amount of the risk to which DCP is actually subject, the contract will provide for the Government's maximum liability to be increased under certain specified circumstances. It is the intention of the parties that the Government protect DCP against the <u>full</u> amount of the unusually hazardous risk to which DCP is really subject as demonstrated by final judgements and approved

If those judgements and approved settlements exceed $100 million the Government is obligated to increase the present contractual amount from $100 million to whatever amount is required in order to pay such judgements and settlements.

(3) DCP will not be required to maintain professional errors and omissions insurance coverage for the Northeast Corridor Project but DCP will be required to maintain comprehensive general liability insurance for this Project.

For the Government:

Joseph P. Sperty
Contracting Officer

For DeLeuw, Cather/Parsons:

Joseph Volpe, Jr

Other Negotiation Participants:

S. Mark Lindsey
FRA Counsel

N. C. Manitsas
10 May 1979

John V. Parish
Associate Director, NECIP
Planning & Control

# EXHIBIT D

# KRIEGER/GORDON

INVOICES PERTAINING TO THE *GORDON* LAW SUIT

INVOICES FROM PRICKETT, JONES, ELLIOTT, KRISTOL & SCHNEE

| INVOICE NO. | INVOICE DATE | INVOICE AMOUNT | NOTES |
|---|---|---|---|
| 20433 | 09/21/89 | $1,292.26 | |
| 21186 | 11/14/89 | $1,302.54 | |
| 22059 | 01/12/90 | $945.09 | |
| 23391 | 03/19/90 | $739.30 | |
| 24337 | 05/09/90 | $734.60 | |
| 25331 | 07/10/90 | $328.43 | |
| 26354 | 09/10/90 | $332.10 | |
| 27637 | 11/13/90 | $1,226.61 | |
| 29089 | 01/18/91 | $188.44 | |
| 30218 | 03/18/91 | $378.72 | |
| 31239 | 05/20/91 | $378.93 | |
| 32493 | 07/22/91 | $475.62 | |
| 34511 | 11/27/91 | $1,257.63 | |
| 35029 | 12/23/91 | $135.78 | |
| 35696 | 01/30/92 | $79.53 | |
| 36655 | 03/24/92 | $137.08 | |
| 37911 | 06/09/92 | $181.34 | |
| 40106 | 09/29/92 | $3,476.35 | |
| 41563 | 12/23/92 | $581.76 | |
| 42189 | 01/27/93 | $567.40 | |
| 44508 | 06/25/93 | $1,067.85 | |
| 45112 | 07/08/93 | $1,137.70 | |
| 46420 | 09/24/93 | $4,674.02 | |

| | | |
|---|---|---|
| 47018 | 10/22/93 | $2,760.88 |
| 47423 | 11/17/93 | $508.72 |
| 48524 | 01/20/94 | $3,623.51 |
| 49197 | 02/24/94 | $4,924.23 |
| 49607 | 03/21/94 | $4,290.24 |
| 50179 | 04/19/04 | $5,845.25 |
| 50625 | 05/18/94 | $2,869.51 |
| 51120 | 06/20/94 | $2,933.69 |
| 51628 | 07/20/94 | $324.38 |
| 52405 | 08/23/94 | $435.82 |
| 52759 | 09/20/94 | $7,470.47 |
| 53596 | 10/20/94 | $4,429.66 |
| 54161 | 11/30/94 | $3,811.92 |
| 54385 | 12/15/94 | $1,271.99 |
| 55730 | 02/17/95 | $1,136.70 |
| 56128 | 03/17/95 | $1,028.44 |
| 56478 | 04/13/95 | $1,143.42 |
| 57197 | 05/16/95 | $98.45 |
| 57583 | 06/14/95 | $1,431.25 |
| 58067 | 07/17/95 | $5,067.24 |
| 58863 | 08/14/95 | $562.65 |
| 59232 | 09/14/95 | $424.32 |
| 59656 | 10/16/95 | $71.20 |
| 60442 | 11/21/95 | $100.82 |
| 60854 | 12/19/95 | $102.55 |
| 61544 | 01/17/96 | $321.03 |
| 62076 | 02/14/96 | $1,293.74 |

**INVOICES FROM PRICKETT, JONES, ELLIOTT, KRISTOL & SCHNEE (Continued)**

| INVOICE NO. | INVOICE DATE | INVOICE AMOUNT | NOTES |
|---|---|---|---|
| 62466 | 03/13/96 | $1,863.42 | |
| 63082 | 04/26/96 | $1,261.88 | |
| 63263 | 05/15/96 | $2,298.41 | |
| 64114 | 06/18/96 | $6,158.23 | |
| 64555 | 07/23/96 | $476.41 | |
| 65090 | 08/23/96 | $3,185.72 | |
| 65238 | 09/12/96 | $1,899.95 | |
| 66163 | 10/15/96 | $628.78 | |
| | **TOTAL** | **$97,673.96** | |
| 67012 | 11/18/96 | $6,871.94 | Invoices are in PRISM and the copies are in the file. |
| 67539 | 12/17/96 | $813.00 | |
| 68035 | 01/14/97 | $280.03 | |
| 69202 | 03/19/97 | $66.07 | |
| 69563 | 04/15/97 | $149.08 | |
| 70149 | 05/23/97 | $2,124.12 | |
| 70679 | 06/25/97 | $716.26 | |
| 71239 | 07/22/97 | $1,143.61 | |
| 71931 | 09/15/97 | $687.98 | Invoice date is incorrect. Correct date is 9/9/97. |
| 73600 | 11/24/97 | $2,145.90 | |
| 75949 | 04/23/98 | $2,930.35 | |
| 77130 | 07/21/98 | $246.00 | |
| 77435 | 07/27/98 | $3,061.11 | |
| 78637 | 09/29/98 | $1,550.98 | |
| 79478 | 11/25/98 | $7,585.31 | |
| 81765 | 02/25/99 | $18,129.74 | |
| | **TOTAL** | **$48,501.48** | |

# KRIEGER/GORDON

**INVOICES FROM SEITZ, VAN OGTROP & GREEN**

| INVOICE NO. | INVOICE DATE | INVOICE AMOUNT | NOTES |
|---|---|---|---|
| 44 | 04/21/99 | 3,159.02 | Invoices are in PRISM and copies are in the file. |
| 184 | 04/30/99 | 3,152.61 | |
| 334 | 06/21/99 | 3,170.45 | |
| 983 | 07/16/99 | 3,567.78 | |
| 1159 | 08/23/99 | 3,008.89 | |
| 1245 | 09/21/99 | 763.46 | |
| 1301 | 10/15/99 | $19,013.25 | |
| 1490 | 11/24/99 | $13,291.73 | |
| 1563 | 12/18/99 | $19,647.42 | |
| 1718 | 02/14/00 | $11,846.67 | |
| 1873 | 03/09/00 | $316.05 | |
| 2063 | 04/14/00 | $1,372.20 | |
| 2232 | 05/11/00 | $14,523.68 | |
| 2425 | 06/12/00 | $21,379.06 | |
| 2614 | 07/17/00 | $545.33 | |
| 2913 | 08/24/00 | $2,767.56 | |
| 3082 | 09/14/00 | $1,111.87 | |
| 3435 | 11/10/00 | $1,541.93 | |
| 3477 | 12/15/00 | $5,625.70 | |
| 3711 | 02/20/01 | $12,540.39 | |
| 20005-001M | 04/26/01 | $669.92 | Invoice no. is incorrect. Correct no. is 4020. |
| 4195 | 06/12/01 | $618.95 | |
| 20005-001M | 01/23/02 | $383.27 | Invoice no. is incorrect. Correct no. is 5297. |
| 5508 | 02/23/02 | $5,600.18 | |

| | | | |
|---|---|---|---|
| 5693 | 03/20/02 | $5,599.84 | |
| 5935 | 05/03/02 | $1,414.51 | |
| 6116 | 05/24/02 | $1,341.24 | |
| 6561 | 06/27/02 | $265.13 | |
| 6893 | 08/29/02 | $123.22 | |
| 7173 | 10/29/02 | $106.05 | |
| 7494 | 01/20/03 | $1,972.53 | |
| 8017 | 03/25/03 | $392.39 | |
| 8304 | 05/23/03 | $864.51 | |
| 8763 | 08/14/03 | $657.51 | |
| 1169 | 09/26/03 | $5,517.88 | Services from WIK. Check sent to Seitz. |
| 9061 | 10/08/03 | $2,899.12 | |
| 1214 | 10/31/03 | $3,776.00 | Services from WIK. Check sent to Seitz. |
| 9406 | 11/06/03 | $15,263.25 | |
| | **TOTAL** | **$189,810.55** | |

# KRIEGER/GORDON

## INVOICES FROM DRINKER BIDDLE & REATH FOR *KRIEGER/FINGER*

| INVOICE NO. | INVOICE DATE | INVOICE AMOUNT | NOTES |
|---|---|---|---|
| 73834 | 11/30/96 | $21,808.48 | Costs were designated |
| 74486 | 12/31/96 | $1,608.45 | to be split between |
| 77657 | 01/22/97 | $17.00 | PTG *(formerly DCCO)* |
| 79016 | 02/20/97 | $34.00 | and PI&T |
| 82143 | 04/11/97 | $107.62 | |
| | | | Invoices sent to Paula Costantino for |
| 84192 | 05/14/97 | $90.77 | processing. |
| 96961 | 12/17/97 | $95.00 | Copies are in the file. |
| 101390 | 02/25/98 | $38.00 | |
| | TOTAL | **$23,799.32** | |

## INVOICES FROM WIK ASSOCIATES, INC.

| INVOICE NO. | INVOICE DATE | INVOICE AMOUNT | NOTES |
|---|---|---|---|
| 4202 | 09/27/96 | $371.25 | These invoices are in PRISM and copies are in. |
| 5024 | 08/03/98 | $1,051.88 | the file. |
| 5167 | 11/30/98 | $3,789.34 | |
| 5404 | 05/31/99 | $1,054.28 | Firm provided expert witness services and |
| 5505 | 07/30/99 | $585.41 | technical advice for the *Gordon* matter. |
| 6092 | 05/31/00 | $3,727.60 | |
| | TOTAL | **$10,579.76** | |

# KRIEGER/GORDON

**INVOICES FROM HARTMANN ENGINEERING**

| INVOICE NO. | INVOICE DATE | INVOICE AMOUNT | NOTES |
|---|---|---|---|
| 212 | 11/02/98 | $5,808.30 | These invoices are in PRISM and copies are in the file. |
| 217 | 12/01/98 | $6,397.00 | |
| 223 | 12/31/98 | $1,845.00 | |
| 231 | 02/01/99 | $1,728.00 | Firm provided expert witness services and technical advice. |
| 235 | 03/05/99 | $1,350.00 | |
| 275 | 10/01/99 | $1,725.00 | |
| 266 | 09/01/99 | $1,555.00 | |
| 288 | 12/03/99 | $390.00 | |
| 292 | 12/31/99 | $2,659.09 | |
| 312 | 06/01/00 | $5,412.75 | |
| | **TOTAL** | **$28,870.14** | |

**INVOICE FROM DIANE G. McGRELLIS**

| INVOICE NO. | INVOICE DATE | INVOICE AMOUNT | NOTES |
|---|---|---|---|
| None specified | 02/01/00 | **$3,814.70** | This invoice is in PRISM and a copy is in the. file.<br><br>Firm provided court reporting services. The cost is for trial transcripts taken November 29 through December 3, 1999 for *Gordon v. National Railroad.* |

# KRIEGER/GORDON

INVOICE FROM BERNARD GEORGE CONAWAY ESQUIRE

| INVOICE NO. | INVOICE DATE | INVOICE AMOUNT | NOTES |
|---|---|---|---|
| None specified | 11/20/99 | **$747.50** | This invoice is not in PRISM. Copy in the file. |

Date: 09/15/2006

Page: 1

# Tabs3 Client Ledger Report

Seitz, VanOgtrop & Green, P.A.

Primary Timekeeper: 2 George H. Seitz, III
From 11/18/2003 Thru 05/26/2004

| | Date | Ref # | Stmt # | Fee Amount | Hours | Expense Amount | Advance Amount | Payment Amount | Apply to Stmt # | Bill Total | Balance Due |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | 18162.37 |
| 20005.001M DeLeuw, Cather & Balance Forward: | | | | | | | | | | | |
| RE: Gordon, et.al. v. DCP, et.al. | | | | | | | | | | | |
| | 11/18/2003 | 73 | 9813 | | | | | 2899.12R | 9061 | | 15263.25 |
| | 11/21/2003 | 74 | 9813 | | | | | 5517.88R | | | 9745.37 |
| | 12/22/2003 | 75 | 9813 | | | | | 9745.37R | | | 0.00 |
| | 01/22/2004 | 77 | 9813 | 3444.00 | 16.40 | 34.44 | | | | 3478.44 | 3478.44 |
| | 01/22/2004 | 76 | 9813 | | | | | 3478.44R | | | 0.00 |
| | 03/31/2004 | 80 | 10231 | | | | | 5496.44R | | | -5496.44 |
| | 04/01/2004 | 81 | 10231 | 9324.00 | 44.40 | 96.64 | 7.98 | | | 9428.62 | 3932.18 |
| | 05/06/2004 | 82 | 10495 | | | | | 3932.18R | 10231 | | 0.00 |
| | 05/26/2004 | 83 | 10495 | 8295.00 | 39.50 | 82.95 | | | | 8377.95 | 8377.95 |
| | Subtotal | | | 21063.00 | 100.30 | 214.03 | 7.98 | 31069.43 | | 21285.01 | 8377.95 |
| Total for Primary Timekeeper 2 Balance Forward: | | | | | | | | | | | 18162.37 |
| | | | | 21063.00 | 100.30 | 214.03 | 7.98 | 31069.43 | | 21285.01 | 8377.95 |

SEITZ, VAN OGTROP & GREEN, P.A.
ATTORNEYS AND COUNSELLORS AT LAW

222 DELAWARE AVENUE, SUITE 1500
POST OFFICE BOX 68
WILMINGTON, DELAWARE 19899

BERNARD A. VAN OGTROP
GEORGE H. SEITZ, III
JAMES S. GREEN
R. KARL HILL
PATRICIA P. McGONIGLE
CARRIE I. DAYTON
KEVIN A. GUERKE

(302) 888-0600
FAX: (302) 888-0606

Writer's Direct Dial: (302) 888-7602
Writer's E-Mail Address: gseitz@svglaw.com
www.lawyers.com/svglaw

May 21, 2004

***Via Hand Delivery***
John A. Elzufon, Esquire
Elzufon, Austin, Reardon,
Tarlov & Mondell, P.A.
300 Delaware Avenue, Suite 1700
P. O. Box 1630
Wilmington, DE 19899-1630

**RE: Gordon, et al. v. DCP, et al.**

Dear John:

Enclosed please find Defendant DeLeuw Cather Parsons' check in the amount of $195,000.00 as full and final settlement in the above-referenced matter. Please hold the check in Escrow until you receive word that Amtrak has signed.

Thank you.

Very truly yours,

George H. Seitz /drc

George H. Seitz, III

GHS:drc
Enclosure

cc: Richard L. Reddy, Esquire (w/o enclosure)

41637 v1

JP MORGAN CHASE BANK
DISBURSEMENT ACCOUNT
SYRACUSE, NY

**PARSONS**
1133 15TH STREET, NW
WASHINGTON, DC 20005

50-937
213

VOID AFTER 90 DAYS

| CHECK NUMBER | DATE | AMOUNT |
|---|---|---|
| 0020568 | 4/12/04 | $195,000.00 |

PAY One Hundred Ninety Five Thousand DOLLARS and Zero CENTS

TO THE ORDER OF
ESTATE OF AUTHUR KRIEGER & ELZUFON,
AUSTIN, REARDON, TARLOV & MONDELL
300 DELAWARE AVENUE, STE 1700
WILMINGTON, DE 19899-1630

JP MORGAN CHASE BANK
5040 TARBELL ROAD
SYRACUSE, NY 13206

BY [signature]
AUTHORIZED SIGNATURE

⑈0020568⑈ ⑆021309379⑆601868441⑈

## REMITTANCE ADVICE

| INVOICE NO | DATE | VOUCHER NO | DESCRIPTION | AMOUNT | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|---|
| NONE | 4/01/04 | 40402586 | SETTLEMENT AMOUNT FOR KRIEGER V. AMTRAK | 195000.00 | | 195000.00 |

| CHECK NO | DATE | VENDOR NO | VENDOR NAME | TOTAL AMOUNT |
|---|---|---|---|---|
| 0020568 | 4/12/04 | TH238 | ESTATE OF AUTHUR KRIEGER & ELZUFON, | 195000.00 |

1133 15TH STREET, NW

*PLEASE DETACH THIS VOUCHER BEFORE DEPOSITING CHECK*

# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILBUR SMITH & ASSOCIATES, INC.<br>450 Jackson Boulevard<br>Columbia, South Carolina 29209,<br><br>v.<br><br>DELEUW, CATHER/PARSONS<br>1133 15th Street, N.W.<br>Washington, D.C. 20005-2701,<br><br>A Partnership comprised of the<br>Ralph M. Parsons Company and<br>DeLeuw Cather and Company. | ) |

MODIFIED APPLICATION FOR CONFIRMATION
OF ARBITRATION AWARD

Wilbur Smith & Associates, Inc. ("Wilbur Smith") hereby applies for confirmation of an arbitration award entered on March 2, 1989 in an arbitration styled as Wilbur Smith and DeLeuw, Cather/Parsons, AAA No. 16 110 000380 87B. In support of this application, the undersigned represents as follows:

1. This Court has jurisdiction of this matter pursuant to 9 U.S.C. § 9 in that the arbitration award was made in the District of Columbia.

2. Wilbur Smith & Associates, Inc. is a Delaware Corporation with its principal place of business in Columbia, South Carolina.

3. DeLeuw, Cather/Parsons ("DCP") is a partnership with its principal place of business at 1133 15th Street, N.W., Washington, D.C. 20005.

4. The General Partners of DeLeuw, Cather/Parsons are the Ralph M. Parsons Company and DeLeuw Cather and Company, each of which has an office at 101 15th Street, N.W., Washington, D.C. 20005.

5. On October 6, 1987, Wilbur Smith filed a demand for arbitration against DCP pursuant to a written agreement between the parties dated July 21, 1980 providing for arbitration of disputes arising under that contract. A true and correct copy of the demand is attached as Exhibit A.

6. An arbitration hearing was held before a panel of arbitrators in Washington, D.C. commencing on October 31, 1988.

7. The hearing was concluded on November 11, 1988. The parties submitted briefs to the arbitrators and on March 2, 1989, the arbitrators awarded Wilbur Smith $377,636.00. A true and correct copy of the award is attached as Exhibit B.

8. The award was entered less than one year ago.

WHEREFORE, Wilbur Smith requests that the award be confirmed and that judgment be entered in favor of Wilbur Smith in the amount of $377,636.00.

Dated at Washington, D.C. this 14th day of June, 1989.

Respectfully submitted,

WILBUR SMITH & ASSOCIATES, INC.

Margaret McClockey Shanks

Margaret M. Shanks, Bar No. 316836
BRYAN, CAVE, MCPHEETERS & MCROBERTS
1015 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 289-6100

Penny Q. Seaman mms

Penny Q. Seaman, Bar No. 347658
WIGGIN & DANA
195 Church Street
P.O. Box 1832
New Haven, CT 06508
(203) 789-1511

4947S

CERTIFICATE OF SERVICE

This is to certify that on this 14th day of June, 1989, a copy of the foregoing was mailed to DeLeuw Cather Parsons at 1133 15th Street, N.W., Washington, D.C. 20005-2701 (attn: James Lockwood), Ralph M. Parsons Company, 1133 15th Street, N.W., Washington, D.C. 20005 and Michael J. Ladino, Esq. of Gadsby & Hannah, 1747 Pennsylvania Avenue, N.W., Washington, D.C. 20006.

Margaret McCloskey Shanks
Margaret McCloskey Shanks

4947S

**EXHIBIT A**

OCT 0 6 1987

AMERICAN ARBITRATION ASSOCIATION

Construction Industry Arbitration Rule

TO: De Leuw, Cather/Parsons
1133 15th Street, N.W.
Washington, D.C. 20005-2701

Attention: James Lockwood, Esquire

DEMAND FOR ARBITRATION

Wilbur Smith Associations, Inc. ("Claimant"), a party to an arbitration agreement contained in a written contract dated July 21, 1980. providing for arbitration under the Construction Industry Arbitration Rules hereby demands arbitration thereunder and designates as its arbitrator Robert M. Wright, Esquire, of Whiteford, Taylor & Preston, 7 St. Paul Street, Baltimore, Maryland 21202 and demands that the respondent designate its arbitrator within thirty (30) calendar days from the date hereof by written notice to the claimant. A copy of the arbitration clause is attached hereto as Exhibit A

Nature of Dispute

At the request of the Respondent the Claimant performed engineering services for which the Respondent has refused to pay.

Relief Sought

A determination of the amount due the Claimant plus interest, arbitration fees and expenses, and attorneys fees.

Category of Parties

Claimant is an engineer and Respondent is an architect/engineer.

Hearing Locale Requested

Washington, D.C.

You are hereby notified that copies of our Arbitration Agreement and of this Demand are being filed with the American Arbitration Association at its Washington, D.C. Regional Office, with the request that it commence the administration of the arbitration Under Section 7 of the Arbitration Rules, you may file an answering statement within seven days after notice from the Administrator.

Signed [signature] Attorney

| | |
|---|---|
| Name of Claimant | Wilbur Smith Associates, Inc. |
| Address (to be used in connection with this case) | 450 Jackson Boulevard |
| City and State | Columbia, South Carolina |
| Zip code | 29209 |
| Telephone | (803) 738-0580 |
| Name of Attorney | William J. Egan |
| Address | 195 Church Street |
| City and State | New Haven, Connecticut |
| Zip Code | 06510 |
| Telephone | (203) 789-1511 |

Dated in New Haven, Connecticut this 5th day of October, 1987.

"5. DISPUTES
(DCP - NOV 1979)

Except as otherwise provided in this contract, any dispute arising under this contract which is not disposed of by agreement shall be decided by the Contract Administrator, who shall reduce his decision to writing or otherwise furnish a copy thereof to the Architect-Engineer. The decision shall be final and conclusive on both parties unless the Architect-Engineer initiates arbitration within sixty (60) calendar days of receipt of final decision. Such disputes shall be settled under the Construction Industry Arbitration Rules of the American Arbitration Association with the arbitration proceedings being held in Washington, D. C. The dispute shall be decided by a panel of three arbitrators, one selected by DCP, one selected by the Architect-Engineer, and the third from a list provided by said Association but selected by the preceeding two arbitrators. A decision of the majority of these arbitrators will be final; Provided, however, That the decision of the third arbitrator shall be final in the event of no majority decision. The party to which the notice is addressed shall within thirty (30) calendar days, by written notice to the party invoking arbitration, designate its own arbitrator, and the aforesaid two arbitrators shall appoint the third arbitrator and notify the parties of such appointment within thirty (30) calendar days. If the party receiving the notice fails to appoint its own arbitrator, that arbitrator shall be selected by and in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect. The award of the arbitrators is final and may be enforced in any court of competent jurisdiction. Pending any decision, appeals or judgement referred to in this clause or the settlement of any dispute arising under this contract, the Architect-Engineer shall proceed diligently with the performance of this contract and in accordance with the Contract Administrator's decision.

AMERICAN ARBITRATION ASSOCIATION **EXHIBIT B**

CONSTRUCTION INDUSTRY ARBITRATION TRIBUNAL

In the Matter of the Arbitration between

Wilbur Smith Associates, Inc.
**AND**
De Leuw, Cather/Parsons

CASE NUMBER: 16 110 00380 87B

## AWARD OF ARBITRATORS

WE, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the Arbitration Agreement entered into by the above-named Parties, and dated July 21, 1980, and having been duly sworn and having duly heard the proofs and allegations of the Parties, FIND as follows:

With respect to its claims on the Tunnel Extensions Claimant is entitled to an Award of $ -0-.

With respect to its claims on the North Tower Claimant is entitled to an Award of $180.505.00.

With respect to its claims on the Concourse Claimant is entitled to an Award of $99.830.00.

With respect to its claims on the Parking Garage Claimant is entitled to an Award of $80.867.00.

With respect to its claims on the Pedestrian Bridge Claimant is entitled to an Award of $16.434.00.

With respect to its claims on the South Tower Claimant is entitled to an Award of $ -0-.

THEREFORE, WE AWARD as follows:

DE LEUW, CATHER/PARSONS shall pay to WILBUR SMITH ASSOCIATES, INC. the sum of THREE HUNDRED SEVENTY-SEVEN THOUSAND SIX HUNDRED THIRTY-SIX DOLLARS AND NO CENTS. ($377,636.00).

The administrative fees and expenses of the American Arbitration Association shall be borne equally by the parties. Said fees and expenses shall be paid as directed by the Association.

The fees for the remuneration of the neutral Arbitrator shall be borne equally by the parties. Said fees shall be paid as directed by the Association.

This Award is in full settlement of all claims submitted to this arbitration.

3/1/89
DATE

ADRIAN L. BASTIANELLI, III, ESQ.
ARBITRATOR

3/2/89
DATE

ROBERT M. WRIGHT, ESQ.
ARBITRATOR

3-4-89
DATE

KRIS R. NIELSON

# EXHIBIT F

# SIFF, ROSEN & PARKER, P. C.

ATTORNEYS AT LAW
WOOLWORTH BUILDING
233 BROADWAY
NEW YORK, N.Y. 10279
TELEPHONE (212) 238-8400
TELECOPIER (212) 693-0854
TELEX 141022

MARK L. ROSEN
STUART I. PARKER
LOUIS G. CORSI
WILLIAM G. BALLAINE
IGNATIUS JOHN MELITO
LOUIS G. ADOLFSEN
MARK S. LANDMAN
JOHN H. SOMOZA
SUE C. JACOBS
STEPHEN JACOBS
DAVID H. POLLACK

STEVEN G. ADAMS
ANN BICKFORD
JOHN A. BONVENTRE
MOLLY B. DAVIS
STEPHANIE A. EBERS
ANN MARIE FORTE *
DAVID R. FRIED
AMY GALLENT
CATHLEEN GIANNETTA
KENNARD H. GOODMAN *
DOUGLAS R. GROSSINGER
JOHN P. HARRIS *
KAREN E. HELLER *
JEANNE HERZOG
RONALD E. JOSEPH
STEPHEN V. KOVARIK *
KATHLEEN L. KUHN *
MARIA J. LITMAN *
ANTHONY F. LOVALLO *
DANIEL S. MORETTI
STEPHANIE O'CONNOR
LUCIO A. PETROCELLI *
NEIL L. SAMBURSKY *
ROBIN SCHECHTER
DARREL M. SEIFE
S. DWIGHT STEPHENS
JOHN F. VOLPE *
ROBERT F. WALSH *
JAMES M. WOOLSEY III
SUSAN C. ZUCKERMAN *

* N. J. BAR

DONALD J. VOLKERT, JR. *
GERALD T. FORD *
RESIDENT PARTNERS
NEW JERSEY OFFICE

NEW JERSEY OFFICE
SUITE 500
ONE GATEWAY CENTER
NEWARK, N. J. 07102-5311
(201) 623-2700
TELECOPIER (201) 623-4496
TELEX 141022

BENJAMIN H. SIFF (1908-1975)

December 20, 1989

RECEIVED
DEC 22 1989
GADSBY & HANNAH
WASHINGTON, D.C.

Robert S. Brams, Esq.
Gadsby & Hannah
Attorneys at Law
1747 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

Re: A&C Ship Fueling Corp., et al. v. National Railroad Passenger Corp. et al.
86 Civ. 8364 (WK)

Dear Bob:

I have enclosed a release, with the original signature of Brian J. Fitzpatrick, releasing your client in this case.

Sincerely,

Ronald E. Joseph

REJ/me

Enclosure

NEC00941

DCP 55

RELEASE

TO ALL TO WHOM THESE PRESENTS SHALL COME OR MAY CONCERN, KNOW THAT National Railroad Passenger Corporation ("NRPC") 60 Massachusetts Avenue, N.E., Washington, D.C. 20002 (hereinafter "Releasor"), in consideration of the contributions by Fourth-Party Defendant, Ammann & Whitney ("A&W"), a partnership organized and existing under the laws of the State of New York, with joint venturer Seinuk and Ray ("S&R"), of the sum of Twenty Thousand Eight Hundred Thirty-Three Dollars and Thirty-Three Cents ($20,833.33) Fourth-Party Defendant De Leuw, Cather/Parsons ("DCP"), of the sum of Twenty Thousand Eight Hundred and Thirty-Three Dollars and Thirty-Three Cents ($20,833.33) and Third-Party Defendant William F. Hegarty, Inc. ("Hegarty") of the sum of Ten Thousand Dollars and One Cent ($10,000.01), A&W, DCP, S&R and Hegarty being referred to hereinafter as Releasees, toward the settlement of the action in the United States District Court for the Southern District of New York entitled A&C Ship Fueling Corp., et al. v. National Railroad Passenger Corporation, et al., 86 Civ. 8364 (WK) (the "Lawsuit"), in which Releasor and Releasees are defendents, release and discharge the Releasees and Releasees' parents, subsidiaries, associate contractors or subcontractors, affiliates, partners, officers, directors, employees, agents, attorneys, heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialities, covenants, contracts, controversies, agreements, promises,

variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law admiralty or equity, which against the Releasees, the Releasor, Releasor' parents, subsidiaries, affiliates, partners, officers, directors, employees, agents, attorneys, heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever relating to, arising out of or involved in the Lawsuit, and the collision of the M/V John J. Tabeling with the Penn Main Line Bridge on April 18, 1985, such collision being the subject of the Lawsuit, including, without limitation, all claims that were or could have been asserted in the Lawsuit.

Whenever the text hereof requires, the use of singular number shall include the appropriate plural number as the text of the within instrument may require.

This Release Agreement embodies the entire agreement between the parties and cannot be changed or modified in any way except by written agreement signed by Releasor and Releasees duly authorized representatives.

NATIONAL RAILROAD PASSENGER CORPORATION

By: Brian J. Fitzpatrick
Brian J. Fitzpatrick

Title: Regional Director, Claims Services

Date: 11/13/89

IN WITNESS WHEREOF, the Releasor has caused this Release to be executed by its duly authorized officers this 13th day of Nov., 1989.

On the 13th day of Nov., 1989, before me personally came and appeared Brian Fitzpatrick to me known and known to be the individual described in and who executed the foregoing authorization, and who duly acknowledges to me that he or she executed the same.

Notary Public

MICHAEL J. DRANCE
Notary Public, State of New York
No. 52-4912029
Qualified in Suffolk County
Commission Expires Nov. 9, 1989

My Commision Expires

RELEASE

TO ALL TO WHOM THESE PRESENTS SHALL COME OR MAY CONCERN, KNOW THAT Ammann & Whitney, 96 Morton Street, New York, New York, a partnership organized and existing under the laws of the State of New York, with joint venturer Seinuk and Ray, as RELEASORS, in consideration of the contributions by defendants De Leuw, Cather/Parsons ("DCP"), a joint venture comprised of De Leuw Cather and Company and the Ralph M. Parsons Company, and National Railroad Passenger Corporation ("NRPC"), of the sums of TWENTY THOUSAND EIGHT HUNDRED AND THIRTY-THREE DOLLARS AND THIRTY-THREE CENTS ($20,833.33) each and William F. Hegarty, Inc. ("Hegarty") of the sum of TEN THOUSAND DOLLARS AND ONE CENT ($10,000.01), DCP, NRPC and Hegarty being referred to hereinafter as RELEASEES, toward the settlement of the action in the United States District Court for the Southern District of New York entitled A&C Ship Fueling Corp. et al. v. National Railroad Passenger Corporation, et al., 86 Civ. 8364 (WK) (the "Lawsuit"), in which RELEASORS and RELEASEES are defendants, releases and discharges the RELEASEES and RELEASEES' parents, subsidiaries, associate contractors or subcontractors, affiliates, partners, officers, directors, employees, agents, attorneys, heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents,

executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEES, the RELEASORS, RELEASORS' parents, subsidiaries, associate contractors or subcontractors, affiliates, partners, officers, directors, employees, agents, attorneys, heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever relating to, arising out of, or involved in the Lawsuit and collision of the M/V JOHN J. TABELING with the Penn Main Line Bridge on April 18, 1985, such collision being the subject of the Lawsuit, including, without limitation, all claims that were or could have been asserted in the Lawsuit.

Whenever the text hereof requires, the use of singular number shall include the appropriate plural number as the text of the within instrument may require.

This RELEASE may not be changed orally.

IN WITNESS WHEREOF, the RELEASORS have caused this RELEASE to be executed by its duly authorized officers this 17 day of Oct, 1989.

AMMANN & WHITNEY

By ____________

Name (print): J. LAING.

Title: SR. PARTNER.



NEC00931

DCP 60

SEINUK AND RAY

By ____________________

Name (print): Ysrael Seinuk

Title: President

STATE OF NEW YORK )
ss.:
COUNTY OF NEW YORK)

On this 17 day of Oct, 1989, before me personally came P. Laing, to me known, who being by me duly sworn, did depose and say that he resides at 96 Morton St.; that he is ~~the~~ Sr. Partner of Ammann & Whitney, the partnership described in and which executed the foregoing instrument; and that he signed his name thereto as the true act and deed of said partnership pursuant to authority granted to him by the partnership.

Notary Public

ANTHONY T. RUSSO
Notary Public, State of New York
No. 30-3407780 - Qualified in Nassau Co.
Certificate filed in New York County
Commission Expires 10/31/91

On this 17 day of October, 1989, before me personally came Ysrael Seinuk, to me known, who being by me duly sworn, did depose and say that he resides at 82 Dennis Place, Queens, NY. 11375; that he is the President of Seinuk and Ray, the entity which executed the foregoing instrument; and that he signed his name thereto as the true act and deed of said entity pursuant to authority granted to him by the entity.

Notary Public

# EXHIBIT G

# A&C and WSA Combined

**INVOICES FROM GADSBY & HANNAH**

| INVOICE NO. | INVOICE DATE | INVOICE AMOUNT | NOTES |
|---|---|---|---|
| 94001 | 11/28/88 | $100,623.20 | These invoices are not in PRISM. Copies were provided by firm's Accounting Dept. on 2/24/04. |
| 94252 | 12/23/88 | $88,026.51 | |
| 99974 | 01/26/89 | $56,106.67 | |
| 100177 | 02/24/89 | $40,967.22 | |
| 100470 | 03/29/89 | $11,032.01 | |
| 100806 | 05/01/89 | $15,825.38 | |
| 101316 | 06/29/89 | $1,443.20 | Invoice for copying services. |
| 101317 | 06/29/89 | $13,167.94 | |
| 101605 | 07/24/89 | $12,271.85 | |
| 101858 | 08/29/89 | $16,510.52 | |
| 102628 | 11/20/89 | $3,231.78 | |
| 102939 | 01/03/90 | $82.80 | |
| 102957 | 01/05/90 | $39,928.06 | |
| 103082 | 01/23/90 | $6,300.60 | |
| 103594 | 03/07/90 | $2,138.20 | |
| 104357 | 05/04/90 | $346.80 | |
| | **TOTAL** | **$408,002.74** | |

50696 v2

# EXHIBIT H

FINAL 3/10/95

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Settlement Agreement")is made by and among J.F. White Contracting, Inc. ("J.F. White"); the Massachusetts Bay Transportation Authority ("MBTA"); DeLeuw Cather & Company, The Ralph M. Parsons Company and DeLeuw, Cather/Parsons, a joint venture (collectively "DCP"); Hugh Stubbins & Associates, Inc., Castro-Blanco, Piscioneri & Feder, Architects, P.C. and Hugh Stubbins/Castro-Blanco, a joint venture (collectively "HS/CB"), Skidmore, Owings & Merrill, a general partnership ("SOM"); Dorel Steel Erection Corporation ("Dorel"); the National Railroad Passenger Corporation ("Amtrak"); and Boston Edison Company ("BECO") (all together the "Parties" or the "Releasing Parties").

## RECITALS

WHEREAS, pursuant to the provisions of Title VII of the Railroad Revitalization and Regulatory Reform Act of 1976, 45 U.S.C. 801 et seq., the Secretary of Transportation had delegated to the Federal Railroad Administration ("FRA") the authority to implement the Northeast Corridor Improvement Project ("NECIP") to improve facilities for or relating to intercity rail passenger service between Washington, D.C. and Boston, Massachusetts.

WHEREAS, in the 1970's DCP entered into a contract with the FRA, which was amended from time to time, whereby DCP would provide program management and other services for the FRA in connection with the NECIP, which included the South Station in Boston, Massachusetts ("South Station").

WHEREAS, in the 1970's DCP entered into a subcontract with SOM, which was amended from time, to perform certain professional consulting architectural-engineering services in connection with the NECIP, which included the South Station.

WHEREAS, in the 1970's DCP also entered into a subcontract with HS/CB, which was amended from time to time, as architect-engineer of record to prepare certain plans and specifications for the renovation and construction of the South Station and to provide certain other architectural and engineering services in connection with the South Station.

WHEREAS, starting in 1983, the MBTA hired SOM to provide certain construction phase consultant services for the South Station and DCP and HS/CB in turn provided certain support services during the construction phase (although no written contracts were executed).

WHEREAS, on April 24, 1984, the MBTA entered into a contract with J.F. White whereby J.F. White agreed to serve as a general contractor for the renovation and construction work on South Station and thereafter, J.F. White entered into contracts with various subcontractors, including, among others, Dorel; L.K. Comstock & Company, Inc., Manzi Electrical Corp., Myles Electrical Company, Inc. and Comstock/Manzi/Myles, a joint venture; M.J. Flaherty Company; G.J. Luchetti, Inc. and Automatic Sprinkler Corporation of America, a division of Figgie International, Inc., to perform certain construction work on South Station.

WHEREAS, the MBTA, Amtrak and FRA entered into certain agreements for the removal of rail and the performance of other tasks in the yard and elsewhere in connection with the work on South Station.

WHEREAS, the work on South Station was completed later than initially stipulated in the contract between the MBTA and J.F. White and J.F. White filed a delay claim on its own and its subcontractors' behalf with the MBTA, which delay claim was supplemented at various times over subsequent years.

WHEREAS, on April 25, 1988, the MBTA filed an action in Suffolk Superior Court, Commonwealth of Massachusetts, Case No. 88-2438, against DCP, HS/CB, SOM, Northeast Railroad Construction Co., Inc. ("Northeast Rail"), BECO, Amtrak and J.F. White for recovery of damages on its own behalf and to resolve J.F. White's claims, after which a First and Second Amended Complaint were filed and various parties intervened and various counterclaims and crossclaims were filed (all together the "Lawsuit").

WHEREAS, the parties to this Settlement Agreement have now decided it would be in their best interest to resolve between and among themselves all controversies and disagreements and compromise, settle and release all claims, crossclaims and counterclaims that have been or could have been raised by them in the Lawsuit.

NOW, THEREFORE, for valuable consideration recited herein, the Parties hereto acknowledge, covenant and agree as follows:

1. The Parties hereby agree to dismiss with prejudice all claims, crossclaims and counter-claims in the Lawsuit

against, between or among each other, with each Party to bear its own costs and waive all rights of appeal.

2. It is understood that execution and agreement by the MBTA to the terms of the Settlement Agreement requires the approval of the MBTA's Board of Directors.

3. The MBTA hereby agrees to pay J.F. White One Million Nine Hundred Thousand Dollars ($1,900,000) within thirty (30) days after the Effective Date of this Settlement Agreement. The Effective Date is the date the last of all parties to this Settlement Agreement have signed the Settlement Agreement and the releases from the FRA referenced in Paragraph 10 of this Settlement Agreement have been received by DCP, SOM and HS/CB. This Settlement Agreement shall go into full force and effect on the Effective Date. The MBTA shall expeditiously submit this Settlement Agreement to the MBTA's Board of Directors, in accordance with usual and customary procedures for such submissions, after the other parties have indicated their written assent to this Settlement Agreement. The MBTA shall only sign this Settlement Agreement after approval by its Board of Directors.

4. HS/CB hereby agrees to pay J.F. White at least $830,000 within five (5) business days after the Effective Date. In addition, Hugh Stubbins & Associates, Inc. only agrees to pay no more than $50,000 and Castro-Blanco, Piscioneri & Feder Architects, P.C. only agrees to pay no more than $70,000 to J.F. White in eighteen (18) equal monthly installments, commencing thirty (30) days after the Effective Date. Interest at the prime rate will accrue on any late installment and will be due and payable as part of each monthly payment. Total payments under this paragraph (excluding the interest for any late installments) shall be Nine Hundred Fifty Thousand Dollars ($950,000).

5. DCP hereby agrees to pay J.F. White Four Hundred Twenty-Five Thousand Dollars ($425,000) within five (5) business days after the Effective Date.

6. SOM hereby agrees to pay J.F. White Four Hundred Twenty-Five Thousand Dollars ($425,000) within five (5) business days after the Effective Date.

7. Amtrak hereby agrees to pay J.F. White One Hundred Thousand Dollars ($100,000) within five (5) business days after the Effective Date.

8. BECO hereby agrees to pay J.F. White Ten Thousand Dollars ($10,000) within five (5) business days after the Effective Date.

9. Each of the MBTA, J.F. White, HS/CB, DCP, SOM, Dorel, Amtrak and BECO (the "Releasing Parties") for themselves and their respective present and former joint venture members, principals, partners, directors, officers, stockholders, employees, consultants, attorneys, agents, representatives, appointed officials, successors and assigns shall and do hereby release and forever discharge each and every one of the other Releasing Parties, their insurers and their respective present and former joint venture members, principals, partners, directors, officers, stockholders, employees, consultants, attorneys, agents, representatives, appointed officials, successors and assigns from any and all claims, controversies, actions, causes of action, debts, demands, obligations, penalties, damages, accounts, charges, liabilities and costs whatsoever, whether in law or in equity, from the beginning of the world to the Effective Date, that were asserted or that were known or that reasonably could have been known at the time of the Effective Date, including but not limited to claims that were or could have been brought in the Lawsuit, that arise out of or relate to South Station or to any contracts or agreements referring or relating to South Station or to any work or services referring or relating to South Station, including without limitation, and by way of illustration only, any and all claims for services rendered, work performed, or materials purchased or supplied, or for delays, disruptions, inefficiencies, losses of productivity, extensions of time, or accelerations or for claimed extra work, additional costs, change orders or unpaid contract balances, or for alleged negligence, breach of contract, breach of warranty, breach of fiduciary duty, negligent misrepresentation, estoppel, indemnification, contribution or violation of any state or federal statute or any principle of common law.

10. The Parties agree that prior to this Settlement Agreement going into effect and the Settling Parties making payment of their respective amounts hereunder, the FRA shall execute reciprocal releases with DCP, HS/CB and SOM in the form attached hereto and incorporated herein as Exhibits 1 and 2.

11. J.F. White hereby agrees to defend, indemnify and hold harmless the MBTA, DCP, HS/CB, SOM, Amtrak and BECO and their respective present and former joint venture members, principals, partners, directors, officers, stockholders, employees, consultants, attorneys, agents, representatives, appointed officials, successors, assigns and insurers, and each of them, from any and all claims, liabilities, costs or expenses (including attorneys fees and expenses) asserted either now or in the future by subcontractors or suppliers of J.F. White, including but not limited to Dorel; L.K. Comstock & Company, Inc., Manzi Electrical Corp., Myles Electrical Company, Inc. and Comstock/Manzi/Myles, a joint venture; M.J. Flaherty Company;

G.J. Luchetti, Inc. and Automatic Sprinkler Corporation of America, a division of Figgie International, Inc. that arise out of or relate to South Station, even if due to the negligence or fault of any or all of the indemnitees. J.F. White further agrees to indemnify and hold harmless Amtrak from any claims made against it by the FRA for monies paid by the FRA to the MBTA which are due to Amtrak-caused delays to the South Station project as set forth in the MBTA's claim against Amtrak in the South Station litigation (Massachusetts Bay Transportation Authority v. DeLeuw Cather & Company, et al., Suffolk Superior Court C.A. No. 88-2438) including reasonable legal fees incurred by the MBTA in the prosecution of said claims in said litigation provided that such claims are actually paid by the FRA to the MBTA in resolving, whether by judgment or settlement agreement, the action pending in the Court of Federal Claims entitled (Massachusetts Bay Transportation Authority v. United States of America, Civil Action No. 283-89C), provided that such indemnity is limited to one hundred thousand dollars ($100,000.00).

12. All Parties to this Settlement Agreement hereby represent that no money paid to J.F. White in settlement of the Lawsuit by any of the Parties, including Amtrak, was paid as a result of (or to compensate for) any delays caused by Amtrak. Amtrak paid money to J.F. White to compromise and settle claims relating to track removal costs incurred by J.F. White. All Parties further represent that Amtrak caused no compensable delays to the South Station Project. All Parties agree that the representations in this paragraph may be introduced by Amtrak as binding admissions in any court, administrative proceeding or other similar proceeding.

13. MBTA agrees to move to amend and/or move to dismiss in its Court of Federal Claims lawsuit, captioned Massachusetts Bay Transportation Authority v. United States of America, Civil Action No.: 283-89 C, so as to dismiss with prejudice Count VII and to delete with prejudice all references to Amtrak caused delays (this motion is hereinafter referred to as "The Motion to Amend"). The MBTA shall file The Motion to Amend promptly upon the lifting of the current stay of proceedings in the Court of Federal Claims Lawsuit, and take all steps necessary to ensure that The Motion to Amend is allowed. The MBTA further agrees to act or negotiate as if The Motion to Amend has been allowed if any proceedings or negotiations take place in the Court of Federal Claims matter prior to the filing of The Motion to Amend. Failure of any condition of this Paragraph 13 to be met shall not affect the enforceability of this Settlement Agreement, including but not limited to the releases and indemnities herein.

14. The MBTA represents that it has not made any payments to anyone in settlement of any claims by an MBTA

contractor based on Amtrak-caused delays. This representation may be introduced by Amtrak as a binding admission in any court, administrative proceeding or other similar proceeding.

15. Amtrak agrees to defend, indemnify and hold harmless the MBTA, DCP, HS/CB, SOM and BECO and their respective present and former joint venture members, principals, partners, directors, officers, stockholders, employees, consultants, attorneys, agents, representatives, appointed officials, successors, assigns and insurers, and each of them, from any and all claims, liabilities, costs or expenses (including attorneys fees and expenses) asserted either now or in the future by Northeast Rail, that arise out of or relate to South Station, even if due to the negligence or fault of any or all of the indemnitees. By signing this Settlement Agreement, the Parties warrant that they are not aware of and do not have any knowledge of any claims currently pending by Northeast Rail against any of the indemnitees set forth in this Paragraph.

16. Except to the extent that a representation is specifically identified as an admission and that admission bears upon liability or fault by a Party, each Party acknowledges and agrees that this Settlement Agreement does not in any manner constitute an admission of liability or fault whatsoever by any party hereto and that this Settlement Agreement is made for the purpose of terminating the Lawsuit as between the Parties hereto with no concession of wrongdoing or fault.

17. The Parties hereto acknowledge and confirm that they have read this Settlement Agreement, that they have had the advice of their own legal counsel and that they understand the terms and provisions of and the effect of this Agreement and no presumption of construction against any Party shall apply by virtue of that Party's role in drafting this Settlement Agreement.

18. The signatories hereto warrant and represent that they have the power and authority to execute this Settlement Agreement, no Party has assigned any claims against any other Party to this Settlement Agreement, and the Parties have the ability to pay all consideration required under the terms of this Settlement Agreement by themselves or through their insurers.

19. The Parties may list the Boston South Station as a professional accomplishment and may display photographs and renderings thereof.

20. This Agreement constitutes an accord and satisfaction of any and all debts or obligations that the Parties may now have as to one another in connection with the South Station Project or the Lawsuit. It is further understood and

agreed that any and all sums of money paid hereunder are received in full and final settlement and satisfy all claims and demands whatever relating directly or indirectly to the Lawsuit. The MBTA's claims against the FRA are not part of the Lawsuit and by joining in this Settlement Agreement, the MBTA does not relinquish any claims it has against the FRA, except as specifically provided herein or as expressly agreed between the MBTA and the FRA.

21. This Settlement Agreement constitutes the entire agreement between the parties and no covenants, promises, representations or warranties have been made except as specifically set forth herein, and no provision hereof may be waived, modified or altered except in writing executed by all the Parties.

22. This Settlement Agreement shall be deemed to be a contract made under the laws of the Commonwealth of Massachusetts, and shall, for all purposes, be construed and enforced in accordance with said laws as if all acts had occurred in the Commonwealth of Massachusetts. Further, this Settlement Agreement shall be binding on and shall inure to the benefit of all Parties hereto, their representatives, successors and assigns.

23. The invalidity of any covenant, restriction, condition, limitation or any other part or provision of this Settlement Agreement shall not impair or affect in any manner the validity, enforceability or effect of the remainder hereof.

24. Each of the Parties represent that they have the responsibility to pay their own attorneys and that no attorneys' liens have been filed as to any of the Parties. Each counsel, by signing its acknowledgement of this Settlement Agreement, represents its consent to the provisions of this Paragraph.

25. This Settlement Agreement may be executed in multiple counterparts, each of which will constitute an original and may be signed by the parties on separate pages to be collated and treated as if all had been signed on the same signature page.

IN WITNESS WHEREOF, the Parties hereto have set forth their hands and seals as of the date there written.

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

SKIDMORE, OWINGS & MERRILL

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

J.F. WHITE CONTRACTING COMPANY

By: [signature]

Its: PRESIDENT

Dated: 3/14/95

Attorney Acknowledgement

By: [signature]

HUGH STUBBINS/CASTRO-BLANCO FOR ITSELF AND EACH OF HUGH STUBBINS & ASSOCIATES, INC. CASTRO-BLANCO, PISCIONERI & FEDER, ARCHITECTS, P.C.

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

SKIDMORE, OWINGS & MERRILL

By: [signature]

Its: General Counsel

Dated: 3-13-95

Attorney Acknowledgement

By: [signature]

J.F. WHITE CONTRACTING COMPANY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

HUGH STUBBINS/CASTRO-BLANCO FOR ITSELF AND EACH OF HUGH STUBBINS & ASSOCIATES, INC. CASTRO-BLANCO, PISCIONERI & FEDER, ARCHITECTS, P.C.

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

SKIDMORE, OWINGS & MERRILL

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

J.F. WHITE CONTRACTING
COMPANY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

HUGH STUBBINS/CASTRO-BLANCO
FOR ITSELF AND EACH OF HUGH
STUBBINS & ASSOCIATES, INC.
CASTRO-BLANCO, PISCIONERI &
FEDER, ARCHITECTS, P.C.

By: Philip Goldberg

Its: Treasurer

Dated: 4-7-95

Attorney Acknowledgement

By: [signature]

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

By: ____________________

Its: ____________________

Dated: ____________________

Attorney Acknowledgement

By: ____________________

SKIDMORE, OWINGS & MERRILL

By: ____________________

Its: ____________________

Dated: ____________________

Attorney Acknowledgement

By: ____________________

J.F. WHITE CONTRACTING COMPANY

By: ____________________

Its: ____________________

Dated: ____________________

Attorney Acknowledgement

By: ____________________

HUGH STUBBINS/CASTRO-BLANCO FOR ITSELF AND EACH OF HUGH STUBBINS & ASSOCIATES, INC. CASTRO-BLANCO PISCIONERI & FEDER, ARCHITECTS, P.C.

By: ____________________

Its: Partner of JV / Pres CPF

Dated: 4/14/95

Attorney Acknowledgement

By: ____________________