Defendant architect-engineers failed to perform design and other professional services in accordance with the terms of various contracts entered into by them and in accordance with applicable professional standards of care and skill. As a result, serious construction delays and other problems have occurred on the Boston South Station Project, resulting in substantial cost increases to the MBTA.

Other Defendants have failed also to fulfill their obligations to the MBTA in connection with the South Station Project, which has resulted in further cost increases to the MBTA.

As a consequence, the MBTA seeks to recover herein the damages it has suffered, continues to suffer, and expects to suffer as a result of Defendants' conduct.

PARTIES

1. Plaintiff Massachusetts Bay Transportation Authority (the "MBTA") is a body politic and corporate created and acting pursuant to the provisions of M.G.L. c. 161A, §1 et seq. The MBTA is the owner of South Station.

2. Defendant DeLeuw, Cather & Company ("DeLeuw") is a corporation organized and existing under the laws of the State of Illinois with offices at 165 West Wacker Drive, Chicago, Illinois and with a usual place of business in Boston, Massachusetts. At all times material hereto, DeLeuw engaged in the provision of architectural-engineering services, including the planning and design of railroad stations and facilities, and provided architectural-engineering services relating to the planning, design and construction of the South Station Project, as hereinafter described.

3. Defendant Ralph M. Parsons Company ("Parsons") is a corporation organized and existing under the laws of the State of Nevada with offices at 100 West Walnut Street, Pasadena, California. At all times material hereto, Parsons engaged in the provision of architectural-engineering services, including the planning and design of railroad stations and facilities, and provided architectural-engineering services relating to the planning, design and construction of the South Station Project, as hereinafter described.

4. Defendant Hugh Stubbins & Associates, Inc. ("Hugh Stubbins") is a corporation organized and existing under the laws of the State of Massachusetts with a usual place of business in Cambridge, Massachusetts. At all times material hereto, Hugh Stubbins engaged in the provision of architectural-engineering services, including the planning and design of railroad stations and facilities, and provided architectural-engineering services relating to the planning, design and construction of the South Station Project, as hereinafter described.

5. Defendant Castro-Blanco, Piscioneri & Feder, Architects, P.C. ("Castro-Blanco") is a professional corporation organized and existing under the laws of the State of New York with a usual place of business in Boston, Massachusetts. At all times material hereto, Castro-Blanco engaged in the provision of architectural-engineering services, including the planning and design of railroad stations and facilities, and provided architectural-engineering services relating to the planning, design and construction of the South Station Project, as hereinafter described.

6. Defendant Skidmore, Owings & Merrill ("SOM") is an Illinois general partnership which transacts business in Massachusetts and, at all times material hereto, maintained a usual place of business in Boston, Massachusetts. Further, at all times material hereto, SOM engaged in the provision of architectural-engineering services, including the planning and design of railroad stations and facilities, and provided architectural-engineering services relating to the planning, design and construction of the South Station Project, as hereinafter described.

7. Defendant Boston Edison Company ("Boston Edison") is a corporation organized and existing under the laws of the State of Massachusetts with a usual place of business in Boston, Massachusetts.

8. Defendant Northeast Railroad Construction, Inc. ("Northeast Railroad") is a corporation organized and existing under the laws of the State of Massachusetts with a usual place of business in Woburn, Massachusetts.

9. Defendant National Railroad Passenger Corporation ("AMTRAK") is a corporation created and acting pursuant to the provisions of 45 U.S.C. §541 et seq.

10. Defendant J. F. White Contracting Company ("J. F. White") is a corporation organized and existing under the laws of the State of Massachusetts with a usual place of business in Newton, Massachusetts.

11. At all times material hereto, DeLeuw and Parsons acted in concert as a joint venture doing business as DeLeuw, Cather/Parsons ("DCP").

12. At all times material hereto, Hugh Stubbins and Castro-Blanco acted in concert as a joint venture doing business as Hugh Stubbins/Castro-Blanco, Architects and Planners ("Stubbins/Castro-Blanco").

## FACTUAL ALLEGATIONS

### A. Background of the South Station Project

13. Pursuant to the provisions of Title VII of the Railroad Revitalization and Regulatory Reform Act

of 1976, 45 U.S.C. 801 et seq., the Secretary of Transportation delegated to the Federal Railroad Administration (the "FRA") the authority to implement the Northeast Corridor Improvement Project ("NECIP") to improve facilities for or relating to intercity rail passenger service between Washington, D.C. and Boston, Massachusetts.

14. In late 1979, the FRA awarded contract No. DOT-FR-76048 to DCP under which DCP served as the prime Architect-Engineer, Program Management Contractor for NECIP.

15. Under the contract between the FRA and DCP, DCP had responsibility to plan and design and to manage the production of designs and specifications for NECIP. In the design of individual station projects under NECIP, DCP was assisted by numerous architect-engineers under subcontract to DCP.

16. South Station is a facility used for intercity rail passenger service in the Northeast Corridor and was targeted for improvements under NECIP.

17. Pursuant to the program authorized by the Railroad Revitalization and Regulatory Reform Act of 1976, the MBTA and the FRA entered into agreements in 1980 and 1983 relating to the improvement of South Station. These agreements related to the planning, design and construction of South Station improvements. The FRA agreed to and did provide specified funding for the improvements and agreed to and did make available the plans, specifications and other documents prepared by the various design professionals for the benefit of the MBTA in connection with these improvements.

18. The improvements to be made to South Station included, among other things, the construction of platforms and tracks for intercity transportation, substantial rehabilitation and renovation of the existing South Station Headhouse (the "Headhouse"), construction of a new Concourse and West and East Wing additions to the Headhouse, and correction of building code deficiencies in the Headhouse ("South Station Project").

19. Pursuant to one or more agreements executed between the FRA and DCP, DCP agreed to provide

management, inspection, coordination, architectural, engineering and other professional services in connection with the implementation of the South Station Project. These services included, among other things, the provision of all plans and specifications for the South Station Project.

20. At all times material hereto, DCP held itself out as possessing the professional skills and expertise required to perform all services in connection with NECIP and therefore the South Station Project.

21. Pursuant to its obligations to the FRA, DCP entered into one or more agreements with Stubbins/Castro-Blanco. Stubbins/Castro-Blanco agreed to provide architectural, engineering and other professional services in connection with the South Station Project, including the development and provision of plans and specifications with respect to the South Station Project.

22. At all times material hereto, Stubbins/Castro-Blanco held itself out as possessing the professional skills and expertise required to

develop and provide the plans and specifications for the South Station Project.

23. Pursuant to one or more agreements between DCP and SOM, SOM agreed to provide architectural, engineering and other professional services in connection with the South Station Project, including supervising the development and provision of plans and specifications for the South Station Project.

24. In connection with the bidding and performance of the construction contract for the South Station Project, the MBTA hired SOM as the Construction Phase Services Consultant. SOM agreed to coordinate and manage the bidding, including, among other things, the advertising of the bid and the preparation of all contract addenda. SOM further agreed to provide architectural, engineering and other professional construction phase services throughout the duration of the South Station Project.

25. At all times material hereto, SOM held itself out as possessing the professional skills and expertise required to perform all such services in connection with the South Station Project.

26. As discussed below, DeLeuw, Parsons, Hugh Stubbins, Castro-Blanco, DCP, Stubbins/Castro-Blanco and SOM agreed to and did provide all such professional services for the benefit of the MBTA, yet failed to provide such services in accordance with the professional standards of care and skill required of members of their profession. At all relevant times, DeLeuw, Parsons, Hugh Stubbins, Castro-Blanco, DCP, Stubbins/Castro-Blanco and SOM knew or should have known that the professional services being provided by them in connection with the South Station Project were for the benefit of the MBTA and that the MBTA would rely on such services in proceeding with the South Station Project.

B. <u>South Station Track Work</u>

27. On or about August 29, 1976, the FRA and AMTRAK entered into an agreement whereby AMTRAK agreed to coordinate its operations and perform track work, as may from time to time be specified by the FRA, in accordance with the needs of NECIP (the "1976 AMTRAK Contract"). The 1976 AMTRAK Contract, as subsequently modified from time to time, was intended to benefit, among others, the owner of South Station, which at relevant times was the MBTA.

28. In or around August 1983, the FRA, the MBTA and AMTRAK entered into a three-party agreement whereby AMTRAK agreed to install and remove track and related track equipment as required by the South Station Project ("Track Work") in accordance with plans, specifications and schedules for the South Station Project (the "1983 AMTRAK Contract").

29. Thereafter, AMTRAK entered into an agreement with Northeast Railroad whereby Northeast Railroad agreed to remove certain of such tracks and track equipment in the time period required by the South Station Project.

30. As described below, AMTRAK failed to perform certain Track Work for the South Station Project in a timely manner, and Northeast Railroad failed to remove the tracks and related track equipment that it agreed to remove in a timely manner.

C. Removal of Power Vault

31. On information and belief, Boston Edison entered into an agreement for the benefit of or made in behalf of the MBTA pursuant to which Boston Edison

agreed to remove a certain power vault located on the Westerly portion of the South Station site. On information and belief, Boston Edison knew that removal of the power vault was required by the plans and specifications developed by Stubbins/Castro-Blanco in connection with construction of the West Wing of the Headhouse.

32. As described below, Boston Edison failed to remove the power vault.

D. Construction

33. In reliance on the professional skills and expertise of DeLeuw, Parsons, Hugh Stubbins, Castro-Blanco, DCP, Stubbins/Castro-Blanco and SOM, AMTRAK's agreement that it would perform the necessary Track Work in a timely manner and the reasonable belief that any contracts entered into by these parties would be performed in accordance with the needs of the South Station Project, the MBTA accepted the contract plans and specifications provided to it by DeLeuw, Parsons, Hugh Stubbins, Castro-Blanco, DCP, Stubbins/Castro-Blanco and SOM, and invited bids. On or about April 24, 1984, the

MBTA awarded a contract for the South Station Project to J. F. White (the "Construction Contract").

34. Pursuant to the Construction Contract, J. F. White agreed to perform the work in accordance with the terms of the contract plans and specifications, including addenda, and the MBTA agreed to pay J. F. White $48,775,062.10.

35. Throughout the duration of the South Station Project and continuing to the present, J. F. White has periodically informed the MBTA that, due to (a) serious design, architectural and engineering errors and omissions in the plans and specifications prepared by DeLeuw, Parsons, Hugh Stubbins, Castro-Blanco, DCP, Stubbins/Castro-Blanco and SOM, and (b) the failures of AMTRAK, Northeast Railroad and Boston Edison with respect to their various obligations in connection with the South Station Project, J. F. White was unable to perform its obligations in accordance with the terms and specifications of the construction contract. The errors, omissions and failures identified by J. F. White to date include, but are not limited to, the following:

a. Inaccurate plans and specifications for the Concourse and Headhouse, making it impossible for J. F. White to correctly erect and align structural beams and columns in those areas;

b. The continued presence of the power vault referenced above, making it impossible for J. F. White to build the West Wing of the Headhouse in accordance with the Construction Contract;

c. Insufficient statement of the amount of contaminated material required to be removed to comply with applicable governmental laws and regulations, requiring J. F. White to remove a substantially greater quantity of contaminated material in order to comply with such laws and regulations;

d. Failure by the Construction Contract to specify the removal of rotten and unsafe wooden floors on the second, third, fourth and fifth stories of the Headhouse, requiring J. F. White to construct new concrete floors;

e. Inclusion in the Construction Contract of a provision requiring J. F. White to conduct tests to determine pile criteria, which tests, given the soil conditions, proved incapable of determining consistent and reliable pile criteria;

f. Elimination by SOM of a sprinkler system from a floor plan, which, because the floor plan was a prototype, resulted in the elimination of the sprinkler systems for all floors;

g. Inclusion in the plans and specifications of the Construction Contract of designs that did not comply with the State Building Code;

h. Failure by AMTRAK to perform certain Track Work in a timely manner, substantially delaying J.F. White in

the performance of the Construction Contract and causing J.F. White to perform extra work;

i. Failure by Northeast Railroad to remove certain tracks in a timely manner, requiring J. F. White itself to remove such tracks in order to continue its work under the Construction Contract;

j. Lack of clarity in the plans and specifications of the Construction Contract with respect to payment for the removal of below-grade granite and masonry, and a subsequent failure by SOM in drafting addenda to correctly clarify the manner of payment; and

k. Other errors, omissions and failures in the planning, preparation, design, management and supervision of the Construction Contract by DCP, Hugh Stubbins/Castro-Blanco and SOM.

36. As a result of the foregoing errors, omissions, and failures, the MBTA has incurred, continues to incur, and expects to incur, additional and substantial costs including, but not limited to

a. Payment for new plans and specifications;

b. Payment to J. F. White for additional work not included in the Construction Contract;

c. Payment for additional personnel and the expanded use of consultants;

d. Payment of interest and other costs in connection with the issuance of revenue bonds;

e. Expected loss in connection with the geographical and temporal extension of an easement on adjacent property;

f. Payment to an adjacent property owner for a claim that the East Wing Extension was built on its property; and.

g. Loss of anticipated income.

37. In or about September, 1987, J. F. White submitted to the MBTA a six-volume, 1,500 plus-page, "delay claim" for the South Station Project in the total amount of $12,020,583.05. All or most of the claims submitted by J. F. White are a direct result of the various errors, omissions and failures on the part of the defendants, as set forth herein.

38. In each instance hereinafter where an allegation is made against the defendants DeLeuw or Parsons, such allegation is also intended to be made and is made against the joint venture DCP. In each instance hereinafter where an allegation is made against the defendants Hugh Stubbins or Castro-Blanco, such allegation is also intended to be made and is made against the joint venture Hugh Stubbins/Castro-Blanco.

COUNT I

(Negligence Against DeLeuw)

39. The MBTA realleges Paragraphs 1-38 above as though fully set forth herein.

40. DeLeuw owed a duty to the MBTA to exercise reasonable care, skill and diligence in providing architectural, engineering, supervisory and other professional services in connection with the planning, design and construction of the South Station Project.

41. DeLeuw was negligent in the discharge of its duties and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT II

(Negligence Against Parsons)

42. The MBTA realleges Paragraphs 1-41 above as though fully set forth herein.

43. Parsons owed a duty to the MBTA to exercise reasonable care, skill and diligence in providing architectural, engineering, supervisory and other professional services in connection with the planning, design and construction of the South Station Project.

44. Parsons was negligent in the discharge of its duties and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT III

(Negligence Against Hugh Stubbins)

45. The MBTA realleges Paragraphs 1-44 above as though fully set forth herein.

46. Hugh Stubbins owed a duty to the MBTA to exercise reasonable care, skill and diligence in providing architectural, engineering, supervisory and other professional services in connection with the planning, design and construction of the South Station Project.

47. Hugh Stubbins was negligent in the discharge of its duties and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT IV

(Negligence Against Castro-Blanco)

48. The MBTA realleges Paragraphs 1-47 above as though fully set forth herein.

49. Castro-Blanco owed a duty to the MBTA to exercise reasonable care, skill and diligence in providing architectural, engineering, supervisory and other professional services in connection with the planning, design and construction of the South Station Project.

50. Castro-Blanco was negligent in the discharge of its duties and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT V

(Negligence Against SOM)

51. The MBTA realleges Paragraphs 1-50 above as though fully set forth herein.

52. SOM owed a duty to the MBTA to exercise reasonable care, skill and diligence in providing architectural, engineering, supervisory and other professional services in connection with the planning, design and construction of the South Station Project.

53. SOM was negligent in the discharge of its duties and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT VI

(Breach of Fiduciary Duties Against DeLeuw)

54. The MBTA realleges Paragraphs 1-53 above as though fully set forth herein.

55. DeLeuw occupied a position of trust and confidence with respect to the MBTA.

56. DeLeuw owed fiduciary duties to the MBTA of trust, care, confidence and loyalty in connection with all work performed and to be performed on the South Station Project.

57. DeLeuw breached its fiduciary duties, and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT VII

(Breach of Fiduciary Duties Against Parsons)

58. The MBTA realleges Paragraphs 1-57 above as though fully set forth herein.

59. Parsons occupied a position of trust and confidence with respect to the MBTA.

60. Parsons owed fiduciary duties to the MBTA of trust, care, confidence and loyalty in connection with all work performed and to be performed on the South Station Project.

61. Parsons breached its fiduciary duties, and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT VIII

(Breach of Fiduciary Duties Against Hugh Stubbins)

62. The MBTA realleges Paragraphs 1-61 above as though fully set forth herein.

63. Hugh Stubbins occupied a position of trust and confidence with respect to the MBTA.

64. Hugh Stubbins owed fiduciary duties to the MBTA of trust, care, confidence and loyalty in connection with all work performed and to be performed on the South Station Project.

65. Hugh Stubbins breached its fiduciary duties, and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT IX

(Breach of Fiduciary Duties Against Castro-Blanco)

66. The MBTA realleges Paragraphs 1-65 above as though fully set forth herein.

67. Castro-Blanco occupied a position of trust and confidence with respect to the MBTA.

68. Castro-Blanco owed fiduciary duties to the MBTA of trust, care, confidence and loyalty in connection with all work performed and to be performed on the South Station Project.

69. Castro-Blanco breached its fiduciary duties, and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT X

(Breach of Fiduciary Duties Against SOM)

70. The MBTA realleges Paragraphs 1-69 above as though fully set forth herein.

71. SOM occupied a position of trust and confidence with respect to the MBTA.

72. SOM owed fiduciary duties to the MBTA of trust, care, confidence and loyalty in connection with all work performed and to be performed on the South Station Project.

73. SOM breached its fiduciary duties, and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT XI

(Negligent Performance of Contractual Duties Against DeLeuw)

74. The MBTA realleges Paragraphs 1-73 above as though fully set forth herein.

75. DeLeuw owed the MBTA a duty to exercise reasonable care, skill and diligence in the performance of its contractual obligations.

76. DeLeuw was negligent in the discharge of the performance of its contractual obligations, and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT XII

(Negligent Performance of Contractual Duties Against Parsons)

77. The MBTA realleges Paragraphs 1-76 above as though fully set forth herein.

78. Parsons owed the MBTA a duty to exercise reasonable care, skill and diligence in the performance of its contractual obligations.

79. Parsons was negligent in the discharge of the performance of its contractual obligations, and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT XIII

(Negligent Performance of Contractual Duties Against Hugh Stubbins)

80. The MBTA realleges Paragraphs 1-79 above as though fully set forth herein.

81. Hugh Stubbins owed the MBTA a duty to exercise reasonable care, skill and diligence in the performance of its contractual obligations.

82. Hugh Stubbins was negligent in the discharge of the performance of its contractual obligations, and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT XIV

(Negligent Performance of Contractual Duties Against Castro-Blanco)

83. The MBTA realleges Paragraphs 1-82 above as though fully set forth herein.

84. Castro-Blanco owed the MBTA a duty to exercise reasonable care, skill and diligence in the

performance of its contractual obligations.

85. Castro-Blanco was negligent in the discharge of the performance of its contractual obligations, and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT XV

(Negligent Performance of Contractual Duties Against SOM)

86. The MBTA realleges Paragraphs 1-85 above as though fully set forth herein.

87. SOM owed the MBTA a duty to exercise reasonable care, skill and diligence in the performance of its contractual obligations.

88. SOM was negligent in the discharge of the performance of its contractual obligations, and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT XVI

(Breach of Contract Against SOM)

89. The MBTA realleges Paragraphs 1-88 above as though fully set forth herein.

90. By its failure to prepare clear and accurate contract addenda and to act otherwise in accordance with the terms and conditions of its agreement with the MBTA in connection with the South Station Project, SOM has breached its contract with the MBTA.

91. As a natural consequence and proximate result of SOM's breach, the MBTA has suffered and continues to suffer substantial damage.

COUNT XVII

(Breach of Contract Against DeLeuw)

92. The MBTA realleges Paragraphs 1-91 above as though fully set forth herein.

93. By its failure to provide workable and accurate plans and specifications for improvements to South Station, to properly guide, coordinate and

manage the preparation of the designs and drawings, and to otherwise fulfill the terms and conditions of its various agreements with the FRA, SOM and Stubbins/Castro-Blanco, DeLeuw has breached its agreements with the FRA, SOM and Stubbins/Castro-Blanco.

94. The MBTA is an intended third-party beneficiary of the aforesaid agreements with DeLeuw. As a natural consequence and proximate result of DeLeuw's breach, the MBTA has suffered and continues suffer substantial damage.

COUNT XVIII

(Breach of Contract Against Parsons)

95. The MBTA realleges Paragraphs 1-94 above as though fully set forth herein.

96. By its failure to provide workable and accurate plans and specifications for improvements to South Station, to properly guide, coordinate and manage the preparation of the designs and drawings, and to otherwise fulfill the terms and conditions of its various agreements with the FRA, SOM and Stubbins/

Castro-Blanco, Parsons has breached its agreements with the FRA, SOM and Stubbins/Castro-Blanco.

97. The MBTA is an intended third-party beneficiary of the aforesaid agreements with Parsons. As a natural consequence and proximate result of Parsons's breach, the MBTA has suffered and continues suffer substantial damage.

COUNT XIX

(Breach of Contract Against Hugh Stubbins)

98. The MBTA realleges Paragraphs 1-97 above as though fully set forth herein.

99. By its failure to provide workable and accurate plans and specifications for improvements to South Station, and to otherwise fulfill the terms and conditions of its agreements with DCP, Hugh Stubbins has breached its agreement with DCP.

100. The MBTA is an intended third-party beneficiary of DCP's agreements between DCP and Hugh Stubbins. As a natural consequence and proximate result of Hugh Stubbins's breach, the MBTA has suffered and continues to suffer substantial damage.

COUNT XX

(Breach of Contract Against Castro-Blanco)

101. The MBTA realleges Paragraphs 1-100 above as though fully set forth herein.

102. By its failure to provide workable and accurate plans and specifications for improvements to South Station, and to otherwise fulfill the terms and conditions of its agreements with DCP, Castro-Blanco has breached its agreement with DCP.

103. The MBTA is an intended third-party beneficiary of the agreements between DCP and Castro-Blanco. As a natural consequence and proximate result of Castro-Blanco's breach, the MBTA has suffered and continues to suffer substantial damage.

COUNT XXI

(Breach of Contract Against SOM)

104. The MBTA realleges Paragraphs 1-103 above as though fully set forth herein.

105. By its failure to supervise, direct and participate in the preparation of workable and accurate plans and specifications for improvements to South Station, and to otherwise fulfill the terms and conditions of its agreements with DCP, SOM has breached its agreement with DCP.

106. The MBTA is an intended third-party beneficiary of the agreements between DCP and SOM. As a natural consequence and proximate result of SOM's breach, the MBTA has suffered and continues to suffer substantial damage.

COUNT XXII

(Breach of Contract Against AMTRAK)

107. The MBTA realleges Paragraphs 1-106 above as though fully set forth herein.

108. By its failure to perform certain Track Work in the time period required by the South Station Project, AMTRAK has breached the 1976 AMTRAK Contract and the 1983 AMTRAK Contract.

109. The MBTA is an intended third-party beneficiary of the 1976 AMTRAK Contract and is a party to and/or intended third-party beneficiary of the 1983 AMTRAK Contract. As a result of AMTRAK's breach of the 1976 AMTRAK Contract and the 1983 AMTRAK Contract, the MBTA has suffered and continues to suffer substantial damage.

<u>COUNT XXIII</u>

<u>(Negligence Against AMTRAK)</u>

110. The MBTA realleges Paragraphs 1-109 above as though fully set forth herein.

111. AMTRAK owed a duty to the MBTA to exercise reasonable care, skill and diligence in performing its obligation to do the Track Work in a timely fashion.

112. AMTRAK was negligent in the discharge of its duty to do the Track Work in a timely fashion and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT XXIV

(Breach of Contract Against Northeast Railroad)

113. The MBTA realleges Paragraphs 1-112 above as though fully set forth herein.

114. By its failure to remove certain tracks in the time period required by the South Station Project, Northeast Railroad has breached its agreement with AMTRAK.

115. The MBTA is an intended third-party beneficiary of AMTRAK's agreement with Northeast Railroad. As a natural consequence and proximate result of Northeast Railroad's breach, the MBTA has suffered and continues to suffer substantial damage.

COUNT XXV

(Negligence Against Northeast Railroad)

116. The MBTA realleges Paragraphs 1-115 above as though fully set forth herein.

117. Northeast Railroad owed a duty to the MBTA to exercise reasonable care, skill and diligence in

performing its obligation to remove tracks in a timely fashion.

118. Northeast Railroad was negligent in the discharge of its duties and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT XXVI

(Breach of Contract Against Boston Edison)

119. The MBTA realleges Paragraphs 1-118 above as though fully set forth herein.

120. By its failure to remove the power vault located on the westerly portion of the South Station site, Boston Edison has breached its agreement made for the benefit or made in behalf of the MBTA.

121. As a natural consequence and proximate result of Boston Edison's breach of the agreement for the benefit or made in behalf of the MBTA, the MBTA has suffered and continues to suffer substantial damage.

COUNT XXVII

(Negligent Misrepresentation Against Boston Edison)

122. The MBTA realleges Paragraphs 1-121 above as though fully set forth herein.

123. Boston Edison owed a duty to the MBTA to exercise reasonable care and competence in communicating to Stubbins/Castro-Blanco that it would remove the power vault located on the westerly portion of the South Station site.

124. Boston Edison was negligent in the discharge of its duties and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

COUNT XXVIII

(Estoppel Against Boston Edison)

125. The MBTA realleges Paragraphs 1-124 above as though fully set forth herein.

126. Boston Edison should reasonably have expected that its promise to remove and/or

representation that it would remove the power vault would induce reliance thereon, and further would induce Stubbins/Castro-Blanco to rely on such removal in the plans and specifications being developed for the South Station Project.

127. The MBTA did in fact rely on Boston Edison's promise and/or representation that Boston Edison would remove the power vault and as a direct and proximate consequence thereof, the MBTA has suffered and continues to suffer substantial damage.

<u>COUNT XXIX</u>

<u>(M.G.L. c. 93A Against DeLeuw)</u>

128. The MBTA realleges Paragraphs 1-127 above as though fully set forth herein.

129. At all times material hereto, DeLeuw was engaged in trade and commerce within the Commonwealth of Massachusetts.

130. DeLeuw knew that there was a substantial risk that the plans and specifications for the South Station Project provided by or through it would be

inaccurate and flawed yet failed to so advise the MBTA or to take action to eliminate such risk. Such conduct of DeLeuw constitutes willing and knowing unfair and deceptive acts or practices, in violation of M.G.L. c.93A, §2 and §11.

## COUNT XXX

## (M.G.L. c. 93A Against Parsons)

131. The MBTA realleges Paragraphs 1-130 above as though fully set forth herein.

132. At all times material hereto, Parsons was engaged in trade and commerce within the Commonwealth of Massachusetts.

133. Parsons knew that there was a substantial risk that the plans and specifications for the South Station Project provided by or through it would be inaccurate and flawed yet failed to so advise the MBTA or to take action to eliminate such risk. Such conduct of Parsons constitutes willing and knowing unfair and deceptive acts or practices, in violation of M.G.L. c.93A, §2 and §11.

## COUNT XXXI

## (M.G.L. c. 93A Against SOM)

134. The MBTA realleges Paragraphs 1-133 above as though fully set forth herein.

135. At all times material hereto, SOM was engaged in trade and commerce within the Commonwealth of Massachusetts.

136. SOM knew that there was a substantial risk that the plans and specifications for the South Station Project would be inaccurate or flawed yet failed to so advise the MBTA or to take any action to eliminate such risk. Such conduct of SOM constitutes willing and knowing unfair and deceptive acts or practices, in violation of M.G.L. c. 93A, §2 and §11.

## COUNT XXXII

## (M.G.L. c. 93A Against Hugh Stubbins)

137. The MBTA realleges Paragraphs 1-136 above as though fully set forth herein.

138. At all times material hereto, Hugh Stubbins was engaged in trade and commerce within the Commonwealth of Massachusetts.

139. Hugh Stubbins knew that there was a substantial risk that the plans and specifications for the South Station Project provided by or through it would be inaccurate and flawed yet failed to so advise the MBTA or to take action to eliminate such risk. Such conduct of Hugh Stubbins constitutes willing and knowing unfair and deceptive acts or practices, in violation of M.G.L. c.93A, §2 and §11.

COUNT XXXIII

(M.G.L. c. 93A Against Castro-Blanco)

140. The MBTA realleges Paragraphs 1-139 above as though fully set forth herein.

141. At all times material hereto, Castro-Blanco was engaged in trade and commerce within the Commonwealth of Massachusetts.

142. Castro-Blanco knew that there was a substantial risk that the plans and specifications

for the South Station Project provided by or through it would be inaccurate and flawed yet failed to so advise the MBTA or to take action to eliminate such risk. Such conduct of Castro-Blanco constitutes willing and knowing unfair and deceptive acts or practices, in violation of M.G.L. c.93A, §2 and §11.

COUNT XXXIV

(Declaratory Judgment)
M.G.L. c. 231A

143. The MBTA realleges Paragraphs 1-142 above as though fully set forth herein.

144. J.F. White has asserted "delay claims" in the amount of $12,020,583.08 and other claims against the MBTA arising out of construction of the South Station Project.

145. There presently exists a justiciable controversy between the MBTA and J.F. White with respect to such claims.

146. Pursuant to M.G.L. c.231A, the MBTA requests that this Court determine the extent and validity of J.F. White's claims and issue a declaration thereon.

## Prayers for Relief

WHEREFORE, the MBTA requests that this Court:

1. Declare, adjudge and decree the validity of the delay and other claims submitted to the MBTA by J. F. White;

2. Declare, adjudge and decree that the MBTA has suffered and continues to suffer damage as a result of defendants' actions and that defendants' shall be liable to the MBTA for such further losses the MBTA may incur as a result of defendants' conduct;

3. Enter judgment against the defendants and award the MBTA the damages it has suffered and continues to suffer, in an amount to be determined, plus its costs and attorneys' fees, where appropriate, and any and all other relief the court deems just and proper.

4. With respect to Counts XXIX, XXX, XXXI, XXXII and XXXIII above, enter judgment against DeLeuw, Parsons, SOM, Hugh Stubbins

and Castro-Blanco, DCP and Stubbins/Castro-Blanco and award the MBTA the damages it has suffered and continues to suffer, trebled, plus its costs and attorneys' fees and any and all other relief the court deems just and proper.

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

By its attorneys,

William A. Horne

Rudolph F. Pierce (BBO #375765)
William A. Horne (BBO #240080)
David J. Reier (BBO #546202)
Eric L. Yaffe (BBO #548185)
GOULSTON & STORRS
A Professional Corporation
400 Atlantic Avenue
Boston, MA 02210-2206
(617) 482-1776

Dated: May 15, 1989

CERTIFICATE OF SERVICE

I hereby certify that on May 15, 1989, the foregoing Plaintiff's Second Amended C[illegible] by mailing a true copy thereof, postage pr[illegible]

David Hartigan, Esq.
Offices of James D. Casey
330 Stuart Street
Boston, MA 02117

David J. Hatem, Esq.
Patricia E. Ratner, Esq.
Posternak, Blankstein & Lund
100 Charles River Plaza
Boston, MA 02114

William G. Meserve, Esq.
John Van Lunkhuyzen, Esq.
Ropes and Gray
225 Franklin Street
Boston, MA 02110

Steven J. H[illegible]
John Don[illegible]ey
Kirkland & [illegible]
200 East Ra[illegible]
Chicago, IL [illegible]

William [illegible]
Betsy G. Ro[illegible]
Day, Berry [illegible]
260 Frankli[illegible]
Boston, MA [illegible]

Robert C[illegible]y
Robert Owen[illegible]
Office of R[illegible]
and Assoc[illegible]
50 Congress [illegible]
Boston, MA [illegible]

David J. [illegible]



DCP293

ROPES & GRAY
ONE INTERNATIONAL PLACE
BOSTON, MASSACHUSETTS 02110-2624
(617) 951-7000
TELECOPIER: (617) 951-7050

30 KENNEDY PLAZA
PROVIDENCE, R. I. 02903
(401) 455-4400
TELECOPIER: (401) 455-4401

1001 PENNSYLVANIA AVENUE, N.W.
SUITE 1200 SOUTH
WASHINGTON, D. C. 20004
(202) 626-3900
TELECOPIER: (202) 626-3961

WRITER'S DIRECT DIAL NUMBER: (617) 951-7510

RECEIVED
MAY 1 1995
LEGAL DEPARTMENT

April 28, 1995

James C. Lockwood, Esq.
DeLeuw Cather & Company
1133 15th Street, N.W.
Washington, D.C. 20005-2701

Re: Massachusetts Bay Transportation Authority v. DeLeuw Cather & Co., et al., Suffolk Superior Court, C.A. No. 88-2438

Dear Jim:

I think we are nearly there. Enclosed is an original copy of the Settlement Agreement and Mutual Release in the above-referenced case, together with an original copy of a Release running from the FRA to the DCP defendants. Since these are original documents, they should be retained permanently in the DCP files.

We are now in the process of circulating a Stipulation of Dismissal for execution by all counsel. When that is filed -- probably some time within the next couple of weeks -- the case will officially be concluded. It's taken a long time, but I think the settlement is a good one for DCP, and I hope you agree.

Sincerely,

Bill

William G. Meserve

WGM/lme:2031712.01

Enclosure

FINAL 3/10/95

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Settlement Agreement")is made by and among J.F. White Contracting, Inc. ("J.F. White"); the Massachusetts Bay Transportation Authority ("MBTA"); DeLeuw Cather & Company, The Ralph M. Parsons Company and DeLeuw, Cather/Parsons, a joint venture (collectively "DCP"); Hugh Stubbins & Associates, Inc., Castro-Blanco, Piscioneri & Feder, Architects, P.C. and Hugh Stubbins/Castro-Blanco, a joint venture (collectively "HS/CB"), Skidmore, Owings & Merrill, a general partnership ("SOM"); Dorel Steel Erection Corporation ("Dorel"); the National Railroad Passenger Corporation ("Amtrak"); and Boston Edison Company ("BECO") (all together the "Parties" or the "Releasing Parties").

## RECITALS

WHEREAS, pursuant to the provisions of Title VII of the Railroad Revitalization and Regulatory Reform Act of 1976, 45 U.S.C. 801 et seq., the Secretary of Transportation had delegated to the Federal Railroad Administration ("FRA") the authority to implement the Northeast Corridor Improvement Project ("NECIP") to improve facilities for or relating to intercity rail passenger service between Washington, D.C. and Boston, Massachusetts.

WHEREAS, in the 1970's DCP entered into a contract with the FRA, which was amended from time to time, whereby DCP would provide program management and other services for the FRA in connection with the NECIP, which included the South Station in Boston, Massachusetts ("South Station").

WHEREAS, in the 1970's DCP entered into a subcontract with SOM, which was amended from time, to perform certain professional consulting architectural-engineering services in connection with the NECIP, which included the South Station.

WHEREAS, in the 1970's DCP also entered into a subcontract with HS/CB, which was amended from time to time, as architect-engineer of record to prepare certain plans and specifications for the renovation and construction of the South Station and to provide certain other architectural and engineering services in connection with the South Station.

WHEREAS, starting in 1983, the MBTA hired SOM to provide certain construction phase consultant services for the South Station and DCP and HS/CB in turn provided certain support services during the construction phase (although no written contracts were executed).

WHEREAS, on April 24, 1984, the MBTA entered into a contract with J.F. White whereby J.F. White agreed to serve as a general contractor for the renovation and construction work on South Station and thereafter, J.F. White entered into contracts with various subcontractors, including, among others, Dorel; L.K. Comstock & Company, Inc., Manzi Electrical Corp., Myles Electrical Company, Inc. and Comstock/Manzi/Myles, a joint venture; M.J. Flaherty Company; G.J. Luchetti, Inc. and Automatic Sprinkler Corporation of America, a division of Figgie International, Inc., to perform certain construction work on South Station.

WHEREAS, the MBTA, Amtrak and FRA entered into certain agreements for the removal of rail and the performance of other tasks in the yard and elsewhere in connection with the work on South Station.

WHEREAS, the work on South Station was completed later than initially stipulated in the contract between the MBTA and J.F. White and J.F. White filed a delay claim on its own and its subcontractors' behalf with the MBTA, which delay claim was supplemented at various times over subsequent years.

WHEREAS, on April 25, 1988, the MBTA filed an action in Suffolk Superior Court, Commonwealth of Massachusetts, Case No. 88-2438, against DCP, HS/CB, SOM, Northeast Railroad Construction Co., Inc. ("Northeast Rail"), BECO, Amtrak and J.F. White for recovery of damages on its own behalf and to resolve J.F. White's claims, after which a First and Second Amended Complaint were filed and various parties intervened and various counterclaims and crossclaims were filed (all together the "Lawsuit").

WHEREAS, the parties to this Settlement Agreement have now decided it would be in their best interest to resolve between and among themselves all controversies and disagreements and compromise, settle and release all claims, crossclaims and counterclaims that have been or could have been raised by them in the Lawsuit.

NOW, THEREFORE, for valuable consideration recited herein, the Parties hereto acknowledge, covenant and agree as follows:

1. The Parties hereby agree to dismiss with prejudice all claims, crossclaims and counter-claims in the Lawsuit

against, between or among each other, with each Party to bear its own costs and waive all rights of appeal.

2. It is understood that execution and agreement by the MBTA to the terms of the Settlement Agreement requires the approval of the MBTA's Board of Directors.

3. The MBTA hereby agrees to pay J.F. White One Million Nine Hundred Thousand Dollars ($1,900,000) within thirty (30) days after the Effective Date of this Settlement Agreement. The Effective Date is the date the last of all parties to this Settlement Agreement have signed the Settlement Agreement and the releases from the FRA referenced in Paragraph 10 of this Settlement Agreement have been received by DCP, SOM and HS/CB. This Settlement Agreement shall go into full force and effect on the Effective Date. The MBTA shall expeditiously submit this Settlement Agreement to the MBTA's Board of Directors, in accordance with usual and customary procedures for such submissions, after the other parties have indicated their written assent to this Settlement Agreement. The MBTA shall only sign this Settlement Agreement after approval by its Board of Directors.

4. HS/CB hereby agrees to pay J.F. White at least $830,000 within five (5) business days after the Effective Date. In addition, Hugh Stubbins & Associates, Inc. only agrees to pay no more than $50,000 and Castro-Blanco, Piscioneri & Feder Architects, P.C. only agrees to pay no more than $70,000 to J.F. White in eighteen (18) equal monthly installments, commencing thirty (30) days after the Effective Date. Interest at the prime rate will accrue on any late installment and will be due and payable as part of each monthly payment. Total payments under this paragraph (excluding the interest for any late installments) shall be Nine Hundred Fifty Thousand Dollars ($950,000).

✓5. DCP hereby agrees to pay J.F. White Four Hundred Twenty-Five Thousand Dollars ($425,000) within five (5) business days after the Effective Date.

6. SOM hereby agrees to pay J.F. White Four Hundred Twenty-Five Thousand Dollars ($425,000) within five (5) business days after the Effective Date.

7. Amtrak hereby agrees to pay J.F. White One Hundred Thousand Dollars ($100,000) within five (5) business days after the Effective Date.

8. BECO hereby agrees to pay J.F. White Ten Thousand Dollars ($10,000) within five (5) business days after the Effective Date.

9. Each of the MBTA, J.F. White, HS/CB, DCP, SOM, Dorel, Amtrak and BECO (the "Releasing Parties") for themselves and their respective present and former joint venture members, principals, partners, directors, officers, stockholders, employees, consultants, attorneys, agents, representatives, appointed officials, successors and assigns shall and do hereby release and forever discharge each and every one of the other Releasing Parties, their insurers and their respective present and former joint venture members, principals, partners, directors, officers, stockholders, employees, consultants, attorneys, agents, representatives, appointed officials, successors and assigns from any and all claims, controversies, actions, causes of action, debts, demands, obligations, penalties, damages, accounts, charges, liabilities and costs whatsoever, whether in law or in equity, from the beginning of the world to the Effective Date, that were asserted or that were known or that reasonably could have been known at the time of the Effective Date, including but not limited to claims that were or could have been brought in the Lawsuit, that arise out of or relate to South Station or to any contracts or agreements referring or relating to South Station or to any work or services referring or relating to South Station, including without limitation, and by way of illustration only, any and all claims for services rendered, work performed, or materials purchased or supplied, or for delays, disruptions, inefficiencies, losses of productivity, extensions of time, or accelerations or for claimed extra work, additional costs, change orders or unpaid contract balances, or for alleged negligence, breach of contract, breach of warranty, breach of fiduciary duty, negligent misrepresentation, estoppel, indemnification, contribution or violation of any state or federal statute or any principle of common law.

10. The Parties agree that prior to this Settlement Agreement going into effect and the Settling Parties making payment of their respective amounts hereunder, the FRA shall execute reciprocal releases with DCP, HS/CB and SOM in the form attached hereto and incorporated herein as Exhibits 1 and 2.

11. J.F. White hereby agrees to defend, indemnify and hold harmless the MBTA, DCP, HS/CB, SOM, Amtrak and BECO and their respective present and former joint venture members, principals, partners, directors, officers, stockholders, employees, consultants, attorneys, agents, representatives, appointed officials, successors, assigns and insurers, and each of them, from any and all claims, liabilities, costs or expenses (including attorneys fees and expenses) asserted either now or in the future by subcontractors or suppliers of J.F. White, including but not limited to Dorel; L.K. Comstock & Company, Inc., Manzi Electrical Corp., Myles Electrical Company, Inc. and Comstock/Manzi/Myles, a joint venture; M.J. Flaherty Company;

G.J. Luchetti, Inc. and Automatic Sprinkler Corporation of America, a division of Figgie International, Inc. that arise out of or relate to South Station, even if due to the negligence or fault of any or all of the indemnitees. J.F. White further agrees to indemnify and hold harmless Amtrak from any claims made against it by the FRA for monies paid by the FRA to the MBTA which are due to Amtrak-caused delays to the South Station project as set forth in the MBTA's claim against Amtrak in the South Station litigation (Massachusetts Bay Transportation Authority v. DeLeuw Cather & Company, et al., Suffolk Superior Court C.A. No. 88-2438) including reasonable legal fees incurred by the MBTA in the prosecution of said claims in said litigation provided that such claims are actually paid by the FRA to the MBTA in resolving, whether by judgment or settlement agreement, the action pending in the Court of Federal Claims entitled (Massachusetts Bay Transportation Authority v. United States of America, Civil Action No. 283-89C), provided that such indemnity is limited to one hundred thousand dollars ($100,000.00).

12. All Parties to this Settlement Agreement hereby represent that no money paid to J.F. White in settlement of the Lawsuit by any of the Parties, including Amtrak, was paid as a result of (or to compensate for) any delays caused by Amtrak. Amtrak paid money to J.F. White to compromise and settle claims relating to track removal costs incurred by J.F. White. All Parties further represent that Amtrak caused no compensable delays to the South Station Project. All Parties agree that the representations in this paragraph may be introduced by Amtrak as binding admissions in any court, administrative proceeding or other similar proceeding.

13. MBTA agrees to move to amend and/or move to dismiss in its Court of Federal Claims lawsuit, captioned Massachusetts Bay Transportation Authority v. United States of America, Civil Action No.: 283-89 C, so as to dismiss with prejudice Count VII and to delete with prejudice all references to Amtrak caused delays (this motion is hereinafter referred to as "The Motion to Amend"). The MBTA shall file The Motion to Amend promptly upon the lifting of the current stay of proceedings in the Court of Federal Claims Lawsuit, and take all steps necessary to ensure that The Motion to Amend is allowed. The MBTA further agrees to act or negotiate as if The Motion to Amend has been allowed if any proceedings or negotiations take place in the Court of Federal Claims matter prior to the filing of The Motion to Amend. Failure of any condition of this Paragraph 13 to be met shall not affect the enforceability of this Settlement Agreement, including but not limited to the releases and indemnities herein.

14. The MBTA represents that it has not made any payments to anyone in settlement of any claims by an MBTA

contractor based on Amtrak-caused delays. This representation may be introduced by Amtrak as a binding admission in any court, administrative proceeding or other similar proceeding.

15. Amtrak agrees to defend, indemnify and hold harmless the MBTA, DCP, HS/CB, SOM and BECO and their respective present and former joint venture members, principals, partners, directors, officers, stockholders, employees, consultants, attorneys, agents, representatives, appointed officials, successors, assigns and insurers, and each of them, from any and all claims, liabilities, costs or expenses (including attorneys fees and expenses) asserted either now or in the future by Northeast Rail, that arise out of or relate to South Station, even if due to the negligence or fault of any or all of the indemnitees. By signing this Settlement Agreement, the Parties warrant that they are not aware of and do not have any knowledge of any claims currently pending by Northeast Rail against any of the indemnitees set forth in this Paragraph.

16. Except to the extent that a representation is specifically identified as an admission and that admission bears upon liability or fault by a Party, each Party acknowledges and agrees that this Settlement Agreement does not in any manner constitute an admission of liability or fault whatsoever by any party hereto and that this Settlement Agreement is made for the purpose of terminating the Lawsuit as between the Parties hereto with no concession of wrongdoing or fault.

17. The Parties hereto acknowledge and confirm that they have read this Settlement Agreement, that they have had the advice of their own legal counsel and that they understand the terms and provisions of and the effect of this Agreement and no presumption of construction against any Party shall apply by virtue of that Party's role in drafting this Settlement Agreement.

18. The signatories hereto warrant and represent that they have the power and authority to execute this Settlement Agreement, no Party has assigned any claims against any other Party to this Settlement Agreement, and the Parties have the ability to pay all consideration required under the terms of this Settlement Agreement by themselves or through their insurers.

19. The Parties may list the Boston South Station as a professional accomplishment and may display photographs and renderings thereof.

20. This Agreement constitutes an accord and satisfaction of any and all debts or obligations that the Parties may now have as to one another in connection with the South Station Project or the Lawsuit. It is further understood and

agreed that any and all sums of money paid hereunder are received in full and final settlement and satisfy all claims and demands whatever relating directly or indirectly to the Lawsuit. The MBTA's claims against the FRA are not part of the Lawsuit and by joining in this Settlement Agreement, the MBTA does not relinquish any claims it has against the FRA, except as specifically provided herein or as expressly agreed between the MBTA and the FRA.

21. This Settlement Agreement constitutes the entire agreement between the parties and no covenants, promises, representations or warranties have been made except as specifically set forth herein, and no provision hereof may be waived, modified or altered except in writing executed by all the Parties.

22. This Settlement Agreement shall be deemed to be a contract made under the laws of the Commonwealth of Massachusetts, and shall, for all purposes, be construed and enforced in accordance with said laws as if all acts had occurred in the Commonwealth of Massachusetts. Further, this Settlement Agreement shall be binding on and shall inure to the benefit of all Parties hereto, their representatives, successors and assigns.

23. The invalidity of any covenant, restriction, condition, limitation or any other part or provision of this Settlement Agreement shall not impair or affect in any manner the validity, enforceability or effect of the remainder hereof.

24. Each of the Parties represent that they have the responsibility to pay their own attorneys and that no attorneys' liens have been filed as to any of the Parties. Each counsel, by signing its acknowledgement of this Settlement Agreement, represents its consent to the provisions of this Paragraph.

25. This Settlement Agreement may be executed in multiple counterparts, each of which will constitute an original and may be signed by the parties on separate pages to be collated and treated as if all had been signed on the same signature page.

IN WITNESS WHEREOF, the Parties hereto have set forth their hands and seals as of the date there written.

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

SKIDMORE, OWINGS & MERRILL

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

J.F. WHITE CONTRACTING COMPANY

By: [signature]

Its: PRESIDENT

Dated: 3/14/95

Attorney Acknowledgement

By: [signature]

HUGH STUBBINS/CASTRO-BLANCO FOR ITSELF AND EACH OF HUGH STUBBINS & ASSOCIATES, INC. CASTRO-BLANCO, PISCIONERI & FEDER, ARCHITECTS, P.C.

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

SKIDMORE, OWINGS & MERRILL

By: [signature]

Its: General Counsel

Dated: 3-13-95

Attorney Acknowledgement

By: [signature]

J.F. WHITE CONTRACTING COMPANY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

HUGH STUBBINS/CASTRO-BLANCO FOR ITSELF AND EACH OF HUGH STUBBINS & ASSOCIATES, INC. CASTRO-BLANCO, PISCIONERI & FEDER, ARCHITECTS, P.C.

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

SKIDMORE, OWINGS & MERRILL

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

J.F. WHITE CONTRACTING
COMPANY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

HUGH STUBBINS/CASTRO-BLANCO
FOR ITSELF AND EACH OF HUGH
STUBBINS & ASSOCIATES, INC.
CASTRO-BLANCO, PISCIONERI &
FEDER, ARCHITECTS, P.C.

By: Philip Goldberg

Its: Treasurer

Dated: 4-7-95

Attorney Acknowledgement

By: [signature]



DCP304

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

SKIDMORE, OWINGS & MERRILL

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

J.F. WHITE CONTRACTING COMPANY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

HUGH STUBBINS/CASTRO-BLANCO FOR ITSELF AND EACH OF HUGH STUBBINS & ASSOCIATES, INC. CASTRO-BLANCO, PISCIONERI & FEDER, ARCHITECTS, P.C.

By: [signature]

Its: Partner of JV / Pres CPF

Dated: 4/14/95

Attorney Acknowledgement

By: [signature]



DCP305

DELEUW CATHER/PARSONS FOR ITSELF AND FOR EACH OF DELEUW CATHER & COMPANY, AND THE RALPH M. PARSONS COMPANY

By: [signature]

Its: SENIOR VICE PRESIDENT

Dated: 16 MARCH 1995

Attorney Acknowledgement

By: James C. Lockwood [signature]
William G. Meserve [signature]

DOREL STEEL ERECTION CORP.

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

AMTRAK

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

BOSTON EDISON COMPANY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________



DCP306

DELEUW CATHER/PARSONS FOR ITSELF AND FOR EACH OF DELEUW CATHER & COMPANY, AND THE RALPH M. PARSONS COMPANY

By: ____________________

Its: ____________________

Dated: ____________________

Attorney Acknowledgement

By: ____________________

DOREL STEEL ERECTION CORP.

By: [signature]

Its: Vice President

Dated: 4/28/95

Attorney Acknowledgement

By: [signature]

AMTRAK

By: ____________________

Its: ____________________

Dated: ____________________

Attorney Acknowledgement

By: ____________________

BOSTON EDISON COMPANY

By: ____________________

Its: ____________________

Dated: ____________________

Attorney Acknowledgement

By: ____________________

DELEUW CATHER/PARSONS FOR ITSELF AND FOR EACH OF DELEUW CATHER & COMPANY, AND THE RALPH M. PARSONS COMPANY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

DOREL STEEL ERECTION CORP.

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

AMTRAK

By: A Conway-Smith

Its: Vice President-Chief Engineer

Dated: APR 17 1995

Attorney Acknowledgement

By: [signature]

BOSTON EDISON COMPANY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

DELEUW CATHER/PARSONS FOR ITSELF AND FOR EACH OF DELEUW CATHER & COMPANY, AND THE RALPH M. PARSONS COMPANY

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

DOREL STEEL ERECTION CORP.

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

AMTRAK

By: ______________________

Its: ______________________

Dated: ______________________

Attorney Acknowledgement

By: ______________________

BOSTON EDISON COMPANY

By: Marc S Alpert
Marc S. Alpert

Its: Treasurer

Dated: March 21, 1995

Attorney Acknowledgement

By: [signature]



DCP309

RELEASE

Upon consideration of a reciprocal release from DeLeuw Cather & Company, The Ralph M. Parsons Company, DeLeuw Cather/Parsons, a joint venture, and each of them, and a release from the Massachusetts Bay Transportation Authority ("MBTA") releasing the United States from certain specified claims relating to lost rents and unreimbursed utility expenses, the receipt of which is hereby acknowledged, the United States, acting through the United States Department of Transportation, Federal Railroad Administration ("United States"), hereby releases and forever discharges DeLeuw Cather & Company, the Ralph M. Parsons Company, DeLeuw Cather/Parsons, a joint venture, and each of them, their directors, officers, partners, agents, employees, attorneys and insurers, their successors and assigns, and all of them, of and from any and all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages and any and all claims, demands and liabilities whatsoever of every name and nature, both in law and in equity, whether currently known or unknown, which the United States has or may have that arise from or relate in any way to the design and construction, prior to the date of this Release, of renovations and improvements to the South Station and associated structures, platforms, track and rail yards in Boston, Massachusetts (the "South Station Project"), including, without limitation, matters that arise from or relate to claims or litigation brought against or involving the United States or any

other parties in connection with the South Station Project, including, without limitation, claims or litigation brought by or involving the MBTA.

IN WITNESS WHEREOF, the United States has caused this Release to be signed by Jolene M. Molitoris, the Administrator of the Federal Railroad Administration, hereunto duly authorized this 20th day of April, 1995.

Witness:

Joanne C. Laird

U.S. Department of Transportation
Federal Railroad Administration

By: Jolene M. Molitoris
Title: Administrator, FRA

Task 401: <u>Reserved</u>

Task 402: <u>Reserved</u>

Task 403: <u>Construction Operations</u>

The A-E Contractor shall provide engineering services in support of the overall construction program effort. Such services will include: analysis and technical review of construction contractor bid submissions for assigned work packages in terms of unit costs, time schedules, manpower allocation and pricing, as well as recommended selection or rejection of construction bid alternates. Detailed independent cost estimates for the relevant site-specific facilities and geographic segments of the program will provide the basis for undertaking the analysis of contractor bids.

The A-E Contractor shall review contractor payment requests and shall make recommendations to NECP on payments to contractors. The A-E Contractor shall provide support to FRA in dispute negotiations.

The A-E Contractor shall provide on-site management, coordination and inspection of all construction activities to assure that work conforms to construction work packages in terms of quality of materials and methods of installation and determine the adequacy of contractor plans, supervision and progress. This will include assisting with coordination of other contractors and local governments/organizations. Management and inspection of track construction shall include the following specific services:

a. Inspect track work for compliance with specifications and procedures prescribed for the program.

b. Verify quantitative measures for accuracy such as: tie counts, production footages, rail renewals, etc.

c. Verify labor and material charges in the field.

d. Measure unloaded track geometry and alignment behind track surfacing and rail and switch renewal operations.

e. Monitor track geometry collected by the DOT inspection vehicle and list locations which fail to meet track geometry criteria for consideration of NECP.

f. Other quantitative and qualitative inspection services as may be deemed necessary by NECP.

The A-E Contractor shall submit appropriate inspection reports to NECP. The reporting form shall be developed by the A-E Contractor and submitted to NECP for approval with a recommended reporting schedule for each inspection item.

Establishing and maintaining field control offices at appropriate geographic locations along the NEC will be essential to accomplish this task. Services associated with inspection shall include record keeping of all construction materials, equipment and fabricated subcomponents on site. Assessing compliance with construction phasing and staging schedules included in this portion of the task. The A-E Contractor shall be fully responsible for all interpretations of drawings in the field and shall submit an "as-built" set of drawings at the conclusion of each construction segment of the project.

The A-E Contractor shall assure that interface coordination is achieved and that interference and delay of construction is avoided.

The A-E Contractor shall review all shop drawings, samples and other submissions for full compliance with construction drawings, specifications and equipment and material listings developed in prior design tasks. Promoting the timely submission of shop drawings consistent with construction schedules shall also be included in this task. The A-E Contractor shall review all proposals for changes or notices of changes, compile relevant data, engage in discussions with the CC's or Amtrak, as appropriate, and make recommendations to FRA/NECP.

During the construction phases of the NECIP, the A-E Contractor shall alert NECP and Amtrak as appropriate if material defects or discrepancies are found in work progressing or completed. The A-E Contractor shall recommend changes to work programs, work-arounds and retrofit plans as necessary to complete jobs within program directives. NECP approvals must be secured in all cases. The A-E Contractor shall notify Amtrak of all discrepancies; NECP will be notified if any discrepancies cannot be resolved directly between the A-E Contractor and Amtrak. The A-E Contractor shall also provide primary inspection of the work being undertaken directly by Amtrak force-account personnel to assure full compliance with the relevant contract drawings, specifications and construction schedules. The A-E Contractor shall conduct inspection audits in connection with the work performed by Amtrak's subcontractors. The A-E Contractor shall maintain all requisite project records to fully document the status of the NECIP and to furnish information for the Program Management Tasks.

Task 404: <u>System and Component Testing and Acceptance</u>

The A-E Contractor shall, in close coordination with Amtrak and others, prepare testing methods and procedures for FRA approval prior to developing a plan and schedule for undertaking the tests for major systems, site-specific

facility components and subcomponents. The A-E Contractor with appropriate subcontractors and specialized testing equipment shall conduct the tests for those elements of the program where testing is specified such as: electrification; signalling; communications and train control systems; and stations and maintenance facilities. Within specific facilities, utilities, lighting, heating, air-conditioning and specialized fire protection, security and emergency power systems are typical items which shall be included in the testing activities.

This testing shall be done in coordination with NECP, Amtrak, major modal users, manufacturers and related installation contractors. Minimizing the impact of conducting these tests on on-going rail operations is to be an objective of this task, and will draw on Task 108 as appropriate. Acceptance testing will be performed against criteria and evaluation parameters developed by the A-E Contractor, its associate subcontractors and Amtrak.

Reports will be provided to FRA recommending or rejecting acceptance based upon test results. Portion of the performance of acceptance testing may be delegated to the A-E Contractor.

All testing shall be planned and conducted in close coordination with Amtrak and other users. Insofar as possible, all testing will be carried out to permit ultimate acceptance from FRA by Amtrak and other users without further testing.

The A-E Contractor shall provide sufficient advance notice to the NECP of testing and systems acceptance inspections so that the NECIP may in turn formally notify Amtrak of such inspections as required in Section 7.05 of the Amtrak contract.

The A-E Contractor shall prepare a plan for approval by NECP for acceptance of completed work. Final acceptance will involve both acceptance of completed work by NECP and turn over of project to Amtrak for operations and maintenance. Start-up assistance may be necessary in connection with certain facilities.

Task 405: <u>Quality Control</u>

The A-E Contractor shall be responsible for developing and implementing a program for maintaining control of the quality of all work performed by CC's and Amtrak force account personnel in constructing the NECIP improvements and subsequently testing them. Material submittals will be evaluated and samples tested to verify conformity to requirements. The A-E Contractor shall be responsible for developing and implementing a program for auditing the quality control activities performed by others in the execution of Amtrak subcontractors.

A Quality Control Plan will be submitted by the A-E Contractor to NECP for approval. This plan will be coordinated with Amtrak. This plan will be updated periodically. It will detail the procedures, responsibilities and standards required to implement the plan including the quality function in Task 403. The plan will cover specified material, construction, personnel qualifications, and acceptance testing. All work will be reviewed by the A-E Contractor for compliance with the drawings, specifications, standards and directives which define the products and the system performance.

Task 405.1 Fireline Pipe Test

Test six inch diameter asbestos cement pipe and accessories for use in the East River tunnels for wet fireline.

Task 405.2 Concrete Tie Quality Control

The A-E Contractor shall provide interim Quality Assurance personnel to monitor concrete tie manufacturing operations at the Santa Fe/San Vel Plant, Littleton, Massachusetts.

#64 405.3 Concrete Tie [illegible]

Task 406: Safety

The A-E Contractor shall develop a personnel safety program to include safety philosophy, safety plans, requirements, specifications, and procedures. The A-E Contractor will designate a Personnel Safety Manager who shall be the focal point for all matters related to personnel safety. Corresponding safety efforts will be required for all construction Work Packages.

The A-E Contractor shall be responsible for establishing and maintaining an on-going safety program to assure Amtrak's and the CC's compliance with all Federal safety regulations including overriding state or local requirements. Maintenance of this program shall be accomplished through the field offices. The A-E Contractor shall inform Amtrak or the appropriate CC, if any, or both, as appropriate, of potential hazardous or unsafe conditions which may be observed as a part of the supervisory and inspection activities. A written record will be kept of all such notifications and of the responses observed by the A-E Contractor to such notifications. The A-E Contractor shall report to NECP any failure by Amtrak or a CC to eliminate a potentially hazardous or unsafe condition following such a notification.

Task 407: Construction Management Administration

The A-E Contractor shall provide services normally required of a Construction Management Contractor, unless otherwise directed by the NECP. In addition to those services specified in Tasks 403 thru 406, will include as appropriate the following services:

A. Construction and Logistics Planning

In addition to the Logistics Planning of Task 113, the A-E Contractor will plan site-specific construction and inspection work on the NEC. It will specify the time and access for labor, material and equipment for those construction jobs requiring this additional level of schedule detail. It will interface with the Amtrak maintenance program as required.

Construction planning will be initiated with systems engineering to develop optimum methods, labor availability, safety and security requirements, special condition specifications, evaluating site conditions, etc.

B. Jobsite Control

Jobsite Control will plan for temporary and permanent drainage power, camps, relocations and run-arounds, deployment of each resource, storage, safety, security, fire prevention, timely and accurate reporting, visitor control, etc.

C. Permits and Licenses

The A-E Contractor will verify that necessary permits and licenses to be acquired to support the construction program.

D. Miscellaneous

To the extent the construction management services are not covered in other tasks, they should be accounted for in this task including the following: labor relations, cut-over plan, site clean-up plan, etc.

Task 408: Land Acquisition

Wherever additional real property or interests in real property are required for major realignment, electrical substation location, fencing, stations, or other purposes, the A-E Contractor, shall perform all necessary real estate functions, as directed by the NECP.

As part of this task the A-E Contractor shall perform the following:

a. Identify all interests in NEC real property to be improved by the NECIP. For each parcel of such property, obtain a metes and bounds survey and a legal description. Compile all such data in a form



DCP316